# EXHIBIT A

# Student loan company Navient used deceptive practices, Dept. of Education audit suggests

Ken Sweet, Associated Press    Published 3:53 p.m. ET Nov. 20, 2018



(Photo: AP Photo/Jacquelyn Martin)

NEW YORK (AP) — One of the nation's largest student loan servicing companies may have driven tens of thousands of borrowers struggling with their debts into higher-cost repayment plans.

That's the finding of a Department of Education audit of practices at Navient Corp., the nation's third-largest student loan servicing company.

The conclusions of the 2017 audit, which until now have been kept from the public and were obtained by The Associated Press, appear to support federal and state lawsuits that accuse Navient of boosting its profits by steering some borrowers into the high-cost plans without discussing options that would have been less costly in the long run.

**More:** Navient lawsuit: What student loan borrowers need to know (/story/money/personalfinance/2017/04/10/navient-lawsuit-what-student-loan-borrowers-need-know/100314896/)

The education department has not shared the audit's findings with the plaintiffs in the lawsuits. In fact, even while knowing of its conclusions, the department repeatedly argued that state and other federal authorities do not have jurisdiction over Navient's business practices.

"The existence of this audit makes the Department of Education's position all the more disturbing," said Aaron Ament, president of the National Student Legal Defense Network, who worked for the Department of Education under President Barack Obama.

The AP received a copy of the audit and other documents from the office of Sen. Elizabeth Warren, D-Massachusetts, who has been a vocal critic of Navient and has publicly supported the lawsuits against the company as well as questioning the policies of the Department of Education, currently run by President Trump's Secretary of Education, Betsy DeVos. Warren is considered a potential presidential candidate in 2020.

Navient disputed the audit's conclusions in its response to the Department of Education and has denied the allegations in the lawsuits. One point the company makes in its defense is that its contract with the education department doesn't require its customer service representatives to mention all options available to the borrower.

However, the five states suing Navient — Illinois, Pennsylvania, Washington, California and Mississippi — say the behavior breaks their laws regarding consumer protection. The Consumer Financial Protection Bureau says in its own lawsuit the practices are unfair, deceptive and abusive and break federal consumer protection laws.

Of the five states that filed lawsuits against Navient, only Illinois and Pennsylvania were even aware of the audit, and they said they did not receive their copies from the Department of Education. The Consumer Financial Protection Bureau declined to comment on whether it had a copy of the report.

The Department of Education said withholding the report was intentional, repeating the argument it has made in court and in public that only it has jurisdiction over student loan servicing issues, through its Federal Student Aid division, or FSA, which oversees student loans.

"FSA performed the review as part of its own contract oversight, not for the benefit of other agencies," said Liz Hill, a Department of Education

spokeswoman.

When student borrowers run into difficulties making payments, they can be offered forbearance, which allows them to delay payments for a set period of time. But under a forbearance plan, in most instances, the loan continues to accumulate interest and becomes a more expensive option in the long run.

The Consumer Financial Protection Bureau alleges in its lawsuit against Navient that between 2010 and 2015 Navient's behavior added nearly $4 billion in interest to student borrowers' loans through the overuse of forbearance. It is a figure that Navient disputes.

More: Navient seeks to dismiss student loan case, says consumer watchdog overreached (/story/money/personalfinance/2017/03/28/navient-seeks-dismiss-student-loan-case-says-consumer-watchdog-overreached/99725708/)

A 2017 study by the Government Accountability Office estimates that a typical borrower of a $30,000 student loan who places their loan into forbearance for three years — the maximum allowed for economic-hardship forbearance — would pay an additional $6,742 in interest on that loan.

"This finding is both tragic and infuriating, and the findings appear to validate the allegations that Navient boosted its profits by unfairly steering student borrowers into forbearance when that was often the worst financial option for them," Warren said in a letter to Navient last week.

As part of their inquiry, DoE auditors listened in on about 2,400 randomly selected calls to borrowers from 2014 to 2017 out of a batch of 219,000. On nearly one out of 10 of the calls examined, the Navient representative did not mention other options, including one type of plan that estimates the size of a monthly payment the borrower can afford based on their income. Auditors wrote that many customer service representatives failed to ask questions to determine if such a plan, known as an income-driven repayment plan, might be more beneficial to the borrower.

