MANCHANDA LAW OFFICE PLLC
30 WALL STREET, 8TH FLOOR
NEW YORK, NEW YORK 10005
TEL: (212) 968-8600
FAX: (212) 968-8601
INFO@MANCHANDA-LAW.COM
WWW.MANCHANDA-LAW.COM

June 25, 2019

**VIA ELECTRONIC AND US MAIL**

Hon William H. Pauley III
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**RE:   Manchanda v Navient Student Loans; 1:19-CV-05121-WHP**

Dear Judge Pauley:

In response to Navient's challenging of our causes of action originally brought in NYS Supreme Court index no 154359/2019 which they removed to this federal SDNY court, we have elected to eliminate any and all inapplicable state and common law causes of action to focus on the federal statutes, in our upcoming second amended complaint, which still includes newly added defendant ECMC Collection Agency, and for which the Fair Debt Collection Practices Act as amended by Public Law 111-203, title X, 124 Stat. 2092 (2010), applies to both Navient and ECMC in joint and several liability.

However, the other claims and causes of action must also survive a premature Motion to Dismiss by Navient.

Fraudulent Inducement To Contract

For example, under New York law, to state a claim for fraud in the inducement, "a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."

In this case ECMC misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce plaintiff reliance which plaintiff relied on, and which caused injury to the plaintiff. Navient then swooped in to absorb this entire fraudulent scheme to portray and enforce the entire debt as a federal student loan, when nearly 50% of it was not.

Here it is quite obvious when ECMC

(1) advertises itself as a student loan business when in reality it is an aggressive predatory collection agency,

(2) offers to get borrowers out of default with a relatively lower monthly payment of approximately $200 for 6 months,

(3) but then tacks on 50% of the original student loan remaining principal on to the debt (in our case approximately $50,000 collections cost on a $100,000 loan principal),

(4) then repackages and sells it to Navient, supposedly a bona fide federally backed student loan company, and then

(5) Navient uses any and all means to collect that artificially inflated new debt multiplying the original monthly payment to upwards of 800% of that monthly payment as a "federally backed student loan debt," exceeding a borrower's tax returns,

then there is no question that there exists false advertising, deceptive business practices, violations of the Fair Debt Collection Practices Act, fraudulent inducement to contract, thus causing massive intentional infliction of distress to its borrowers, who were probably in default through no fault of their own (loss of job, loss of limbs, bankruptcy, etc), as well as breach of contract, and unjust enrichment.

## Deceptive Business Practices

With regard to deceptive business practices, in New York, the primary unfair trade practices statute is General Business Law §§ 349-350-f. Section 349 applies to material deceptive acts and practices. Unfair Trade Practices Claims Under New York Law calls into consideration New York General Business Law § 349 which prohibits deceptive trade practices or acts. It has a broad application and covers nearly every economic activity. An injured person can bring a private lawsuit against the business to enjoin the deceptive act or practice, or to recover actual damages or $50, whichever amount is greater. In the case of willful or knowing violations, the court can increase the monetary damages award to an amount of not more than three times the actual damages, up to $1,000. Parties entitled to bring a private lawsuit under General Business Law § 349 include corporate competitors, not just consumers.

To recover under the statute, the plaintiff, whether a competitor or a consumer, must show that: (1) the defendant engaged in an act or practice that was materially deceptive; (2) the challenged act or practice was consumer-oriented; and (3) the consumer suffered an injury because of the deceptive act or practice.

An act or practice is considered materially deceptive if it is likely to affect a consumer's choice of goods or actions related to the goods.

A plaintiff bringing an unfair trade practices lawsuit will need to show that the deceptive acts or practices claimed were part of a pattern directed at the public generally. Actions and practices

have been found sufficiently consumer-oriented when they were standard or routine practices that potentially affected similarly situated consumers. For example, when an insurance company has not provided proper notice of a change in coverage, the lack of notice has been construed as an unfair trade practice.

In contrast to a claim under General Business Law § 350, which governs deceptive advertisements and product labels, a plaintiff suing under § 349 does not need to prove that a defendant intended to mislead the plaintiff or even that the consumer relied on the act or practice in an unfair trade practice claim. The conduct does not have to be at the level of fraud to be actionable, and even an omission can count as an unfair trade practice. Mere "puffery" is not actionable in New York. However, the deception itself cannot be the only harm the plaintiff alleges. The injury must be actual, although it need not be pecuniary.

