UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

Index No 1:19-CV-05121

Rahul Manchanda,

                Plaintiff,         **SECOND AMENDED COMPLAINT**

 -against-

Navient Student Loans & Educational
Credit Management Corporation ("ECMC"),

                Defendants.

----------------------------------x

      Plaintiff, Rahul Manchanda, for its Complaint against Defendants alleges:

1.    Plaintiff, at all times relevant hereto, has a business office located at 30 Wall Street, 8th Floor, New York, NY 10005, and a home address of 1 West End Avenue, Apt 14B, New York NY 10023.

2.    Defendants predominantly reside and work in New York City, Pennsylvania and all throughout the USA and possibly the world.

3.    This complaint concerns the illegal, unlawful, dishonest, extortionate, unfair, fraudulent, and incompetent business practices of Navient Student Loans ("Navient") and Educational Credit Management Corporation ("ECMC").

4.    Navient is currently being sued for substantially the same

allegations contained herein in such courts as the U.S. District Court Southern District of New York by the Consumer Financial Protection Bureau ("CFPB"), sued by five states, including California, Illinois, Pennsylvania, Washington and Mississippi, who have alleged improper actions on behalf of student loan borrowers, follows action from the CFPB which sued Navient in January 2017 for "systematically and illegally [failing] borrowers at every stage of repayment," including: (a) created obstacles to repayment by providing bad information; (b) processed payments incorrectly; (c) failed to act when borrowers complained; (d) illegally cheated many struggling borrowers out of their rights to lower payments, which caused them to overpay for their student loans; (e) deceived private student loan borrowers about requirements to release their co-signer from the loan; and (f) harmed the credit of disabled borrowers, including severely injured veterans (**Exhibit A**);

5. In this lawsuit it is also alleged that ECMC in conjunction with Navient illegally retaliated against, collected on, and punished Plaintiff when he filed for and obtained a bankruptcy discharge in 2014 in the Bankruptcy Court of Southern District of New York, when due to this bankruptcy Plaintiff was temporarily and through no fault of his own, in temporary default on paying his monthly student loan payments;

6.   Navient and ECMC by behaving in this manner is in contempt of federal bankruptcy court and the terms of discharge, when they illegally added approximately $60,000 in "collections fees" to his otherwise already high student loans which were substantially paid off since the late 1990s, of almost 50% of the remaining principal balance remaining, thus further compounding Plaintiff's financial woes and undermining any and all discharges obtained by the Plaintiff, in complete and total violation of federal bankruptcy law, dooming Plaintiff to further "debt slavery" in violation of state and federal law;

7.   Not only that, but in April 2019 Navient demanded that Plaintiff pay a monthly student loan payment amount that completely and totally is both way too high and, percentage wise, also violates both state and federal law according to Plaintiff's tax returns, thus again forcing Plaintiff and his family into illegal "debt slavery;"

8.   Plaintiff had complained to the NY Attorney General, Consumer Financial Protection Bureau, the US Department of Justice, Pennsylvania Attorney General, Delaware Attorney General, Better Business Bureau of Delaware in March 2018 for also illegally, fraudulently, and unethically trying to transform Plaintiff's student loan debt from its original approximately $98,000 still owed, then tacking on their approximately illegal

$60,000 "collection fee" as punishment/retaliation for Plaintiff's bankruptcy discharge, and then bizarrely and for no reason more than doubling it to $309,000, for no reason whatsoever (**Exhibit B**) - these complaints it is believed are what contributed/led to all of these federal/state/local agencies and multiple States Attorneys General to sue Navient which is still going on to the present day;

Fraudulent Inducement To Contract

9.  For example, under New York law, to state a claim for fraud in the inducement, "a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."

10. In this case ECMC misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce plaintiff reliance which plaintiff relied on, and which caused injury to the plaintiff-Navient then swooped in to absorb this entire fraudulent scheme to portray and enforce the entire debt as a federal student

loan, when nearly 50% of it was not.

11. Here it is quite obvious when ECMC:

(A) advertises itself as a student loan business when in reality it is an aggressive predatory collection agency,

(B) offers to get borrowers out of default with a relatively lower monthly payment of approximately $200 for 6 months,

(C) but then tacks on 50% of the original student loan remaining principal on to the debt (in our case approximately $50,000 collections cost on a $100,000 loan principal),

(D) then repackages and sells it to Navient, supposedly a *bona fide* federally backed student loan company, and then

(E) Navient uses any and all means to collect that artificially inflated new debt multiplying the original monthly payment to upwards of 800% of that monthly payment as a "federally backed student loan debt," exceeding a borrower's tax returns,

then there is no question that there exists false advertising, deceptive business practices, violations of the Fair Debt Collection Practices Act, fraudulent inducement to contract, thus causing

massive intentional infliction of distress to its borrowers, who were probably in default through no fault of their own (loss of job, loss of limbs, bankruptcy, etc), as well as breach of contract, and unjust enrichment.


