UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x

Index No 1:19-CV-05121

Rahul Manchanda,

                    Plaintiff,          **THIRD AMENDED COMPLAINT**

-against-


Navient Student Loans & Educational
Credit Management Corporation ("ECMC"),

                    Defendants.

---------------------------------x

Plaintiff, Rahul Manchanda, for its Complaint against Defendants Navient Student Loans ("Navient") and Educational Credit Management Corporation ("ECMC") alleges the following:


**INTRODUCTION**


1.  Plaintiff brings this action under the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and its implementing regulation, Regulation V, 12 C.F.R. part 1022; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, as well as several New York State CPLR based claims (fraudulent inducement to contract, false advertising, breach of contract, unlawful/deceptive/fraudulent business practices, civil usury, fraudulent misrepresentation, and defamation/slander/libel)

based on unlawful acts and practices in connection with Defendants' servicing and collection of student loans.

2.    Plaintiff seeks to obtain permanent injunctive relief, restitution, refunds, damages, civil money penalties, and other relief for Defendants' violations of Federal consumer financial laws and corresponding New York State laws governing the illegal, unlawful, deceptive, dishonest, unfair, fraudulent, and incompetent business practices of Navient and ECMC.

3.    Navient is currently being sued for substantially the same allegations contained herein by the Consumer Financial Protection Bureau ("CFPB"), sued by five states, including California, Illinois, Pennsylvania, Washington and Mississippi, who have alleged improper actions on behalf of student loan borrowers, following action from the CFPB which sued Navient in January 2017 for "systematically and illegally failing borrowers at every stage of repayment," including: (a) creating obstacles to repayment by providing bad information; (b) processing payments incorrectly; (c) failing to act when borrowers complained; (d) illegally cheating many struggling borrowers out of their rights to lower payments, which caused them to overpay for their student loans; (e) deceiving private student loan borrowers about requirements to release their co-signer from the loan; (f) harming the credit of borrowers;

(g) illegally steering borrowers into unnecessarily high repayment plans; and (h) failing to disclose high collections costs when deceiving/coercing borrowers into their fraudulent loan rehabilitation/repayment plans;

4. Navient and ECMC by behaving in this manner illegally added approximately $60,000 in "collections fees" to Plaintiff's otherwise already high student loans which were substantially paid off since the late 1990s, of almost 50% of the remaining principal balance remaining of approximately $98,000, thus further compounding Plaintiff's financial woes dooming Plaintiff to further debt slavery in violation of state and federal law;

5. Additionally ECMC (a) lied and misrepresented to Plaintiff that they were a student loan company not a collections agency, (b) failed to disclose or inadequately disclosed that collections fees of such a high amount (60% of remaining loan principal) would be assessed if at all, (c) lied to Plaintiff that a low monthly payment for approximately 6 months of approximately $200 would get him out of default, (d) that any and all derogatory information would be removed from his credit report, (e) that his future monthly payments would then be approximately the same as he was paying to get out of default, (f) all the while using pushy, coercive, and nearly

extortionate salesman tactics and aggressive stalker-like behavior to get Plaintiff to finally acquiesce and agree to work with them;

6.   But in April 2019 Navient demanded that Plaintiff pay a monthly student loan payment amount that was completely and totally too high (more than $1600 per month) on an original remaining loan balance of approximately $98,000, to a first erroneously declared new balance of approximately $309,000 then reduced due after they discovered their error to approximately $160,000, percentage wise violating both state and federal usury laws according to Plaintiff's tax returns, thus again forcing Plaintiff and his family into illegal debt slavery;

7.   Plaintiff had complained to the NY Attorney General, Consumer Financial Protection Bureau, the US Department of Justice, Pennsylvania Attorney General, Delaware Attorney General, Better Business Bureau of Delaware in March 2018 for also illegally, fraudulently, and unethically trying to transform Plaintiff's student loan debt from its original approximately $98,000 still owed, then tacking on their approximately illegal $60,000 "collection fee", and then bizarrely and for no reason more than doubling it to $309,000, for no reason whatsoever - these complaints it is believed are what contributed/led to all of these federal/state/local agencies and multiple States

Attorneys General to sue Navient which is still going on to the present day;

8. Neither Navient nor ECMC advised Plaintiff of other methods of repayment or repackaging, merely pushing him into costly "forbearance" over and over while continuing to assess astronomical interest and other charges which made his original student loan debt nearly double, with his monthly student loan repayment increasing to 800% after their fraudulently induced "loan rehabilitation" charade;

