Kenneth L. Baum, Esq.
**LAW OFFICES OF KENNETH L. BAUM LLC**
167 Main Street
Hackensack, New Jersey  07601
201-853-3030
201-584-0297  Facsimile
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAHUL MANCHANDA,<br><br>    Plaintiff,<br><br>  v.<br><br>NAVIENT STUDENT LOANS & EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br><br>    Defendants. | CIVIL ACTION NO. 1:19-cv-05121 (WHP)<br><br>Civil Action |

**DEFENDANT EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Of Counsel and On the Brief:
  Kenneth L. Baum, Esq.

**PRELIMINARY STATEMENT**

Defendant Educational Credit Management Corporation ("ECMC") submits this Brief in support of its motion to dismiss Plaintiff Rahul Manchanda's ("Plaintiff") Third Amended Complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"). As demonstrated below, despite being afforded multiple opportunities to revise his original complaint to state viable causes of action, Plaintiff continues to assert claims that are unfounded under, and are specifically prohibited by, existing law. Plaintiff's failure to state a claim upon which relief may be granted against ECMC warrants dismissal of the Complaint.

The facts of this case, as they pertain to ECMC, are simple. In 2003, Plaintiff consolidated his existing federal student loans by executing a Federal Consolidation Loan Application and Master Promissory Note (the "Note"). After Plaintiff filed for bankruptcy in 2014, the original guarantor transferred its interest in the Note to ECMC, which provides specialized guarantor services under the Federal Family Education Loan Program ("FFELP"), including accepting the transfer of title to loans on which the borrower has filed for bankruptcy. When Plaintiff's bankruptcy was dismissed in 2015, Plaintiff's loan (the "Loan") was repurchased by the lender and ECMC remained the FFELP guarantor.

When Plaintiff became delinquent in repaying the Loan and it attained default status, the lender submitted a claim to ECMC, which paid the default claim and again acquired all right, title, and interest in the Note. Plaintiff agreed to rehabilitate the Loan and completed that process, resulting in an eligible lender, Navient Credit Finance Corporation ("Navient"), purchasing all of ECMC's interests in and to the Loan in 2018. In addition, Plaintiff consolidated the FFELP Loan into the Direct Loan Program on or around March 22, 2018, and created a new consolidation loan under the Direct Loan Program. Thus, Plaintiff does not

1

currently have any loans under the FFELP and ECMC no longer has any role with regards to Plaintiff's student loans.

The gravamen of the Complaint is that ECMC and Defendant Navient Solutions, LLC ("Navient"), sued herein as "Navient Student Loans," fraudulently induced Plaintiff into obtaining a consolidation loan that, Plaintiff alleges, included improperly high rates of interest and collection costs. Specifically, Plaintiff primarily asserts various causes of action under New York law, including fraudulent inducement to contract (First Claim), deceptive business practices (Second Claim), fraudulent misrepresentation (Third Claim), false advertising (Fourth Claim), breach of contract (Fifth Claim), and civil usury (Sixth Claim). In addition, Plaintiff asserts claims for alleged violation of the Fair Debt Collection Practices Act (Seventh Claim) and the Consumer Financial Protection Act (Eighth Claim). Like the prior versions of the Complaint, n*one* of these claims state a cause of action upon which relief may be granted.

First, the causes of action in the Complaint under New York law are preempted by the Higher Education Act of 1965 ("HEA," 20 U.S.C. § 1071, *et seq*.), which is a federal statute. Second, the Complaint constitutes an improper attempt to circumvent the lack of a private right of action under the HEA, which specifically and exclusively empowers the Secretary of the Department of Education to take remedial actions against an agency which fails to comply with the requirements set out in the FFELP regulations. Third, given its status as the former owner of the Loan, as well as acting as a fiduciary of the Department of Education, ECMC is not a debt collector under the FDCPA, and as such, Plaintiff's claims under the FDCPA fail as a matter of law. Accordingly, because Plaintiff's Complaint fails to state a cause of action upon which relief may be granted against ECMC, it should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**STATEMENT OF FACTS**

The relevant facts in support of the Motion are set forth in the Declaration of Kerry Klisch (the "Klisch Dec."). For the Court's convenience, a summary of those facts is included below. Unless otherwise noted, the capitalized, defined terms herein shall have the same definitions ascribed to them in the Klisch Dec.