There is no public record of how many struggling borrowers serviced by Navient may have been impacted by these practices. In its most recent annual report, Navient says it services 6 million student loan borrowers, of which 12.7 percent are more than 30 days past due. That would be roughly 762,000 customers who are struggling in some fashion to pay their student loans.

If one out of every 10 of those customers were pushed into forbearance instead of an income-driven repayment plan, as the department's audit found, that would be 76,200 of Navient's borrowers.

The DoE report contains recommendations for how Navient could fix its practices but makes no mention of firm requirements or sanctions.

The education department's Federal Student Aid division decided to do a review of Navient's forbearance practices after the Consumer Financial Protection Bureau filed its lawsuit against the company in January 2017, department spokeswoman Hill said, to see if there were any compliance issues.

She said DoE officials came to the conclusion that Navient was not improperly steering borrowers. "Nothing in the report indicates forbearances were applied inappropriately — the observations noted focused on suggested improvements regarding how to best counsel" a small minority of borrowers, she said.

In response to questions over the 2017 audit, Navient pointed to the fact that nine out of every 10 borrowers on the calls were offered all their options and that this audit is just one piece of a broader story.

"This (audit), when viewed as a whole, as well as dozens of other audits and reviews, show that Navient overwhelmingly performs in accordance with program rules while consistently helping borrowers choose the right options for their circumstances," said Paul Hartwick, a company spokesman.

Navient, which split off from Sallie Mae, is a publicly traded company. In calls and presentations with investors, Navient has said a company priority is to lower its operational costs.

As a student loan servicing company, Navient has one primary operating cost: its employees, including the hundreds of customer-service agents who man Navient's telephones every day. The fewer customer-service agents Navient employs, the more money Navient puts in its pocket. Doing calls to determine whether a borrower should be in an income-driven repayment plan takes longer, student loan industry experts say.

In fact, that is exactly what Navient said in its response to the Department of Education's audit.

"We (are not) aware of any requirement that borrowers receive all of their repayment options ... on each and every call," the company said, adding that if the Department of Education chose to require all servicers to discuss income-driven repayment plans with all borrowers, the Department of Education needs to redo its contract with Navient.

Seth Frotman, who was the highest-ranking government official in charge of student loans until he quit in August in protest over how the Trump-controlled Department of Education and Consumer Financial Protection Bureau were handling the issue of student loans, said Navient's response was outrageous.

Case 1:19-cv-05121-WHP   Document 7-1   Filed 06/05/19   Page 4 of 14

"In short, Navient, when confronted with evidence of its bad practices, is telling the government, 'Pay us more money or take a hike.' And It looks like the Department of Education took a hike," Frotman said.

Read or Share this story: https://www.usatoday.com/story/news/2018/11/20/student-loans-navient-lawsuit-department-education-audit/2071008002/

222,667 views | Oct 8, 2018, 08:32am

# How This New Navient Lawsuit Affects Your Student Loans



**Zack Friedman** Senior Contributor ⓘ
Personal Finance



California Attorney General Xavier Becerra announced in June 2018 that California is suing Navient, alleging that the student loan servicer harmed consumers by failing to service their student loan debt properly. (AP Photo/Rich Pedroncelli)

Members of the American Federation of Teachers, the second largest teachers union in the U.S., filed a lawsuit against Navient, one of the the nation's largest student loan servicers.

If you have a student loan, there is a good chance that it may be serviced by Navient. Navient, which spun off from Sallie Mae, has more than 12 million customers and services more than $300 billion of government and private student loans.

Here's what you need to know and the action you can take.

**Navient Lawsuit: The allegations**

The lawsuit alleges that Navient systematically misdirected borrowers into student loan repayment programs and types of forbearance, which do not qualify for Public Service Loan Forgiveness, which enables public servants to have their federal student loans forgiven after meeting certain requirements.

The lawsuit also alleges Navient ignored borrowers' best interests — in violation of its government contract — to prevent borrowers from moving to FedLoan (the student loan servicer that administers the Public Service Loan Forgiveness program), so that Navient could continue to earn fees.

As a result, the plaintiffs claim that teachers, nurses, first responders, social workers and other public servants are paying millions of dollars more than they otherwise should in student loan payments.

"Navient has purposely and systematically trapped teachers, nurses and other public service workers under a mountain of student debt instead of providing them with accurate information about their loan options," Randi Weingarten, president of the American Federation of Teachers, said.

The Public Service Loan Forgiveness Program is a federal program that forgives federal student loans for borrowers, including teachers, who are employed full-time (more than 30 hours per week) in an eligible federal, state or local public service job or 501(c)(3) non-profit job who make 120 eligible on-time payments.