Fraudulent Misrepresentation

Fraudulent misrepresentation involves a party making a false statement to another party, causing a deal between the two parties to be based on a false premise. If the false premise has a material effect on the deal, the law considers the contract between the parties to be invalid. The misrepresentation can be communicated in a number of formats, including writing, speech, a gesture, or even silence.

In order to win, a plaintiff must prove a number of things in a fraudulent misrepresentation case. The plaintiff must prove that a representation was made and that it was false. Furthermore, it is necessary to prove that the representation was known to be false when it was made or that it was made recklessly without knowledge of its truth. It is necessary to prove that the representation was made with the intention that the other party rely on it and that the other party did rely on it. Finally, the plaintiff must prove that it suffered damages as a result of its reliance.

If a plaintiff proves a case of fraudulent misrepresentation, it may be entitled to rescission of the contract. This means that the plaintiff can choose to breach the terms of the contract without damages. A plaintiff may also be entitled to receive damages consisting of actual losses stemming from the misrepresentation. If the plaintiff has not suffered actual damages, it probably will not be able to recover damages.

False Advertising

Pursuant to General Business Law § 350, false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is declared unlawful.

Based on the allegations in the complaint, there is no question that ECMC and Navient working together, engaged in (1) consumer oriented conduct that was (2) materially misleading that (3) caused injury to the plaintiff. Koch v. Acker, Merrall & Conduit Co., 18 NY3d 940, 941 (NY 2012); Denenberg v Rosen, 71 AD3d 187, 194 (NY 1st Dept 2010).

When ECMC falsely, misleadingly claimed and represented that it was a federal student loan agency, and not a ruthless unethical collections agency which gouged plaintiff for nearly 50% of the original student loan amount principal left to pay, and engaged in predatory collections tactics, and then Navient purchased this entire debt, they both clearly and symbiotically engaged in misleading behavior in a consumer oriented manner, affecting other consumers similarly situated or aimed at the general public. 84 Lbr. Co. LP v. Barringer, 110 AD3d 1224, 1227 (NY 3d Dept 2013).

When ECMC advertises itself as a student loan business when in reality it is an aggressive predatory collection agency, offers to get borrowers out of default with a relatively lower monthly payment of approximately $200 for 6 months, but then tacks on 50% of the original student loan remaining principal on to the debt, then repackages and sells it to Navient, supposedly a bona fide federally backed student loan company, and then Navient uses any and all means to collect that artificially inflated new debt multiplying the original monthly payment to upwards of 800% of that monthly payment as a "federally backed student loan debt," exceeding a borrower's tax returns, then there is no question that there exists false advertising, deceptive business practices, violations of the Fair Debt Collection Practices Act, fraudulent inducement to contract, ths causing massive intentional infliction of distress to its borrowers, who were probably in default through no fault of their own (loss of job, loss of limbs, bankruptcy, etc).

### Intentional/Negligent Infliction of Emotional/Physical Distress

There can also be no question that ECMC and Navient together have acted in concert to engage in (1) extreme and outrageous conduct (2) with intent to cause, or disregard a substantial probability of causing severe emotional distress with a (3) causal connection between the conduct and the injury coupled with (4) severe emotional distress. Howell v. New York Post Co, 81 NY2d 115, 121 (NY 1993); Klein v. Metropolitan Child Services Inc, 100 AD3d 708, 710 (NY 2d Dept 2012). With regards to negligent infliction, there is not even a requirement of physical injury when the mental injury is a direct, rather than consequential result of the breach where the claim possesses some guarantee of genuineness. Ornstein v. New York City Health & Hosps Corp, 10 NY 3d 1, 6 (NY 2008).

### Breach of Contract Claim

In New York, "The elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, [and] (4) resulting damage." 2 Leon C. Lazer, et al., New York Pattern Jury Instructions - Civil § 4.1, at 594 (2d ed. 2006); see JP Morgan Chase v. J.H. Elec. of N.Y., Inc., 69 A.D.3d 802, 803, 893 N.Y.S.2d 237 (2d Dep't 2010); Furia v. Furia, 116 A.D.2d 694, 498 N.Y.S.2d 12, 13 (2d Dep't 1986).