Deceptive Business Practices

12. With regard to deceptive business practices, in New York, the primary unfair trade practices statute is General Business Law §§ 349-350-f.

13. Section 349 applies to material deceptive acts and practices.

14. Unfair Trade Practices Claims Under New York Law calls into consideration New York General Business Law § 349 which prohibits deceptive trade practices or acts.

15. It has a broad application and covers nearly every economic activity.

16. An injured person can bring a private lawsuit against the business to enjoin the deceptive act or practice, or to recover actual damages or $50, whichever amount is greater.

17. In the case of willful or knowing violations, the court can

increase the monetary damages award to an amount of not more than three times the actual damages, up to $1,000.

18. Parties entitled to bring a private lawsuit under General Business Law § 349 include corporate competitors, not just consumers.

19. To recover under the statute, the plaintiff, whether a competitor or a consumer, must show that:

(A) the defendant engaged in an act or practice that was materially deceptive;

(B) the challenged act or practice was consumer-oriented; and

(C) the consumer suffered an injury because of the deceptive act or practice.

20. An act or practice is considered materially deceptive if it is likely to affect a consumer's choice of goods or actions related to the goods.

21. A plaintiff bringing an unfair trade practices lawsuit will need to show that the deceptive acts or practices claimed were part of a pattern directed at the public generally.

22. Actions and practices have been found sufficiently consumer-oriented when they were standard or routine practices that potentially affected similarly situated consumers.

23. For example, when an insurance company has not provided proper notice of a change in coverage, the lack of notice has been construed as an unfair trade practice.

24. In contrast to a claim under General Business Law § 350, which governs deceptive advertisements and product labels, a plaintiff suing under § 349 does not need to prove that a defendant intended to mislead the plaintiff or even that the consumer relied on the act or practice in an unfair trade practice claim.

25. The conduct does not have to be at the level of fraud to be actionable, and even an omission can count as an unfair trade practice.

26. Mere "puffery" is not actionable in New York.

27. However, the deception itself cannot be the only harm the plaintiff alleges.

28. The injury must be actual, although it need not be pecuniary.

## Fraudulent Misrepresentation

29. Fraudulent misrepresentation involves a party making a false statement to another party, causing a deal between the two parties to be based on a false premise.

30. If the false premise has a material effect on the deal, the law considers the contract between the parties to be invalid.

31. The misrepresentation can be communicated in a number of formats, including writing, speech, a gesture, or even silence.

32. In order to win, a plaintiff must prove a number of things in a fraudulent misrepresentation case.

33. The plaintiff must prove that a representation was made and that it was false.

34. Furthermore, it is necessary to prove that the representation was known to be false when it was made or that it was made recklessly without knowledge of its truth.

35. It is necessary to prove that the representation was made with the intention that the other party rely on it and that the other party did rely on it.

36. Finally, the plaintiff must prove that it suffered damages as a result of its reliance.

37. If a plaintiff proves a case of fraudulent misrepresentation, it may be entitled to rescission of the contract.

38. This means that the plaintiff can choose to breach the terms of the contract without damages.

39. A plaintiff may also be entitled to receive damages consisting of actual losses stemming from the misrepresentation.

40. If the plaintiff has not suffered actual damages, it probably will not be able to recover damages.


False Advertising

41. Pursuant to General Business Law § 350, false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is declared unlawful.

42. Based on the allegations in the complaint, there is no question that ECMC and Navient working together, engaged in:

   (A) consumer oriented conduct that was

(B) materially misleading that

(C) caused injury to the plaintiff. <u>Koch v. Acker, Merrall &</u>
<u>Conduit Co.</u>, 18 NY3d 940, 941 (NY 2012); <u>Denenberg v Rosen</u>, 71 AD3d
187, 194 (NY 1st Dept 2010).

43. When ECMC falsely, misleadingly claimed and represented that it
    was a federal student loan agency, and not a ruthless unethical
    collections agency which gouged plaintiff for nearly 50% of the
    original student loan amount principal left to pay, and engaged
    in predatory collections tactics, and then Navient purchased
    this entire debt, they both clearly and symbiotically engaged
    in misleading behavior in a consumer oriented manner, affecting
    other consumers similarly situated or aimed at the general
    public. <u>84 Lbr. Co. LP v. Barringer</u>, 110 AD3d 1224, 1227 (NY 3d
    Dept 2013).