9. Despite assuring Plaintiff that it would help him find the right repayment option for his circumstance, ECMC and Navient working together jointly steered Plaintiff already experiencing financial hardship into costly payment relief instead of affordable long-term repayment options that were more beneficial to Plaintiff in light of his financial situation;

10. Taken together, these practices prevented Plaintiff from securing some or all of the benefits of other plans that were intended to ease the burden of his unaffordable student debt;

11. ECMC and Navient's servicing failures, however, were not just limited to enrolling and renewing Plaintiff in affordable repayment plans – Navient and ECMC also misreported information

to consumer credit reporting agencies by making it appear as if Plaintiff had continued to default on his student loan and also that he owed $309,000 when he did not, damaging his credit, even after Plaintiff had complained to Navient and ECMC about these errors.

12. ECMC is a large debt collector that primarily collects or has collected defaulted federal student loan debt allegedly on behalf of the U.S. Department of Education and several state-based loan guaranty agencies;

13. The U.S. Department of Education and state-based guaranty agencies have upon information and belief collectively referred billions in defaulted student loan balances to ECMC for collection;

14. Much of ECMC's work relates to a federal loan rehabilitation program, which is a program that allows federal student loan borrowers who are in default to effectively "cure" one or more defaulted federal loans;

15. In seeking to enroll consumers in the rehabilitation program, ECMC systematically misled Plaintiff about the effect of rehabilitation on the consumer's credit report and either did not disclose or under reported the amount of collection fees

that would be assessed or forgiven by enrolling in their program;

**JURISDICTION AND VENUE**

16. This Court has subject-matter jurisdiction over this action because it presents a federal question, 28 U.S.C. § 1331;

17. Venue is proper in this district because Plaintiff and Defendants are located, reside, and/or do business in this district, and/or a substantial part of the events or omissions giving rise to the claims occurred in this district. 28 U.S.C. § 1391(b), (c); 12 U.S.C. § 5564(f);

**PLAINTIFF**

18. Plaintiff, at all times relevant hereto, has a business office located at 30 Wall Street, 8th Floor, New York, NY 10005, and a home address of 1 West End Avenue, Apt 14B, New York NY 10023;

**DEFENDANTS**

19. Defendants predominantly reside and work in New York City, Pennsylvania and all throughout the USA and possibly the world;

20. This complaint concerns the illegal, unlawful, deceptive, dishonest, unfair, fraudulent, coercive, extortionate, harassing, and incompetent business practices of Navient Student Loans ("Navient") and Educational Credit Management Corporation ("ECMC");

21. Navient Solutions, Inc. has offered or provided a "consumer financial product or service," and therefore is and was a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(I);

22. ECMC principally engages in debt collection activities related to outstanding and delinquent student loans on behalf of several owners of federal student loans, and is a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6);

23. At all times relevant to this complaint, ECMC has offered or provided a "consumer financial product or service," and therefore is and was a "covered person" under the CFPA. 12 U.S.C. § 5481(6), (15)(A)(x);

24. Navient Corporation and ECMC are each a "covered person" for all purposes of Federal consumer financial law, 12 U.S.C. § 5481(25), and ECMC is specifically a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6);

25. There has been upon information and belief significant overlap between the corporate governance and management of Navient and ECMC;

**FIRST CLAIM - Fraudulent Inducement To Contract**

26. In addition to the multiple federal causes of action, under New York State law, to state a claim for fraud in the inducement, a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."

27. In this case ECMC working together with Navient misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce plaintiff reliance which plaintiff relied on, and which caused injury to the plaintiff, failed to disclose or inadequately disclosed that collections fees of such a high amount (60% of remaining loan principal) would be assessed if at all, lied to Plaintiff that a low monthly payment for approximately 6 months of approximately $200 would get him out of default, lied or misrepresented that any and all derogatory information would be

removed from his credit report, that his monthly payments would then be approximately the same as he was paying to get out of default, all the while using pushy, coercive, nearly extortionate salesman tactics and aggressive stalker-like behavior using phones and email to get Plaintiff to finally acquiesce and agree to work with them;;

28. Navient then swooped in to absorb this entire fraudulent scheme to portray and enforce the entire debt as a federal student loan, when nearly 50% of it was not, and then forcing Plaintiff to pay upwards of 800% of what he was previously paying to ECMC to get out of default;