ECMC was created under the direction of the United States Department of Education to provide specialized guarantor services pursuant to the Federal Family Education Loan Program ("FFELP"), including accepting transfer of title of certain student loan accounts on which the student loan borrower has filed a bankruptcy proceeding. (Klisch Dec., ¶ 2.) ECMC is a not-for-profit corporation duly organized under the laws of the State of Minnesota, with offices located at 111 South Washington Avenue, Suite 1400, Minneapolis, Minnesota 55401. (*Id.*)

On or about May 1, 2003, Plaintiff signed a Federal Consolidation Loan Application and Promissory Note requesting a consolidation of his existing student loans under FFELP (the "Note"). The lender was College Loan Corporation. The consolidation loan made pursuant to the Note (the "Loan") was disbursed on or about August 26, 2003, in the original principal amount of $118,806. The Loan was originally guaranteed by American Student Assistance ("ASA"). (Klisch Dec., ¶¶ 3-4.)

By agreement, ASA assigns to ECMC its student loan accounts for borrowers that have filed a bankruptcy proceeding. On April 30, 2014, Plaintiff filed for bankruptcy under Case No. 14-11259. Thus, on or around July 10, 2014, ASA transferred all right, title, and interest in the Note to ECMC, and ECMC became the FFELP guarantor. When Plaintiff's bankruptcy was dismissed on or around January 7, 2015, the Loan was repurchased by the lender pursuant to federal regulations. ECMC remained the FFELP guarantor. (Klisch Dec., ¶¶ 5-6.)

When Plaintiff failed to maintain repayment of the Loan it became severely delinquent and attained a default status. The lender submitted a default claim to ECMC in accordance with 34 C.F.R. § 682.102(g). ECMC paid the default claim and all right, title, and interest in the Note again transferred to ECMC. On or about April 14, 2017, Plaintiff executed an agreement with ECMC, whereby he agreed to rehabilitate the Loan pursuant to 34 C.F.R. § 682.405. The successful completion of that process would remove the default status and the Loan would go back to a repayment status with a lender. (Klisch Dec., ¶¶ 7-8.)

Plaintiff successfully completed the rehabilitation of the Loan. As a result, on or about January 29, 2018, an eligible lender, Navient Credit Finance Corporation, purchased the Loan. All activity by ECMC was performed in its capacity as a FFELP guarantor and pursuant to its duties thereunder. (Klisch Dec., ¶¶ 9-10.)

Plaintiff consolidated the FFELP Loan into the Direct Loan Program on or around March 22, 2018, and created a new consolidation loan under the Direct Loan Program. Thus, Plaintiff does not currently have any loans under the FFELP and ECMC no longer has any role with regards to Plaintiff's student loans. (Klisch Dec., ¶¶ 11.)

## LEGAL ARGUMENT

**I.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED AND SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6).**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may assert as a defense to a complaint, a motion for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). As the Supreme Court has held, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556). Moreover, "[t]he plausibility standard is not akin to a, 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* (citing *Id.*)

Here, even assuming all the allegations in the Complaint are true, they nevertheless fail to state a claim for relief that is "plausible on its face," as described below.

### A.   The Duties of a Guaranty Agency Under the HEA.

Congress passed the Higher Education Act of 1965 ("HEA", 20 U.S.C. § 1071, *et seq.*) to "keep the college door open to all students of ability, regardless of socioeconomic background." *Pelfrey v. ECMC*, 71 F.Supp.2d 1161, 1162-63 (N.D. Ala. 1999), *aff'd* 208 F.3d 945 (11th Cir. 2000); 20 U.S.C. § 1070(a).

Among other things, the HEA established the Federal Family Education Loan Program ("FFELP"). 20 U.S.C. § 1071. The FFELP was formerly referred to as the Guaranteed Student

5

Loan Program ("GSL") before being renamed in 1992.  ECMC operates as a guaranty agency under the HEA.  *See e.g. Rowe v. ECMC*, 559 F.3d 1028, 1030 n.1, 1032 (9th Cir. 2009).