Navient declined to comment on the lawsuit, which was filed in U.S. District Court in the Southern District of New York.

Navient has been sued by five states, including California, Illinois, Pennsylvania, Washington and Mississippi, who have alleged improper actions on behalf of student loan borrowers.

This follows action from the Consumer Financial Protection Bureau (CFPB), which sued Navient in January 2017 for allegedly "systematically and illegally [failing] borrowers at every stage of repayment," including:

- created obstacles to repayment by providing bad information;

- processed payments incorrectly;
- failed to act when borrowers complained;
- illegally cheated many struggling borrowers out of their rights to lower payments, which caused them to overpay for their student loans;
- deceived private student loan borrowers about requirements to release their co-signer from the loan; and
- harmed the credit of disabled borrowers, including severely injured veterans

**Action Plan: 5 Steps**

When it comes to your student loans, the ball is in your court:

### 1. Know your student loan options

One role of your student loan servicer is to help you understand your available options with regard to your student loans, including:

- Student Loan Refinancing
- Federal Student Loan Consolidation
- Income-Driven Repayment Plans
- Student Loan Forgiveness

When it comes to student loan repayment, it's best to conduct your own independent research, rather than rely on your student loan servicer to give you all the answers.

### 2. Monitor the latest student loan developments

There may be several changes to your student loans in the coming years. This may include changes to student loan repayment and student loan forgiveness, among others, including a potential end to public service loan forgiveness.

### 3. Keep records

Keep an organized record of all your student loan payments, including any correspondence with your student loan servicer. It is best to communicate in writing with your student loan servicer.

### 4. File a complaint

If you feel you have been wronged by your student loan lender or your student loan

servicer, you can make your voice heard by sending a formal complaint to:

- U.S. Department of Education
- Consumer Financial Protection Bureau
- Your lender
- Your servicer

### 5. Pay Off Your Student Loans Faster in 2018

One of the best ways to avoid dealing with student loan servicers is not to have one.

These free student loan calculators can help you understand your student loan repayment options.

You can also take these simple steps to pay off your student loans faster in 2018.

*Zack Friedman is the Founder & CEO of Make Lemonade, a leading personal finance comparison site. Read his Forbes columns. Book Zack for speaking engagements.*

 **Zack Friedman** Senior Contributor

The
Intercept_

# STUDENT LOAN GIANT NAVIENT RESPONDS TO ALLEGATIONS OF ABUSE WITH A BIZARRE SUBPOENA OF A FORMER FEDERAL OFFICIAL

David Dayen

December 5 2018, 3:03 p.m.



The Navient Corporation in Wilmington, Delaware on Aug. 29, 2015. Photo: Kris Tripplaar/Sipa via AP

Student loan giant Navient has subpoenaed a former Consumer Financial Protection Bureau official as part of what appears to be a new effort to intimidate critics as the company battles allegations of improper loan servicing practices.

The company is in the midst of fighting a lawsuit brought by the CFPB over allegedly steering borrowers into $4 billion in avoidable interest charges. In October, as part of the discovery process, Navient subpoenaed Seth Frotman, the former student loan ombudsman for the CFPB, to sit for a deposition. The subpoena only became public on Tuesday afternoon, when Frotman's lawyers attempted to dismiss it.

Frotman is not a party to the case. A persistent critic of the student loan industry who recently started a nonprofit called the Student Borrower Protection Center, he is the only current or former CFPB official that Navient is known to have attempted to depose. And Navient wants to question him on a broad range of topics: not just about communications with enforcement officials related to the investigation, but with third parties like the Department of Education, members of Congress or their staffs, state attorneys general, consumer advocacy groups, or even members of the media.

Navient also wants to know "the circumstances of [Frotman's] resignation" from the CFPB, which occurred a year and a half after the lawsuit was filed.

It's extremely unusual for a company to respond to a federal lawsuit from a regulatory agency by seeking to depose officials from that agency. One obvious conclusion is that Navient is engaging in a high-level form of legal harassment to silence a perceived enemy and send a message to others. "It's hard to see this as anything but retaliation on the part of Navient," said Deepak Gupta, Frotman's attorney in the

matter.