Breach of contract occurs when a party does not perform its contractual obligations. Disputes occur when a party misinterprets the contract's terms and conditions. If you have

met your obligations — but the other party has not — there has been a breach. Here, plaintiff is now being coerced to pay Navient a 800% markup in his monthly student loan payments when he originally contracted with ECMC for 12.5% of what he is now being forced to pay. However, you cannot recover damages unless the breach is "material." A material breach is so substantial that it defeats the purpose of the contract. Certainly an 800% monthly arkup is sufficiently "material" to warrant a breach of contract claim.

In contrast to defendant Navient's claim in their Letter to the Court, plaintiff is complying with the subject contract(s) by paying the 800% markup each and every month, albeit under protest, a prerequisite to a claim under New York law. Harsco Corp v Segui, 91 F3d 337, 348 (2d Cir 1996).

Defendant clings to the 2014 bankruptcy discharge and 2016 bankruptcy filing as a grounds to challenge the breach of contract claim but disregards the fact that this was only one element contributing to his temporary student loan default, thus ushering in ECMC's predatory collection behavior and Navient's purchase of the entire consolidated debt thereof.

Unjust Enrichment

To state a claim for unjust enrichment in New York, a plaintiff must establish that (1) the defendant benefitted; (2) the defendant benefitted at the plaintiff's expense; and (3) that equity and good conscience require restitution. Tasini v. AOL Inc., No. 11 Civ. 2472 (S.D.N.Y. March , 2012). Ultimately, a court must be persuaded that it would be against equity and good conscience to allow a defendant to retain what the plaintiff seeks to recover. Id. at 9. When bargaining, it is important that parties are clear about one another's expectations.

Here it is quite obvious that when ECMC advertises itself as a student loan business when in reality it is an aggressive predatory collection agency, offers to get borrowers out of default with a relatively lower monthly payment of approximately $200 for 6 months, but then tacks on 50% of the original student loan remaining principal on to the debt (here almost $50,000 on an almost $100,000 original debt), then repackages and sells it to Navient, supposedly a bona fide federally backed student loan company, and then Navient uses any and all means to collect that artificially inflated new debt multiplying the original monthly payment to upwards of 800% of that monthly payment as a "federally backed student loan debt," exceeding a borrower's tax returns, then there is no question that there exists false advertising, deceptive business practices, violations of the Fair Debt Collection Practices Act, fraudulent inducement to contract, thus causing massive intentional infliction of distress to its borrowers, who were probably in default through no fault of their own (loss of job, loss of limbs, bankruptcy, etc), breach of contract, and unjust enrichment.

To survive a motion to dismiss an unjust enrichment claim, a plaintiff must allege a direct relationship that unjustly induced the plaintiff's reliance and that equity and good conscience requires the court to compensate the plaintiff for the benefit

provided, all of which a plaintiff must later prove to prevail on that claim.

Conversion

In New York, the elements of conversion are (1) intent, (2) interference to the exclusion of the owner's rights, and (3) possession, or the right to possession in plaintiff. 2 Leon C. Lazer, et al., New York Pattern Jury Instructions - Civil § 3.1 (2d ed. 2006); Employers' Fire Ins. Co. v. Cotten, 245 N.Y. 102, 156 N.E. 629 (N.Y. 1927)); Meese v. Miller, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981).

In contrast to Navient's assertions in their Letter to the Court, plaintiff certainly has been paying under duress and coercion more to Navient than what was owed, with an 800% markup then what he thought he was contracting for with ECMC. Colavito v. New York Organ Donor Network Inc., 8 NY3d 43, 50 (NY 2006).

Usury

In contrast to Navient's comments that the interest rate on the loan did not exceed 16%, when the facts already demonstrate that plaintiff is now paying nearly 800% of what he originally contracted for, and the ECMC collection cost was approximately 50% of the original student loan principal. Gen Oblig. Law § 5-501(1); Penal Law § 190.40.

Fair Debt Collection Practices Act and Fiduciary Duties

By far the easiest cause of action against ECMC and Navient in joint and several liability are their wholesale and massive violations of the FDCPA because ECMC is a debt collector and in conjunction with Navient the latter becomes a debt collector. According to FDCPA § 802 pertaining to Abusive Practices there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

According to FDCPA § 803 the term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. Any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii)

concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

While Navient keeps asserting that it is not a "debt collector" it continues to ignore the facts contained herein, that it is intertwined inextricably with ECMC and their behavior throughout.

So egregious and widespread are Navient and ECMC's violations of the Fair Debt Collection Practices Act that the entire statute has been printed out and reproduced here as an Exhibit.

Respectfully submitted,

Rahul Manchanda, Esq.