44. When ECMC advertises itself as a student loan business when in
    reality it is an aggressive predatory collection agency, offers
    to get borrowers out of default with a relatively lower monthly
    payment of approximately $200 for 6 months, but then tacks on
    approximately 50% of the original student loan remaining
    principal on to the debt, then repackages and sells it to
    Navient, supposedly a *bona fide* federally backed student loan
    company, and then Navient uses any and all means to collect

that artificially inflated new debt multiplying the original monthly payment to upwards of 800% of that monthly payment as a "federally backed student loan debt," exceeding a borrower's tax returns, then there is no question that there exists false advertising, deceptive business practices, violations of the Fair Debt Collection Practices Act, fraudulent inducement to contract, thus causing massive intentional infliction of distress to its borrowers, who were probably in default through no fault of their own (loss of job, loss of limbs, bankruptcy, etc).

## Intentional/Negligent Infliction of Emotional/Physical Distress

45. There can also be no question that ECMC and Navient together have acted in concert to engage in

    (A) extreme and outrageous conduct

    (B) with intent to cause, or disregard a substantial probability of causing severe emotional distress with a

    (C) causal connection between the conduct and the injury coupled with

    (D) severe emotional distress. <u>Howell v. New York Post Co</u>, 81

NY2d 115, 121 (NY 1993); <u>Klein v. Metropolitan Child Services Inc</u>, 100 AD3d 708, 710 (NY 2d Dept 2012).

46. With regards to negligent infliction, there is not even a requirement of physical injury when the mental injury is a direct, rather than consequential result of the breach where the claim possesses some guarantee of genuineness. <u>Ornstein v. New York City Health & Hosps Corp</u>, 10 NY 3d 1, 6 (NY 2008).

<u>Breach of Contract Claim</u>

47. In New York, "The elements of a cause of action for breach of contract are

(A) formation of a contract between plaintiff and defendant,

(B) performance by plaintiff,

(C) defendant's failure to perform, [and]

(D) resulting damage."   2 Leon C. Lazer, et al., New York Pattern Jury Instructions – Civil § 4.1, at 594 (2d ed. 2006); see <u>JP Morgan Chase v. J.H. Elec</u>. of N.Y., Inc., 69 A.D.3d 802, 803, 893 N.Y.S.2d 237 (2d Dep't 2010); <u>Furia v. Furia</u>, 116 A.D.2d 694, 498 N.Y.S.2d 12, 13 (2d Dep't 1986).

48. Breach of contract occurs when a party does not perform its contractual obligations.

49. Disputes occur when a party misinterprets the contract's terms and conditions.

50. If you have met your obligations — but the other party has not — there has been a breach.

51. Here, plaintiff is now being coerced to pay Navient a 800% markup in his monthly student loan payments when he originally contracted with ECMC for 12.5% of what he is now being forced to pay.

52. However, you cannot recover damages unless the breach is "material."

53. A material breach is so substantial that it defeats the purpose of the contract.

54. Certainly an 800% monthly markup is sufficiently "material" to warrant a breach of contract claim.

55. In contrast to defendant Navient's claim in their Letter to the Court, plaintiff is complying with the subject contract(s) by

paying the 800% markup each and every month, albeit under protest, a prerequisite to a claim under New York law. <u>Harsco Corp v Segui</u>, 91 F3d 337, 348 (2d Cir 1996).

56. Defendant clings to the 2014 bankruptcy discharge and 2016 bankruptcy filing as a grounds to challenge the breach of contract claim but disregards the fact that this was only one element contributing to his temporary student loan default, thus ushering in ECMC's predatory collection behavior and Navient's purchase of the entire consolidated debt thereof.

## Unjust Enrichment

57. To state a claim for unjust enrichment in New York, a plaintiff must establish that

   (A) the defendant benefitted;

   (B) the defendant benefitted at the plaintiff's expense; and

   (C) that equity and good conscience require restitution. <u>Tasini v. AOL Inc.</u>, No. 11 Civ. 2472 (S.D.N.Y. March , 2012).

58. Ultimately, a court must be persuaded that it would be against equity and good conscience to allow a defendant to retain what

the plaintiff seeks to recover. Id. at 9.

59. When bargaining, it is important that parties are clear about one another's expectations.

60. Here it is quite obvious that when ECMC advertises itself as a student loan business when in reality it is an aggressive predatory collection agency, offers to get borrowers out of default with a relatively lower monthly payment of approximately $200 for 6 months, but then tacks on approximately 50% of the original student loan remaining principal on to the debt (here almost $50,000 on an almost $100,000 original debt), then repackages and sells it to Navient, supposedly a *bona fide* federally backed student loan company, and then Navient uses any and all means to collect that artificially inflated new debt multiplying the original monthly payment to upwards of 800% of that monthly payment as a "federally backed student loan debt," exceeding a borrower's tax returns, then there is no question that there exists false advertising, deceptive business practices, violations of the Fair Debt Collection Practices Act, fraudulent inducement to contract, thus causing massive intentional infliction of distress to its borrowers, who were probably in default through no fault of their own (loss of job, loss of limbs, bankruptcy, etc), breach of contract, and unjust enrichment.