29. Therefore Plaintiff herein sues for actual and punitive damages $100,000,000 for fraudulent inducement to contract;

**SECOND CLAIM - Deceptive Business Practices**

30. With regard to deceptive business practices, in New York, the primary unfair trade practices statute is General Business Law §§ 349-350-f;

31. An injured person can bring a private lawsuit against the business to enjoin the deceptive act or practice, or to recover actual damages;

32. To recover under the statute, the plaintiff, whether a competitor or a consumer, must show that: (a) the defendant engaged in an act or practice that was materially deceptive; (b) the challenged act or practice was consumer-oriented; and (c) the consumer suffered an injury because of the deceptive act or practice;

33. An act or practice is considered materially deceptive if it is likely to affect a consumer's choice of services or actions related to the services;

34. A plaintiff bringing an unfair trade practices lawsuit needs to show that the deceptive acts or practices claimed were part of a pattern directed at the public generally;

35. Actions and practices have been found sufficiently consumer-oriented when they were standard or routine practices that potentially affected similarly situated consumers;

36. In this case ECMC working together with Navient misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce plaintiff reliance which plaintiff relied on, and which caused injury to the plaintiff, failed to disclose or inadequately disclosed

that collections fees of such a high amount (60% of remaining loan principal) would be assessed if at all, lied to Plaintiff that a low monthly payment for approximately 6 months of approximately $200 would get him out of default, lied or misrepresented that any and all derogatory information would be removed from his credit report, that his monthly payments would then be approximately the same as he was paying to get out of default, all the while using pushy, coercive, nearly extortionate salesman tactics and aggressive stalker-like behavior using phones and email to get Plaintiff to finally acquiesce and agree to work with them;

37. Navient then swooped in to absorb this entire fraudulent scheme to portray and enforce the entire debt as a federal student loan, when nearly 50% of it was not, and then forcing Plaintiff to pay upwards of 800% of what he was previously paying to ECMC to get out of default;

38. To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for unlawful/deceptive/fraudulent business practices;

## CLAIM THREE - Fraudulent Misrepresentation

39. Fraudulent misrepresentation involves a party making a false

statement to another party, causing a deal between the two parties to be based on a false premise;

40. If the false premise has a material effect on the deal, the law considers the contract between the parties to be invalid.

41. The misrepresentation can be communicated in a number of formats, including writing, speech, a gesture, or even silence;

42. The plaintiff must prove that a representation was made and that it was false;

43. Furthermore, it is necessary to prove that the representation was known to be false when it was made or that it was made recklessly without knowledge of its truth;

44. It is necessary to prove that the representation was made with the intention that the other party rely on it, and that the other party did rely on it;

45. Finally, the plaintiff must prove that it suffered damages as a result of its reliance;

46. If a plaintiff proves a case of fraudulent misrepresentation, it may be entitled to rescission of the contract;

47.  A plaintiff may also be entitled to receive damages consisting
     of actual losses stemming from the misrepresentation;

48.  In this case ECMC working together with Navient misrepresented
     that they were in fact a federal student loan company when in
     reality they were a pure predatory collections agency charging
     illegally high collections costs in order to induce plaintiff
     reliance which plaintiff relied on, and which caused injury to
     the plaintiff, failed to disclose or inadequately disclosed
     that collections fees of such a high amount (60% of remaining
     loan principal) would be assessed if at all, lied to Plaintiff
     that a low monthly payment for approximately 6 months of
     approximately $200 would get him out of default, lied or
     misrepresented that any and all derogatory information would be
     removed from his credit report, that his monthly payments would
     then be approximately the same as he was paying to get out of
     default, all the while using pushy, coercive, nearly
     extortionate salesman tactics and aggressive stalker-like
     behavior using phones and email to get Plaintiff to finally
     acquiesce and agree to work with them;;

49.  Navient then swooped in to absorb this entire fraudulent scheme
     to portray and enforce the entire debt as a federal student
     loan, when nearly 50% of it was not, and then forcing Plaintiff
     to pay upwards of 800% of what he was previously paying to ECMC

to get out of default;

50.  To that end Plaintiff also sues for $100,000,000 in actual and punitive damages for fraudulent misrepresentation;

**CLAIM FOUR – False Advertising**

51.  Pursuant to General Business Law § 350, false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is declared unlawful;