In accordance with the HEA, student loans are guaranteed by either a state agency or non-profit organization "that has an agreement with the Secretary under which it will administer a loan guaranty program under the Act."  34 C.F.R. § 682.200; 20 U.S.C. § 1072(a)(1).  Such state agencies or non-profit organizations are referred to as guaranty agencies.

Guaranty agencies enter into agreements with the DOE that set forth "such administrative and fiscal procedures as may be necessary to protect the United States from the risk of unreasonable loss thereunder, to ensure proper and efficient administration of the loan insurance program, and to assure that due diligence will be exercised in the collection of loans insured under the program . . ."  20 U.S.C. § 1078(c)(2); 34 C.F.R. § 682.404(l); 34 C.F.R. § 682.410(b)(6).

The Secretary of Education is authorized to prescribe rules and regulations as may be necessary to carry out the purpose of the HEA.  20 U.S.C. § 1082(a)(1).  Said regulations are found in the Code of Federal Regulations, which sets forth, in great detail, the wide variety of activities a guaranty agency must undertake on a guaranteed student loan.  *See e.g.* 34 C.F.R. §§ 682.400-682.423.

The due diligence obligation owed by the guaranty agency to the DOE requires that the guaranty agency "engage in reasonable and documented collection activities."  34 C.F.R. § 682.410(b)(6)(i).  This obligation specifically includes a number of actions the guaranty agency must perform in attempting to collect on any defaulted, reinsured loans it holds, such as a sequence of dunning letters and telephone contacts, reporting the defaulted loan to credit bureaus, federal and state income tax refund offsets, non-judicial administrative wage

garnishment, and, where appropriate, collection litigation.  34 C.F.R. § 682.410(b)(6)(ii)-(vii).  The DOE is empowered to take remedial actions against a guaranty agency which fails to comply with these requirements.  *See e.g.* 34 C.F.R. § 682.413(b)(2) and (c)(1).

Moreover, guaranty agencies provide borrowers like Plaintiff with certain disclosures pursuant to these federal regulations, about the potential consequence of wage garnishment among other things.  Guaranty agencies must also contact borrowers via telephone in their attempts to collect the loans.  34 C.F.R. §§ 682.410(b)(6)(ii); 682.410(b)(6)(vi); 682.411(d)(1); 682.411(d)(3); 682.411(l); 682.411(m).

In summary of the foregoing, guaranty agencies undertake an enormous amount of responsibilities and are involved in the loans they guarantee from the origination of the loan to the final payoff.

### B. ECMC is a Guaranty Agency Under the HEA.

ECMC is a guaranty agency under the HEA.  It is a non-profit organization that has an agreement with the DOE under which it helps to administer the FFELP.  Many courts have concluded that ECMC is a guaranty agency in previous cases similar to the instant case.  *See e.g.* *Pelfrey v. ECMC*, 71 F.Supp.2d 1161, 1180 (N.D. Ala. 1999), *aff'd* 208 F.3d 945 (11th Cir. 2000); *Black v. ECMC*, 459 F.3d 796, 801 (7th Cir. 2006); *In Re Howe*, 2008 U.S. Dist. LEXIS 89161 at *2 (C.D. Cal. 2008); *Rowe v. ECMC*, 559 F.3d 1028, 1032 (9th Cir. 2009); *Rowe v. ECMC*, 730 F. Supp. 2d 1285, 1288 (D. Or. 2010); *Watkins v. ECMC*, 2011 U.S. Dist. LEXIS 55328 at *11 (E.D. Va. 2011); *Bennett v. Premiere Credit*, Case No. 11-cv-124 at *5 (S.D. Ga. Oct. 20, 2011) *aff'd,* Case No. 12–128592013, WL 310066 (11th Cir. 2012).

ECMC, as a FFELP guarantor, is required to perform the numerous duties set forth in the Code of Federal Regulations as discussed above. ECMC also provides specialized guarantor services to the DOE.