In a motion filed on Tuesday, Gupta sought to stay the deposition, scheduled for December 14, and also to quash the subpoena forcing Frotman testify. Calling the motion an "open-ended fishing expedition," Gupta argued that Frotman would be legally barred from testifying about any internal deliberations related to his government service. He also accused Navient of failing to demonstrate that any of the information it seeks from Frotman would be relevant to the case.

Of course, that may not be the point. As Frotman notes in a declaration filed with the motion, letting a deposition like this go forward "would be green light to litigants nationwide that they can drag me and other former high-level officials into the very large number of court cases over student loan servicing and other consumer-finance practices." The time and expense of multiple testimonies would be significant. Frotman concludes, addition to inappropriately pulling back the curtain on high-level policy making, and chilling the frank exchange necessary to a good deliberative process, I also worry that this would discourage people from future public service."

Frotman served as student loan ombudsman from 2015 to 2018. It was a icy job, where he recommended strategies to help protect borrowers from student loan industry abuses. Frotman asserted in his written declaration that he had nothing to do with initiating the investigation against Navient or drawing up the lawsuit; his only role in the case involved internal discussions with litigators as a subject-matter expert.

CFPB sued Navient on January 18, 2017, for "systematically and illegally ing borrowers at every stage of repayment." According to the complaint Navient failed to correctly allocate borrower payments across multiple loans, sometimes ringing up late fees and defaults even when the borro

made the payment. In particular, the company steered borrowers into f[orbear]ance plans (a temporary break from payments) that increased interest d[ue] rather than other repayment options.

Last month, Sen. Elizabeth Warren, D-Mass., released an audit from the [Depart]ment of Education, finding 220 instances in which Navient call center p[erson]nel failed to offer options to borrowers struggling to pay their loans oth[er than] forbearance, seemingly confirming some of CFPB's allegations.

The CFPB complaint also alleged that Navient gave student borrowers i[ncorrect] information for how to maintain eligibility for income-based repaymen[t plans,] which only take a sliver of a borrower's income every month. It erroneo[usly] misreported loan defaults to credit reporting agencies of severely disabl[ed bor]rowers — including veterans — who had the right to seek loan forgiven[ess af]ter acquiring their disability. Navient's subsidiary, Pioneer Credit Recov[ery,] made misrepresentations to borrowers about credit reporting and colle[ction] fees. Navient failed to correct these and other errors in the face of borro[wer] complaints.

The lawsuit was filed two days before President Donald Trump's inaugu[ration.] There are indications that Navient resisted a settlement after Trump's e[lection,] expecting to get a better deal with a deregulator-in-chief. Frotman did s[peak at] the CFPB press conference announcing the charges. Those were his only [public] statements on the matter.

> **Join Our Newsletter**
> Original reporting. Fearless journalism. Delivered to you.
> I'm in →

Navient was mostly correct in its assumption that Trump would usher i[n a] lighter regulatory hand. Once CFPB Director Richard Cordray left office [for an] unsuccessful run for Ohio governor, White House budget director Mick

vaney replaced him. After that, CFPB's public enforcement actions drop percent. Mulvaney folded the student loan division into the consumer i unit, a downgrade of its power. The Navient case was kept alive, but sev torneys general have brought their own litigation, anticipating that the eventually drop the charges.

Frotman resigned from the CFPB on September 1. In a scathing resignat accused Mulvaney and the new leadership of abandoning borrowers, ins ing the agency's mission to "serve the wishes of the most powerful fina nies in America," as he put it.

Navient hadn't listed Frotman as a witness in the case until after his res The company subpoenaed him a month later, which forced Frotman to counsel. In his own declaration, Frotman attorney Deepak Gupta says h times to contact Navient about the scope of the deposition and the info ing sought. Navient finally replied dismissively, with counsel Daniel Ke "We do not have an obligation to clarify for you exactly what questions ask in the deposition."

Two weeks later, on a conference call with Gupta, Navient's lawyers reit they had no obligation to lay out the scope of the deposition and provid Frotman in the subpoena "only as a courtesy." The lawyers added that t even beyond that topic list. Navient's attorneys told him they had no "c plans to depose any other CFPB officials, but that they reserved the righ later.

After that, Gupta filed the motion to quash the subpoena. Judge Robert could either agree and throw out the attempted deposition, limit the qu certain topics, or allow it to go forward.

Navient did not respond to a request for comment.

 We depend on the support of readers like you to help keep our nonpr strong and independent. Join Us →

**RELATED**



House Republicans Want to End Student Loan Forgiveness for Public Interest Jobs