61. To survive a motion to dismiss an unjust enrichment claim, a plaintiff must allege a direct relationship that unjustly induced the plaintiff's reliance and that equity and good conscience requires the court to compensate the plaintiff for the benefit provided, all of which a plaintiff must later prove to prevail on that claim.

## Conversion

62. In New York, the elements of conversion are

   (A) intent,

   (B) interference to the exclusion of the owner's rights, and

   (C) possession, or the right to possession in plaintiff. 2 Leon C. Lazer, et al., New York Pattern Jury Instructions – Civil § 3.1 (2d ed. 2006); Employers' Fire Ins. Co. v. Cotten, 245 N.Y. 102, 156 N.E. 629 (N.Y. 1927)); Meese v. Miller, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981).

63. In contrast to Navient's assertions in their Letter to the Court, plaintiff certainly has been paying under duress and coercion more to Navient than what was owed, with an 800% markup then what he thought he was contracting for with ECMC.

Colavito v. New York Organ Donor Network Inc., 8 NY3d 43, 50
(NY 2006).

## Usury

64. In contrast to Navient's comments that the interest rate on the
    loan did not exceed 16%, when the facts already demonstrate
    that plaintiff is now paying nearly 800% of what he originally
    contracted for, and the ECMC collection cost was approximately
    50% of the original student loan principal. Gen Oblig. Law § 5-
    501(1); Penal Law § 190.40.

## Fair Debt Collection Practices Act and Fiduciary Duties

65. By far the easiest cause of action against ECMC and Navient in
    joint and several liability are their wholesale and massive
    violations of the FDCPA because ECMC is a debt collector and in
    conjunction with Navient the latter becomes a debt collector.

66. According to FDCPA § 802 pertaining to Abusive Practices there
    is abundant evidence of the use of abusive, deceptive, and
    unfair debt collection practices by many debt collectors.

67. Abusive debt collection practices contribute to the number of
    personal bankruptcies, to marital instability, to the loss of

jobs, and to invasions of individual privacy.

68. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce.

69. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

70. According to FDCPA § 803 the term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

71. The term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

72. Any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity

(A) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

(B) concerns a debt which was originated by such person;

(C) concerns a debt which was not in default at the time it was obtained by such person; or

(D) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

73. While Navient keeps asserting that it is not a "debt collector" it continues to ignore the facts contained herein, that it is intertwined inextricably with ECMC and their behavior throughout.

74. So egregious and widespread are Navient and ECMC's violations of the Fair Debt Collection Practices Act that the entire statute has been printed out and reproduced here as an Exhibit.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS

75. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

76. Therefore Plaintiff herein sues for actual and punitive damages $100,000,000 for fraudulent inducement to contract;

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS

77. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

78. Plaintiff also sues for actual and punitive damages for $100,000,000 for false advertising;

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS

79. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

80. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for intentional and negligent infliction of emotional and physical distress for the severe abuse that he, his pregnant wife, elderly mother and friends have endured for more than 1 year as described herein, backed up by medical evidence;

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS

81. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

82. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for breach of contract;

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS

83. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

84. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for repeated acts of bankruptcy stay and discharge violations;

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS

85. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

86. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq prohibiting from engaging in abusive, deceptive, and unfair debt collection efforts;

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS

87. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

88. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for unjust enrichment;

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS

89. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

90. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for unlawful/deceptive/fraudulent business practices;

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANTS

91. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

92. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for conversion/theft;

## AS AND FOR A TENTH CAUSE OF ACTION AGAINST DEFENDANTS

93. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

94. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for breach of fiduciary duty;

## AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST DEFENDANTS

95. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

96. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for breach of the duty of loyalty;

## AS AND FOR A TWELVTH CAUSE OF ACTION AGAINST DEFENDANTS

97. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

98. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for criminal and civil usury;

## AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST DEFENDANT

99. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

100. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for wire fraud pursuant to 18 USC § 1343;

## AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST DEFENDANT

101. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

102. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for fraudulent misrepresentation;

## AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST DEFENDANT

103. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

104. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for defamation, slander and libel;

## AS AND FOR A SIXTEENTH CAUSE OF ACTION AGAINST DEFENDANT

105. Plaintiff repeats and realleges each and every allegation

contained in paragraphs 1 through 74 of this Complaint.

106. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for mail fraud pursuant to 18 USC § 1341;

107. such other and further relief as the Court deems just and proper, including applicable interest, costs and disbursements of this action.

**Dated:**    New York, NY
         July 1, 2019

_[signature]_
_____
Rahul Manchanda, Esq.
30 Wall Street, 8th Floor
New York, NY 10005
Tel: (212) 968-8600
Fax: (212) 968-8601
Email: info@manchanda-law.com