52.  Based on the allegations in the complaint, there is no question that ECMC and Navient working together, engaged in: (a) consumer oriented conduct that was (b) materially misleading that (c) caused injury to the plaintiff;

53.  When ECMC falsely, misleadingly claimed and represented in emails and telephone that it was a federal student loan agency, and not a ruthless unethical collections agency which gouged plaintiff for nearly 50% of the original student loan amount principal left to pay, and engaged in predatory collections tactics, and then Navient purchased this entire debt, they both clearly and symbiotically engaged in misleading behavior in a consumer oriented manner, affecting other consumers similarly situated or aimed at the general public;

54. When ECMC advertised itself as a student loan business when in reality it is an aggressive predatory collection agency, offers to get borrowers out of default with a relatively lower monthly payment of approximately $200 for 6 months, but then tacks on approximately 50% of the original student loan remaining principal on to the debt, then repackages and sells it to Navient, supposedly a *bona fide* federally backed student loan company, and then Navient uses any and all means to collect that artificially inflated new debt multiplying the original monthly payment to upwards of 800% of that monthly payment as a federally backed student loan debt, exceeding a borrower's tax returns, then there is no question that there exists false advertising;

55. In this case ECMC working together with Navient misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce plaintiff reliance which plaintiff relied on, and which caused injury to the plaintiff, failed to disclose or inadequately disclosed that collections fees of such a high amount (60% of remaining loan principal) would be assessed if at all, lied to Plaintiff that a low monthly payment for approximately 6 months of approximately $200 would get him out of default, lied or misrepresented that any and all derogatory information would be

removed from his credit report, that his monthly payments would then be approximately the same as he was paying to get out of default, all the while using pushy, coercive, nearly extortionate salesman tactics and aggressive stalker-like behavior using phones and email to get Plaintiff to finally acquiesce and agree to work with them;;

56. Navient then swooped in to absorb this entire fraudulent scheme to portray and enforce the entire debt as a federal student loan, when nearly 50% of it was not, and then forcing Plaintiff to pay upwards of 800% of what he was previously paying to ECMC to get out of default;

57. Plaintiff therefore also sues Defendants for actual and punitive damages for $100,000,000 for false advertising;

**CLAIKM FIVE - Breach of Contract Claim**

58. In New York, the elements of a cause of action for breach of contract are (a) formation of a contract between plaintiff and defendant, (b) performance by plaintiff, (c)defendant's failure to perform, and (d) resulting damage;

59. Disputes occur when a party misinterprets the contract's terms and conditions;

60. If one party has met their obligations — but the other party has not — there has been a breach;

61. Here, Plaintiff is now being coerced to pay Navient an 800% markup in his monthly student loan payments when he originally contracted with ECMC for 12.5% of what he is now being forced to pay;

62. This breach is "material" as required by the statutes;

63. A material breach is defined as being so substantial, that it defeats the purpose of the contract;

64. Certainly an 800% monthly markup is sufficiently "material" to warrant a breach of contract claim;

65. Plaintiff is still complying with the subject contract by paying the 800% markup each and every month, albeit under protest and duress, a prerequisite to a claim under New York law;

66. In this case ECMC working together with Navient misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce plaintiff

reliance which plaintiff relied on, and which caused injury to the plaintiff, failed to disclose or inadequately disclosed that collections fees of such a high amount (60% of remaining loan principal) would be assessed if at all, lied to Plaintiff that a low monthly payment for approximately 6 months of approximately $200 would get him out of default, lied or misrepresented that any and all derogatory information would be removed from his credit report, that his monthly payments would then be approximately the same as he was paying to get out of default, all the while using pushy, coercive, nearly extortionate salesman tactics and aggressive stalker-like behavior using phones and email to get Plaintiff to finally acquiesce and agree to work with them;

67. Navient then swooped in to absorb this entire fraudulent scheme to portray and enforce the entire debt as a federal student loan, when nearly 50% of it was not, and then forcing Plaintiff to pay upwards of 800% of what he was previously paying to ECMC to get out of default;

68. Plaintiff therefore also sues for actual and punitive damages against Defendants for $100,000,000 for breach of contract;

**CLAIM SIX - Civil Usury**

69. The facts already demonstrate that plaintiff is now paying nearly 800% of what he originally contracted for, and the ECMC collection cost was approximately 50% of the original student loan principal. Gen Oblig. Law § 5-501(1); Penal Law § 190.40;

70. In New York State, the rate of interest upon the loan or forbearance of any money, goods, or things in action may not exceed 16% per year;