### C. Plaintiff's State Law Claims Are Preempted By Federal Law.

In his Complaint, Plaintiff asserts various causes of action against ECMC based on New York state law (i.e., fraudulent inducement to contract (First Claim), deceptive business practices (Second Claim), fraudulent misrepresentation (Third Claim), false advertising (Fourth Claim), breach of contract (Fifth Claim), and civil usury (Sixth Claim)). As courts have held, however, those claims are preempted by the HEA, which is federal law. Preemption under the HEA may be express or implied. *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010). Express preemption occurs where federal law explicitly defines the extent to which its enactments preempt state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988). Implied preemption occurs where there is conflict between the HEA and state law, or where complying with state law would hinder compliance under the HEA. *Cadle Co. v. Banner*, 394 B.R. 292, 304 (D. Conn. 2008).

Preemption may occur directly through congressional action or by federal agencies acting under congressional authority. *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996). As discussed above, in the student loan collection field, Congress and the DOE have established an extensive, elaborate, and preemptive set of federal statutes and regulations governing lenders and guaranty agencies like ECMC. This framework both expressly and impliedly preempts Plaintiff's claims.

> i. **Plaintiff's State Law Claims Are Expressly Preempted by the HEA.**

The essence of Plaintiff's claims under New York law is that he was the victim of fraudulent misrepresentation, deceptive business practices, and improper disclosure regarding the terms of his consolidation loan. In *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010), however, the court held that similar claims were expressly preempted by Section 1098g of the HEA. *Id.* at 943. That section provides that, "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 *et seq.*) shall not be subject to any disclosure requirements of any State law."

The factual allegations asserted by the plaintiffs in *Chae* – that a student loan servicer improperly calculated the interest on the subject loans, assessed late fees, and fixed the first repayment date – are strikingly similar to those advanced by Plaintiff. In *Chae*, "[t]he plaintiffs dispute[d] [the] characterization of their claims, arguing that they do not seek specific disclosures, but merely to stop Sallie Mae from fraudulently and deceptively misleading borrowers through the written documents." 593 F.3d at 943. As the court in that case held, however, "preemption cannot be avoided simply by relabeling an otherwise-preempted claim." *Id.* Here, Plaintiff's state law claims are clearly preempted under the HEA.

> ii. **Plaintiff's State Law Claims Are Preempted by the Code of Federal Regulations.**

Express preemption may be found based on "the text of the provision, the surrounding statutory framework, and Congress's stated purposes in enacting the statute." *Chae*, *supra*, at 942. Where express preemption language exists, the Court must interpret the provision and "identify the domain expressly pre-empted' by that language." *Medtronic, Inc. v. Lora Lohr*, 518 U.S. 470, 484 (1996).

9

As noted above, the HEA authorizes the DOE to "prescribe such regulations as may be necessary to carry out the purposes" of the FFELP. 20 U.S.C. § 1082(a)(1).) Under that authority, the DOE has promulgated a series of comprehensive regulations, including regulations that articulate the standards for collecting student loans and direct the pre-litigation collection efforts of lenders, guaranty agencies, and third-party debt collectors. 34 C.F.R. §§ 682.410 and 682.411.

Here, ECMC's allegedly wrongful conduct is governed by 34 C.F.R §§ 682.410 and 682.411. *See e.g.* 34 C.F.R. §§ 682.410(b)(6)(ii); 682.410(b)(6)(vi); 682.411(d)(1); 682.411(d)(3); 682.411(l); 682.411(m). These Regulations also contain express preemption language:

> "Preemption of State law.
> The provisions of paragraphs (b) (2), (5), and (6) of this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements of these provisions." (34 C.F.R. § 682.410(b)(8).)
> \* \* \*
> "Preemption.
> The provisions of this section . . . Preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements or frustrate the purposes of this section . . ."  (34 C.F.R. § 682.411(o).)