71. That is, in New York, charging interest of more than 16% per year is civil usury;

72. N.Y. Gen. Oblig. Law § 5-511 renders void any transaction taking interest in excess of that allowed by N.Y. Gen. Oblig. Law § 5-501;

73. Further, any person who has paid interest in excess of the (16%) rate authorized by N.Y. Gen. Oblig. Law § 5-501 may bring a civil lawsuit against the usurer to recover the amount of money paid above that lawful rate according to N.Y. Gen. Oblig. Law § 5-513;

74. Moreover, N.Y. Penal Law § 190.40 renders it a class E felony knowingly to charge, take, or receive interest at a rate exceeding 25% per year;

75.  In other words, in New York, charging, taking, or receiving interest of 25% or more per year is criminal usury;

76.  In this case ECMC working together with Navient misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce plaintiff reliance which plaintiff relied on, and which caused injury to the plaintiff, failed to disclose or inadequately disclosed that collections fees of such a high amount (60% of remaining loan principal) would be assessed if at all, lied to Plaintiff that a low monthly payment for approximately 6 months of approximately $200 would get him out of default, lied or misrepresented that any and all derogatory information would be removed from his credit report, that his monthly payments would then be approximately the same as he was paying to get out of default, all the while using pushy, coercive, nearly extortionate salesman tactics and aggressive stalker-like behavior using phones and email to get Plaintiff to finally acquiesce and agree to work with them;

77.  Navient then swooped in to absorb this entire fraudulent scheme to portray and enforce the entire debt as a federal student loan, when nearly 50% of it was not, and then forcing Plaintiff to pay upwards of 800% of what he was previously paying to ECMC

to get out of default;

78. Plaintiff also sues Defendants for actual and punitive damages for $100,000,000 for Civil Usury;

## CLAIM SEVEN - Violations of the Fair Debt Collection Practices Act

### Deceptive Acts or Practices Related to Rehabilitation Credit Reporting

79. The Fair Debt Collection Practices Act prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e;

80. As described above, ECMC made false, deceptive, and misleading representations to Plaintiff that completing the federal loan rehabilitation program would remove all adverse information regarding his loan from his credit report;

81. Therefore, ECMC, acting together with or on behalf of Navient, violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, 1692e(10);

### Deceptive Acts or Practices Related to Rehabilitation Collection

Costs

82.  The Fair Debt Collection Practices Act prohibits debt
     collectors from using "any false, deceptive, or misleading
     representation or means in connection with the collection of
     any debt," 15 U.S.C. § 1692e;

83.  As described above, ECMC made false, deceptive, and misleading
     representations to Plaintiff about the collection costs
     themselves, if any, that some or all of their collection fees
     related to the federal loan rehabilitation program would be
     forgiven by the U.S. Department of Education or that the exact
     amount of collection fees currently assessed to the account
     would be forgiven;

84.  Therefore, ECMC, acting together with or on behalf of Navient
     violated the Fair Debt Collection Practices Act, 15 U.S.C. §
     1692e, 1692e(10);

85.  By far the easiest cause of action to prove against ECMC and
     Navient in joint and several liability are their wholesale and
     massive violations of the FDCPA because ECMC is a debt
     collector and in conjunction with Navient the latter becomes a
     debt collector;

86. According to FDCPA § 802 pertaining to Abusive Practices there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by ECMC and Navient;

87. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy;

88. Abusive debt collection practices are carried on to a substantial extent by ECMC and Navient in interstate commerce and through means and instrumentalities of such commerce;

89. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce;

90. According to FDCPA § 803 the term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another;

91. The term includes any creditor who, in the process of collecting his own debts, uses any name other than his own

which would indicate that a third person is collecting or attempting to collect such debts;

92. Any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (a) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (b) concerns a debt which was originated by such person; (c)concerns a debt which was not in default at the time it was obtained by such person; or (d) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor;

93. While Navient asserts that they are not a "debt collector" it continues to ignore the facts contained herein, that it is intertwined inextricably with ECMC and their behavior throughout;

94. Egregious and widespread are Navient and ECMC's violations of the Fair Debt Collection Practices Act;

95. ECMC is in fact a "debt collector" within the meaning of 15 U.S.C. § 1692(a) wherein the term is defined as any entity/person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects

or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another;"