Courts consistently rely on this language to find state law claims implicating the HEA and its related regulations to be preempted. *See e.g. Hunt v. Sallie Mae, Inc.*, 2011 U.S. Dist. LEXIS 78306 (E.D. Mich. July 19, 2011) at \*3 ("Plaintiff's state-law claims are expressly preempted by the language in 34 C.F.R § 682.411(o)"); *Martin v. Sallie Mae, Inc.*, 2007 U.S. Dist. LEXIS 90418 (S.D. W. Va. Dec. 7, 2007) at \*8 (holding that the HEA "preempts any state cause of action that conflicts with it.").

The DOE has also issued a significant formal interpretation which states that it is the "Secretary's intention to preempt State law" by issuing a regulatory framework for pre-litigation collection, and explains that recognizing liability under inconsistent state law would "thwart the Congressional intention implemented in the regulations."  Said interpretation further states "that 34 C.F.R. § 682.410(b)(4) and 34 C.F.R. § 682.411 preempt State law, including State case law, statutes, and regulations that are inconsistent with the provisions" of the HEA.  55 Fed. Reg. 40120-01.  Therefore, as the Ninth Circuit has observed, pursuant to the DOE's interpretation, state claims are preempted in any circumstance where state law would otherwise regulate pre-litigation collection activity.  *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996); *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124, 1129 (S.D. Cal. 2005); see also *Seals v. Nat'l Student Loan Program*, No. CA-02-101-5, 2004 WL 3314948, (N.D.W.Va. Aug. 16, 2004) at *3, 6 (holding that HEA preempts claim for improper collection practices under state law) *aff'd* 124 Fed. App'x 182 (4th Cir. 2005) (per curiam).)

Accordingly, Plaintiff's state law claims are preempted.

      **iii.**    **Plaintiff's State Law Claims Are Preempted Because They Prohibit, Restrict, or Impose Burden on Pre-Litigation Collection Activity.**

Even if Plaintiff's state law claims are not expressly preempted by 20 U.S.C. § 1098g, 20 U.S.C. § 1095a, 34 C.F.R. § 682.410(b)(8) and/or 34 C.F.R. § 682.411(o), they are nevertheless impliedly preempted because they conflict with the HEA and therefore hinder or prohibit the collection activities of guaranty agencies.

In this regard, the HEA preempts all state laws regarding pre-litigation collection activity. In *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996), the Ninth

11

Circuit held that Oregon state law regarding collection activity were preempted by the HEA in its entirety, and defined the breadth of the preemption as follows:

> "[T]he preemption includes *any **State law*** that would hinder or prohibit any activity taken by third-party debt collectors prior to litigation." (*Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996), emphasis added.)

The *Brannan* Court based its decision on the DOE's interpretation of the regulations governing pre-litigation collection activity, including 20 U.S.C. §§ 1078(c), 1080(a),(b); 34 C.F.R. §§ 682.410 and 682.411.

The *Brannan* court also noted:

> ". . . exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans." (*Brannan*, *supra*, at 1263.)

Accordingly, Plaintiff's claims under New York law are preempted.

        **iv.**        **Plaintiff's State Law Claims Are Preempted Because They Conflict with the HEA.**

Conflict preemption exists "where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

Here, conflict preemption applies to Plaintiff's state law claims because, as Plaintiff would have them applied, they would conflict with the due diligence and collection requirements of the HEA, and therefore create obstacle to the congressional purpose and objectives of the HEA.

In line with this reasoning, the Ninth Circuit in *Chae* preempted state law claims based in part on Congress's direction to the DOE that it aimed for uniformity of FFELP regulations. The Ninth Circuit stated:

> "***Permitting varying state law challenges across the country***, with state law standards that may differ and impede uniformity, ***will almost certainly be harmful to the FFELP*** . . . ***Congress intended uniformity*** within the program. The statutory design, its detailed provisions for the FFELP's operation, and its focus on the relationship between borrowers and lenders persuade us that Congress intended to subject FFELP participants to uniform federal law and regulations . . . Having carefully considered the FFELP and the purposes of Congress in the HEA, we conclude, ***beyond any doubt***, that subjecting the federal regulatory standards to the potentially conflicting standards of fifty states on contract and consumer protection principles would stand as a severe obstacle to the effective promotion of the funding of student loans. Such an obstacle, which we consider hostile to the purposes of Congress in this program, ***must bow to the overriding principles of conflict preemption and federal law supremacy***." (*Chae v. SLM Corp.*, 593 F.3d 936, 945, 947, 950 (9th Cir. 2010) (emphasis added).)