96. The term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts;

97. Such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests;

98. ECMC is subject to the FDCPA, and the exception for government actors applies only to an individual government official or employee who collects debts as part of his government employment responsibilities;

99. A guaranty agency is a private, nonprofit organization with a government contract – it is not a government agency or employee or a for-profit organization;

100. The FDCPA does not provide an exemption for a for-profit guaranty agencies that acquire a student loan after default in order to pursue its collection;

101. The Secretary of Education has also explicitly stated that [FFELP] third party collectors and their collection activity remain subject to the FDCPA;

102. ECMC is not an employee or an officer of the United States and was not acting within the bounds of any official duty to the United States when it violated the FDCPA as well as New York State law and is subject to the Act's requirements;

103. Although Congress has excluded state agencies and some non-profits under § 1692a(6), Congress has not specifically excluded agencies such as ECMC;

104. Where a statute names parties who come within its provision, other unnamed parties are excluded;

105. Because private guaranty agencies are not explicitly named under the exclusions in the statute, they are subject to the FDCPA;

106. It is not incongruent to find that a private non-profit corporation contracting with the United States should be treated differently than a state agency contracting with the United States;

107. The regulations directly applicable to this case recognize the distinction and actually differentiate between State governmental entities and private entities;

108. The provisions of 34 CFR § 682.410(b)(1)(v) indicate that the federal government recognized the "protection inherent in State governmental activities," and did not suggest that the distinct treatment given to State agencies as opposed to private non-profits is inconsistent;

109. The distinction made in the statute evidences the fact that Congress recognized that State agencies are subject to scrutiny and accountability to the legislature or their constituents for failure to act fairly and reasonably in enforcement of regulatory requirements, while agencies like ECMC are not subject to the same consequences;

110. Thus, Congress elected not to provide private agencies such as ECMC or Navient with the same protections;

111. This case involves a private entity ECMC that may have contracted with the government;

112. Section 1692a(6)(C) was simply not meant to create such protections for private for-profit corporations;

113. Allowing agencies such as ECMC working together and in conjunction with Navient to escape the requirements of the FDCPA would allow such agencies to engage in a number of unfair and harassing tactics, and to do so without any fear of reprisal, which they are currently and rampantly doing, to upon information and belief tens of millions of people all around the world;

114. Granting such freedom to private non-profit corporations was also not the purpose of the exceptions section to the general definition of "debt collector" in the FDCPA;

115. Allowing ECMC to pursue collection of student loans free of the requirements of the FDCPA would work against the public interest and would work as a competitive disadvantage to other private collectors who must guide themselves by the FDCPA's strictures;

116. Nothing in the "findings and purposes" section of the FDCPA stated within § 1692 supports the protection of entities such as ECMC from liability, and ECMC is therefore subject to the Act;

117. The FDCPA proscribes abusive collection practices by any person who regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another;

118. The FDCPA does not provide an exemption for guaranty agencies that acquire a student loan after default in order to pursue its collection, See § 1692 *et seq.*;

119. The Secretary of Education has also explicitly stated that GSL [FFELP - prior to 1992, Federal Family Education Loans were typically referred to as "Guaranteed Student Loans," or "GSLP" loans] third party collectors and their collection activity "remain subject to the FDCPA," 55 Fed.Reg. 40120, 40121 (1990);

120. ECMC is not a government actor exempt from the FDCPA under § 1692a(6)◎;

121. Where a statute names the parties which come within its provisions, other unnamed parties are excluded;

122. This exemption applies only to an individual government official or employee who collects debts as part of his government employment responsibilities;

123. ECMC is a private organization with a government contract - it is not a government agency or employee;

124. The Higher Education Act of 1965 ("HEA") Pub.L. 89-329 does not trump or preempt the FDCPA, since nothing in either statute suggests preemption of the other;

125. All that the HEA says about debt collection is that the guaranty agreement shall "assure that due diligence will be exercised in the collection of loans insured under the program," 20 U.S.C. § 1078(c)(2)(A);

126. There is nothing inconsistent about requiring a guarantor to use "due diligence" in attempting to collect the loan but telling the guarantor to refrain from using abusive tactics, misrepresentation in doing so;

127. "Due diligence" does not mean collection by any means possible - no matter how abusive and unfai;

128. In fact, in the federal Fair Debt Collection Practices Act Congress explicitly concluded that "means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts;" 15 U.S.C. § 1692©;