Conflict preemption has been applied in many other cases as well. *See e.g. Seals v. Nat'l Student Loan Program*, No. CA-02-101-5, 2004 WL 3314948, at *3, 6 (N.D.W.Va. Aug. 16, 2004) (West Virginia state laws imposed additional burdens on student loan collection activities and thus was preempted under the HEA and its regulations), *aff'd*, 124 F. App'x 182 (4th Cir. 2005) and *Hunt v. Sallie Mae Inc.* WL 2847428 (E.D. Mich. 2011) (Plaintiff's state-law claims conflicted with the HEA and were accordingly preempted.).)

If Plaintiff were permitted to pursue his state law claims against ECMC in this case, it would create conflicting requirements in New York compared to the remaining states; specifically, ECMC would be subject to both the HEA and federal regulations as well as Plaintiff's state law claims, leading to the unreasonable result that ECMC would be faced with potential liability in State Court for complying with the requirements of the HEA and federal regulations. Such a conflict would hinder the DOE's ability to regulate guaranty agencies like ECMC, and interfere with the DOE's enforcement powers as authorized and intended by Congress.

The HEA's uniform application is a clear objective intended by Congress. *Brannan*, *supra*, at 1264; *Chae*, *supra*, at 944-945. The statutory language of the HEA's FFELP explicitly calls for uniformity multiple times. 20 U.S.C. § 1082. A lack of uniform application of New York law and the HEA would stand as an obstacle to congressional objectives. Specifically, to the extent New York laws regarding loan disclosure, proper calculation of interest rates, and imposition of costs and fees hampered the ability of FFELP lenders to comply with the uniform administration of FFELP, Plaintiff's state law claims would conflict with the HEA. Such a conflict was expressly cited in *Chae*, *supra*, at 943-50, as a basis for invoking preemption of similar claims. The same rationale applies here, and Plaintiff's claims, in addition to being expressly preempted, are subject to conflict preemption.

### D. ECMC is Not Subject to the FDCPA.

#### i. Guaranty Agencies Do Not Fall Under the Definition of a "Debt Collector."

Plaintiff also asserts that ECMC violated the FDCPA. This claim fails as a matter of law. It is fundamental that the FDCPA applies only to "debt collectors." *Pelfrey*, 71 F. Supp. 2d at 1166. ECMC does not fall under the general definition of a "debt collector." The FDCPA defines a "debt collector" as any business whose principal purpose is the collection of any debts or who regularly collects or attempts to collect debts of another. 15 U.S.C. § 1692a.

The principal purpose of ECMC, or any guaranty agency, is not the collection of debts nor does it regularly collect debts for another. Rather, the principal purpose of a guaranty agency is the administration of the FFELP as dictated in extensive Federal Regulations. *See Pelfrey*, 71 F.Supp.2d at 1163. *See also Rowe v. Educ. Credit Mgmt. Corp.*, 730 F.Supp. 2d 1285 (D. Or. 2010)("[t]hus even beyond the fiduciary exception, ECMC does not fall under the definition of a debt collector with respect to the loan at issue."); *Edler v Student Loan*

14

*Marketing Association*, 1993 WL 625570 (D. D.C. 1993), ("[t]he FDCPA is inapplicable to [the guaranty agency] as a matter of law because [it] is a guarantee agency and not a debt collector within the meaning of the statute)"; *Davis v. United Student Aid Funds*, 45 F. Supp. 2d 1104, 1108 (D.Kan. 1998) (finding, "[w]hen a borrower defaults on a guaranteed loan, the guaranty agency pays the guaranty and becomes the 'holder' of the note."); *Freeman v. Great Lakes*, 2013 WL 2355541 at *6 (reasoning, "[s]imply put, ECMC is collecting its own debt as the current holder of the obligation. Accordingly, it is not a 'debt collector' under the FDCPA."); *Lima v. United States Dep't of Educ.*, 2017 WL 2265888 at 6 (D. Haw. Apr. 25, 2017) (finding, "[g]iven ECMC's assumption of Plaintiff's debt and the corresponding responsibilities thereto, it is not a 'debt collector' as defined by the FDCPA.").