129. Accordingly, Congress enacted legislation "to eliminate abusive debt collection practices by debt collectors and to promote

consistent State action to protect consumers against debt collection abuses." Id. § 1692(e);

130. There is no exception for pre-litigation student loan debt collection;

131. In light of Congress's express pronouncement in the FDCPA that abusive and misleading debt collection practices are not necessary to effective debt collection, Plaintiff does not understand how abusive tactics, harassment, fraudulent misrepresentations, and other tortious conduct in collecting debts can be deemed inconsistent with Congress's desire effectively to collect unpaid student debts under the HEA;

132. The purpose of the HEA is to provide deserving students with loans so that they are able to attend college;

133. Preserving the solvency of the program is a necessary means to that end;

134. Abusive and misleading pre-litigation practices by debt collectors attempting to collect student loans in no way furthers these goals;

135. Plaintiff therefore also sues for actual and punitive damages

for $100,000,000 for multiple violations of the Fair Debt
Collection Practices Act, 15 U.S.C. § 1692 *et seq* prohibiting
from engaging in abusive, deceptive, and unfair debt collection
efforts;

## **CLAIM EIGHT - Violations of the Consumer Financial Protection Act**

136. Private Right of Action: The Consumer Financial Protection Act
("CFPA") is silent as to whether it allows for a private right
of action;

137. Although an earlier version of the legislation in the House of
Representatives had included language stating that the statute
did not create a private right of action, this language does
not appear in the compromise version passed by the Senate;

138. The earlier House version had left in place private rights of
action arising under the rules and authorities transferred to
the Consumer Financial Protection Bureau (the "Bureau") from
other regulatory agencies;

139. Regardless, nothing in the law precludes an aggrieved consumer
from using a violation of the law as a predicate to a claim
under a state unfair and deceptive trade practices act;

140. And the CFPA specifically provides that marketing, offering, selling any product or attempting to enforce any agreement that fails to comply with the statute, or any rule promulgated thereunder, is unlawful - this is powerful fodder for a deceptive trade practices claim;

141. Sections 1031 and 1036 of the CFPA prohibit a "covered person" from committing or engaging in any "unfair, deceptive or abusive act or practice" in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B);

142. Defendants are "covered persons" within the meaning of the CFPA, 12 U.S.C. § 5481(6);

143. An act or practice is unfair if it causes or is likely to cause substantial injury to consumers, which is not reasonably avoidable by consumers, and such substantial injury is not outweighed by countervailing benefits to consumers or to competition, 12 U.S.C. § 5531©;

144. An act or practice is deceptive if it misleads or is likely to mislead the consumer, the consumer's interpretation of the act or practice is reasonable under the circumstances, and the

misleading act or practice is material;

145. An act or practice is abusive if it, among other things, takes unreasonable advantage of the reasonable reliance by the consumer on a covered person to act in the interests of the consumer, 12 U.S.C. § 5531(d);

## Abusive Acts or Practices Related to Steering

146. Plaintiff relied on Navient and ECMC to act in his interest in advising about options to address his financial situation, including helping Plaintiff experiencing financial hardship or distress to select a suitable alternative repayment plan;

145. That reliance was reasonable in part because both Navient and the U.S. Department of Education repeatedly encouraged borrowers to rely on their servicer to help them in this way;

146. As described above, in numerous instances, Navient and ECMC working together jointly took unreasonable advantage of Plaintiff's reasonable reliance on Navient and ECMC to act in his interest;

147. Navient and ECMC did not act in Plaintiff's interest because it repeatedly steered Plaintiff experiencing financial hardship

into forbearance and huge undisclosed collection costs and inflated monthly payments through coercion and fraud rather than adequately advising him about income-driven repayment plans that would have been financially beneficial to Plaintiff;

148. This advantage obtained by Navient and ECMC was unreasonable because Navient and ECMC benefitted from this conduct at the expense of the Plaintiff;

149. Enrolling Plaintiff into forbearance or huge collection costs with high monthly payments using deception, fraud, lies, and coercion is quicker and less expensive to administer than other repayment plans, thus decreasing Navient and ECMC's operating costs;

150. The advantage obtained by Navient and ECMC was also unreasonable because Navient and ECMC fostered the reliance that it then exploited at the expense of Plaintiff;

151. Therefore, Navient and ECMC's acts and practices as set forth herein constitute abusive acts or practices in violations of sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1);