Moreover, the Supreme Court has held that an entity that purchases debts that are originated by someone else and then seek to collect those debts for themselves – which, as noted above, is one of ECMC's primary functions as a specialized guarantor under FFELP – is not a "debt collector" subject to the FDCPA. *See Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1721-2, 198 L.Ed.2d 177 (2017). As a result, Plaintiff's claims under the FDCPA fail to state a cause of action upon which relief may be granted.

    **ii.**   **ECMC Operates Under a Fiduciary Relationship with the Department of Education.**

Even if ECMC was a "debt collector" within the ambit of the FDCPA definition, which it is not, it would still not be subject to liability under the FDCPA. The FDCPA also outlines a number of exceptions to the generalized definition of the term "debt collector," one of which is the "bona fide fiduciary exception" under Section 1692a(6)(F)(i). As a guaranty agency, ECMC is in a fiduciary relationship with the Department of Education for the purpose of the FFELP. *See* 34 C.F.R. § 682.419(a) ("The guaranty agency must exercise the level of care required of a

15

fiduciary charged with the duty of protecting, investing, and administering the money of others.").

Indeed, the Eleventh Circuit made this point clear in its affirmance in *Pelfrey* - the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* (1994), does not apply to the defendant [ECMC], because the defendant [ECMC] is a "person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." *Pelfrey v. Educational Credit Management Corporation*, 208 F.3d 945 (11th Cir. 2000)(citing 15 U.S.C. 1692a(6)(F)(i).[1] As aptly held in *Rowe* following remand from the Ninth Circuit, "[N]o reasonable trier of fact could conclude that ECMC does not fall under the fiduciary obligation exception to the definition of debt collector under the FDCPA . . ." *Rowe v. ECMC*, 730 F.Supp.2d 1285, 1288-1289 (D. Or. 2010).

Accordingly, because ECMC is not subject to the FDCPA, Plaintiff's Complaint fails to state a cause of action under the FDCPA and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] *See also Bennett, v. Premiere Credit of N. Am., LLC*, 504 Fed. Appx. 872, 878 n.4 (11th Cir. 2013) ("ECMC is exempt from the FDCPA because (1) it has a fiduciary relationship with the DOE, and (2) its collection activities are incidental to that fiduciary obligation."); *Freeman v. Great Lakes*, 2013 WL 2355541 at *6 ("Pursuant to the bona fide fiduciary obligation exception, ECMC is not subject to suit under the FDCPA."); *Seo v. Educational Credit Management Corporation*, 2016 WL 521065, *2 (N.D. Ill. February 9, 2016)("Defendant is not subject to the FDCPA because, as a guarantor acting in a fiduciary relationship with the Department of Education, it does not fall under the definition of a debt collector."). *Lasserre v. ECMC*, 2012 WL 2191628, at *2 (M.D. La. June 14, 2012)("Guaranty agencies acting in their fiduciary capacity to the U.S. Department of Education fall within the 'fiduciary' exception to the FDCPA."); *Rainey v. ECMC*, 2016 WL 1594378, at *3 (E.D. Mich. Apr. 21, 2016) ("ECMC satisfies [the requirements of the Bona Fide Fiduciary Exception] and thus its collection activities here are not covered by the FDCPA.").

## **CONCLUSION**

For all the foregoing reasons, ECMC respectfully requests that the Court enter an order dismissing Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and such other and further relief as the Court deems just and proper.

DATED:  Hackensack, New Jersey
         November 15, 2019

                                                Respectfully submitted,

                                                LAW OFFICES OF KENNETH L. BAUM LLC
Attorneys for Defendant, Educational Credit Management Corporation


By:   */s/ Kenneth L. Baum*
        Kenneth L. Baum