Unfair Acts or Practices Related to Steering

152. Navient and ECMC's acts and practice relating to steering of Plaintiff into forbearance, high collection costs, high monthly payments using deception, lies, fraud and coercion caused or was likely to cause substantial consumer injury;

153. Navient and ECMC steered hundreds of thousands of federal student loan borrowers including Plaintiff experiencing financial hardship into multiple consecutive forbearances, high collection costs, high monthly payments using deception, lies, fraud and coercion that spanned years;

154. Navient and ECMC then added any interest that was unpaid during the forbearance period to the principal balance of these borrowers' loans, thereby drastically increasing the total costs of these loans;

155. This consumer injury was not reasonably avoidable because Navient and ECMC steered Plaintiff and other borrowers into forbearance, high collection costs, high monthly payments using deception, lies, fraud and coercion while providing no or inadequate information about alternative repayment plans so that Plaintiff could make an informed decision to select the repayment option that was most appropriate for his financial circumstances;

156. The substantial consumer injury caused by Navient and ECMC's steering of Plaintiff into forbearance, high collection costs, high monthly payments using deception, lies, fraud and coercion was not outweighed by countervailing benefits to Plaintiff or to competition;

157. Therefore, Navient and ECMC's acts and practices as set forth herein, constitute unfair acts or practices in violations of sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1);

Deceptive Acts or Practices Related to Rehabilitation Credit Reporting

158. As described above, ECMC represented to Plaintiff that completing a rehabilitation program would remove all adverse information regarding the student loan from his credit report;

159. In truth and in fact, completing a rehabilitation program would not remove all adverse information regarding the student loan from the borrower's credit report;

160. It was reasonable for Plaintiff to interpret ECMC's express representations to mean what they say;

161. Those misrepresentations were material to Plaintiff in choosing whether to participate in the rehabilitation program;

162. Therefore, ECMC's misrepresentations as set forth herein, together with or on behalf of Navient Corporation, constitute deceptive acts or practices in violation of sections 1031 and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1);

Deceptive Acts or Practices Related to Rehabilitation Collection Costs

163. As described above, on information and belief, ECMC represented to Plaintiff that all collection fees, if even properly disclosed which they were not, would be forgiven by the U.S. Department of Education upon completion of the rehabilitation program;

164. On information and belief, ECMC also represented to Plaintiff that the amount of collection fees, if even properly disclosed, currently assessed to the account would be forgiven;

165. In truth and in fact, the U.S. Department of Education would not forgive all collection fees or the amount of collection fees currently assessed, upon completion of the rehabilitation program;

166. It was reasonable for Plaintiff to interpret ECMC's express representations to mean what they say;

167. Those misrepresentations were material to Plaintiff in choosing whether to participate in the rehabilitation program;

168. Therefore, ECMC's misrepresentations as set forth herein, together with or on behalf of Navient, constitute deceptive acts or practices in violation of sections 1031 and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1);

169. Plaintiff therefore also sues for actual and punitive damages for $100,000,000 for multiple violations of the Fair Credit Reporting Act, Consumer Financial Protection Act, and for New York State claims for defamation, slander and libel;

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court find against Defendants:

170. Fraudulently induced Plaintiff in actual and punitive damages of $100,000,000;

171. Engaged in deceptive business practices towards Plaintiff in actual and punitive damages of $100,000,000;

172. Fraudulently misrepresented to Plaintiff in actual and punitive damages of $100,000,000;

173. Engaged in False Advertising to Plaintiff in actual and punitive damages of $100,000,000;

174. Breached contract towards Plaintiff in actual and punitive damages of $100,000,000;

175. Engaged in civil usury towards Plaintiff in actual and punitive damages of $100,000,000;

176. Violated the Fair Debt Collection Act towards Plaintiff in actual and punitive damages of $100,000,000;

177. Violated the Consumer Financial Protection Act towards Plaintiff in actual and punitive damages of $100,000,000;

178. Engaged in defamation/slander/libel pursuant to New York State law, the Consumer Financial Protection Act, and Fair Credit Reporting Act towards Plaintiff in actual and punitive damages of $100,000,000;

179. And any such other and further relief as the Honorable Court deems just and proper, including applicable interest, costs and

disbursements of this action.

**Dated:**    New York, NY
              August 18, 2019

_(signature)_

Rahul Manchanda, Esq.
30 Wall Street, 8th Floor
New York, NY 10005
Tel: (212) 968-8600
Fax: (212) 968-8601
Email: info@manchanda-law.com