UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| | : | |
| RAHUL MANCHANDA, ESQ., | : | |
| | : | |
| Plaintiff, | : | |
| | : | 19cv5121 |
| -against- | : | |
| | : | MEMORANDUM & ORDER |
| NAVIENT STUDENT LOANS and | : | |
| EDUCATIONAL CREDIT MANAGEMENT | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, Senior United States District Judge:

Pro se Plaintiff Rahul Manchanda brings an amalgam of federal and New York

state law claims against Navient Solutions, LLC[1] ("Navient") and Educational Credit

Management Corporation ("ECMC") (collectively, "Defendants").  He alleges fraudulent and

deceptive business practices in the servicing and collection of his federal student loan debt.

Navient and ECMC move separately to dismiss Manchanda's Third Amended Complaint (the

"Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the

following reasons, Navient's motion to dismiss is granted, and ECMC's motion to dismiss is

granted in part and denied in part.

## BACKGROUND

The Complaint—now in its fourth iteration—is heavy on legal argument and light

on facts.  Manchanda claims that ECMC is a "collections agency" that misrepresented itself as a

"student loan company."  (Third Am. Compl., ECF No. 26 ("Compl."), ¶ 5.)  He alleges that

---

[1]       Manchanda misidentifies Navient Solutions, LLC as "Navient Student Loans" in the Complaint.

ECMC: (1) underreported its collections fees; (2) lied about the rehabilitation process for his defaulted federal student loan debt; (3) misrepresented that "any and all derogatory information" stemming from his default would be removed from his credit report; (4) misrepresented that his post-rehabilitation loan payments would be the same amount as before default; and (5) used "pushy, coercive, and nearly extortionate salesman tactics . . . to get [him] to . . . agree to work with [the company]."  (Compl. ¶ 5.)

        In substance, and as best this Court can discern, Manchanda alleges that Navient acquired his student debt, required exorbitant monthly payments, erroneously calculated the loan balance at $309,000, and later reduced that figure to "approximately $160,000."  (Compl. ¶ 6.) Manchanda goes on to assert that the $160,000 figure included an assessment of $60,000 in "collections fees" on his outstanding loan balance of $98,000.  (Compl. ¶ 4.)  However, the Complaint is opaque regarding who assessed the collections fees.  (See Compl. ¶¶ 4, 7, 27.)

        Additionally, the Complaint alleges that Defendants jointly engaged in misconduct, including "steer[ing]" Manchanda into costly repayment plans and forbearance. (Compl. ¶ 9; see also Compl. ¶ 8.)  Defendants also allegedly "misreported information" to consumer reporting agencies, including the amount of Manchanda's student loan debt and whether his loans were in default, thereby damaging his credit.  (Compl. ¶ 11.)

        From these scant facts, Manchanda brings the following claims against Defendants: (1) fraudulent inducement and fraudulent misrepresentation under New York law; (2) breach of contract under New York law; (3) civil usury under N.Y. Gen. Oblig. Law § 5-501; (4) deceptive business practices under N.Y. Gen. Bus. Law ("GBL") § 349; (5) false advertising under GBL § 350; (6) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; (7) violations of the Consumer Financial Protection Act of 2010 ("CFPA"), 12

U.S.C. §§ 5531, 5536(a), 5564, & 5565; and (8) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

DISCUSSION

I.    Legal Standard

On a motion to dismiss, a court accepts all facts alleged in the complaint as true and construes all reasonable inferences in a plaintiff's favor. ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation marks omitted). And to survive a motion to dismiss, the court must find the claim rests on factual allegations that "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quotation marks omitted)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

While Manchanda is proceeding pro se, he is an attorney admitted to practice in New York. Accordingly, this Court "is not obligated to read his pleadings liberally." Chira v. Columbia Univ., 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003); see also Tracy v. Freshwater, 623

3

F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such [special] solicitude at all.").

II.      Failure to Distinguish Between the Conduct of Defendants

As a threshold matter, Navient seeks wholesale dismissal of the Complaint because it fails to differentiate between Navient's and ECMC's allegedly wrongful conduct. Indeed, the Complaint frequently references Defendants' behavior in the aggregate.  (See e.g., Compl. ¶ 4 ("Navient and ECMC by behaving in this manner illegally added approximately $60,000 in 'collections fees' to Plaintiff's otherwise already high student loans . . . ."), ¶ 88 ("Abusive debt collection practices are carried on to a substantial extent by ECMC and Navient in interstate commerce . . . .").)  At its core, Navient's argument is that the Complaint's failure to differentiate between Defendants' conduct violates Federal Rule of Civil Procedure 8(a)(2).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Although [Rule 8(a)] does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (quotation marks omitted).  "Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants."  Ochre LLC v. Rockwell Architecture Planning & Design, P.C., 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012).  A complaint may not simply "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct."  Atuahene, 10 F. App'x at 34; accord Nesbeth v. N.Y.C. Mgmt. LLC, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019).

Navient fairly criticizes Manchanda for his "sloppy pleading," but outright dismissal of the Complaint "on this ground is not required here."  Holland v. JPMorgan Chase Bank, N.A., 2019 WL 4054834, at *9 (S.D.N.Y. Aug. 28, 2019).  "Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."  Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co., 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015) (quotation marks omitted); see also In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 471 (S.D.N.Y. 2005) ("Rule 8 does not require Plaintiffs to identify each of the eighteen Defendants by name each time the Complaint makes an allegation that applies equally to all.").  And here, each cause of action in the Complaint is seemingly pled against both ECMC and Navient—acting either individually or jointly—in servicing and collecting Manchanda's student loan debt.

Moreover, the Complaint attributes some specific conduct to each Defendant.  For example, the Complaint alleges ECMC "systematically misled Plaintiff about the effect of rehabilitation on [his] credit report," (Compl. ¶ 15), and "lied . . . that a low monthly payment for approximately 6 months of approximately $200 would get him out of default," (Compl. ¶ 5).  Navient, on the other hand, allegedly misstated Manchanda's loan balance.  (See Compl. ¶¶ 6–7.)  In view of these allegations, dismissing the Complaint "solely because [Manchanda] . . . lump[s]" Defendants together "would be a bridge too far."  Holland, 2019 WL 4054834, at *9; see Lopez v. BigCommerce, Inc., 2017 WL 3278932, at *2 (S.D.N.Y. Aug. 1, 2017) (refusing to dismiss complaint on Rule 8(a) grounds even where "the [complaint] frequently refer[red] to '[d]efendants' without distinguishing between [them]" because plaintiff "provide[d] some factual basis for liability" and "only two [d]efendants [were] named in the [c]omplaint" (emphasis in original)); Vantone Grp. Ltd. Liab. Co., 2015 WL 4040882, at *4 (finding "no basis for dismissal

pursuant to Rule 8" even where "ten of the eleven claims . . . refer[red] to all 24 defendants

collectively" because the complaint made "factual allegations that distinguish between the

conduct of the . . . [d]efendants"); Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 235

(S.D.N.Y. 2014) (distinguishing Atuahene on grounds that "the complaint[] [in that action] failed

to distinguish at all between any of the [d]efendants" (emphasis in original)).

III.    Failure to State a Claim

        While this Court declines to dismiss the Complaint for lumping Navient and

ECMC together, Manchanda must still allege sufficient facts to "nudge[] [his] claims across the

line from conceivable to plausible."  Twombly, 550 U.S. at 570.  To that end, Defendants aver

that the Complaint is factually deficient.[2]

        A.  Manchanda's State Law Claims

                i.  Fraudulent Inducement and Fraudulent Misrepresentation

        Manchanda alleges that ECMC and Navient fraudulently induced him to "work

with them" and made fraudulent misrepresentations in servicing and collecting his federal

student loan debt.  (Compl. ¶ 27.)  To plead fraudulent inducement under New York law, a

plaintiff must "show[] that (1) the defendant made a material false representation, (2) the

defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the

representation, and (4) the plaintiff suffered damage as a result of such reliance."  First Hill

Partners, LLC v. BlueCrest Capital Mgmt. Ltd., 52 F. Supp. 3d 625, 639 (S.D.N.Y. 2014)

(quotation marks omitted); see also Wall v. CSX Transp., Inc., 471 F.3d 410, 415–16 (2d Cir.

---

[2]      Navient's motion to dismiss primarily argues that the Complaint is factually deficient.  ECMC's motion takes a different tack, largely arguing that Manchanda's claims are preempted by federal law.  However, during argument on its motion, counsel for ECMC affirmed that ECMC shared Navient's view that the Complaint is factually deficient.  (Tr. of Jan. 30, 2020 Arg. ("Arg. Tr."), at 7.)

2006).  The elements of a claim for fraudulent misrepresentation are the same.  Eternity Glob.

Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186–87 (2d Cir. 2004).

Both claims are subject to the heightened pleading standard of Federal Rule of

Civil Procedure 9(b).  See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc., 331 F.

Supp. 3d 130, 150 (S.D.N.Y. 2018); see also Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d

229, 246–47 (S.D.N.Y. 2011).  On its face, Rule 9(b) requires that, "[i]n alleging fraud . . . a

party must state with particularity the circumstances constituting [the] fraud."  The Second

Circuit "has read Rule 9(b) to require that a complaint (1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent."  Rombach v. Chang, 355 F.3d 164,

170 (2d Cir. 2004) (quotation marks omitted).  Stated differently, the rule "requires that a

plaintiff set forth the who, what, when, where and how of the alleged fraud."  Minnie Rose LLC

v. Yu, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016).

Manchanda's fraud claims fall short of satisfying Rule 9(b).  The Complaint

repeatedly alleges that Defendants "misrepresented" or "lied" about the servicing and collection

of his student loan debt.  (See, e.g., Compl. ¶¶ 5, 11, 27.)  But the Complaint is silent as to the

"who, what, when, where and how" of those misrepresentations.  These nebulous allegations of

fraud are precisely what Rule 9(b) prohibits.  See Madonna v. United States, 878 F.2d 62, 66 (2d

Cir. 1989) ("One of the purposes of Rule 9(b) is to discourage the filing of complaints as a

pretext for discovery of unknown wrongs." (quotation marks omitted)).  Accordingly,

Manchanda's claims for fraudulent inducement and fraudulent misrepresentation are dismissed.

ii.   <u>Breach of Contract</u>

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." <u>Fischer & Mandell, LLP v. Citibank, N.A.</u>, 632 F.3d 793, 799 (2d Cir. 2011). "A breach of contract claim will be dismissed, however, as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." <u>Negrete v. Citibank, N.A.</u>, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016).

Here, Manchanda fails to plead a breach of contract claim. The Complaint contains a lone, vague allegation: "Plaintiff is now being coerced to pay Navient an 800% markup in his monthly student loan payments when he originally contracted with ECMC for 12.5% of what he is now being forced to pay." (Compl. ¶ 61.) There are no facts alleged that would lead this Court to plausibly infer that <u>Navient's</u> "markup" of a payment rate that Manchanda agreed to with <u>ECMC</u> amounts to a breach of any contract by either Defendant. In his opposition papers, Manchanda asserts that "Navient uses ECMC to do its dirty work" and therefore "Navient [is] responsible for what ECMC does under various legal theories of alter ego, vicarious liability, strawman, [and] joint tortfeasor." (Pl.'s Reply Affirmation to Def. Navient's Notice of Mot. to Dismiss, ECF No. 42 ("Opp'n"), ¶ 4; <u>see also</u> Opp'n ¶¶ 1, 8.) But these allegations are conclusory, and this Court need not accept them as true.[3] Thus, Manchanda's breach of contract claim is dismissed.

---

[3]     This Court also observes that Navient appends to its motion to dismiss a copy of Manchanda's consolidation loan agreement. (<u>See</u> Mot. of Def. Navient to Dismiss Pl.'s Third Am. Compl., ECF No. 37, Ex. B.) In his opposition papers, Manchanda baldly states that Navient breached the "Borrowers Rights and Responsibilities Statement" of that agreement through the "profound[] and profuse[] . . . misconduct reported in this lawsuit." (Opp'n ¶ 11.) Even assuming that this Court could consider the loan agreement—which was not appended to or specifically referenced in the Complaint—at this stage, Manchanda's allusion to Navient's "profound[] and profuse[] . . . misconduct" is insufficient to state a breach of contract claim.

iii.  <u>Civil Usury</u>

In New York, a lender is forbidden from charging interest in excess of 16% annually.  N.Y. Gen. Oblig. Law § 5-501; N.Y. Banking Law § 14-a.  "[A] usurious loan is void and unenforceable, and the borrower is relieved from the obligation to repay both the principal and any accrued interest."  <u>Prowley v. Hemar Ins. Corp. of Am.</u>, 2010 WL 1848222, at *4 (S.D.N.Y. May 7, 2010); <u>accord</u> <u>Seidel v. 18 E. 17th St. Owners, Inc.</u>, 598 N.E.2d 7, 9 (N.Y. 1992).  The borrower may recover interest payments made in excess of the statutory cap.  N.Y. Gen. Oblig. Law § 5-513.

The Complaint fails to identify the interest rate for any of Manchanda's student loans.  Instead, Manchanda alleges that Defendants "work[ed] together" and assessed "collections fees" amounting to "60% of [the] remaining loan principal" following default. (Compl. ¶ 76.)  In his opposition papers, Manchanda claims that these "collection costs" inherently count "toward[] calculations of usury in New York State."  (Opp'n ¶ 12.)  Manchanda cites no law for that proposition, and this Court is unaware of any authority sweeping so broadly. Indeed, Manchanda's argument runs afoul of the well-established principle that the civil "usury laws do not apply to defaulted obligations" or "interest . . . charged" on "past due debts." <u>Manfra, Tordella & Brookes, Inc. v. Bunge</u>, 794 F.2d 61, 63 n.3 (2d Cir. 1986); <u>see also, e.g.</u>, <u>Llewellyn v. Asset Acceptance, LLC</u>, 2015 WL 6503893, at *9 (S.D.N.Y. Oct. 26, 2015) (same); <u>Prowley</u>, 2010 WL 1848222, at *4 (same); <u>In re Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig.</u>, 851 F. Supp. 556, 565 (S.D.N.Y. 1994) (same).  As such, Manchanda's civil usury claim is dismissed.

iv.   GBL §§ 349 & 350

Additionally, Manchanda claims that Defendants engaged in "deceptive business practices" and "false advertising" in violation of GBL §§ 349 & 350, respectively.  GBL § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."  GBL § 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is . . . unlawful."  These statutes share the same elements: "[A] plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675, 675 (N.Y. 2012) (mem.); see also Goshen v. Mut. Life Ins. Co. of N.Y., 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").

To satisfy the "consumer-oriented" prong, the plaintiff must "demonstrate that the acts or practices have a broader impact on consumers at large."  Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744 (N.Y. 1995).  "Private contract disputes, unique to the parties . . . [will] not fall within the ambit of the statute."  Oswego, 647 N.E.2d at 744.  Moreover, to be "misleading," the alleged act or practice must be "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Oswego, 647 N.E.2d at 745; accord Boule v. Hutton, 328 F.3d 84, 94 (2d Cir. 2003).  Finally, "a plaintiff seeking compensatory damages must show that" the "deceptive act or practice . . . caused actual, although not necessarily pecuniary, harm."  Oswego, 647 N.E.2d at 745.

Claims under GBL §§ 349 & 350 are "not subject to the pleading-with-particularity requirements of Rule 9(b)."  Pelman *ex rel.* Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).  They "need only meet the bare-bones notice-pleading requirements of Rule 8(a)."  Pelman, 396 F.3d at 511.

### a.  False Advertising

GBL § 350-a defines "false advertising" as "advertising, including labeling, of a commodity . . . . "  Here, aside from Manchanda's conclusory assertion that "there is no question that there exists false advertising" because "ECMC advertised itself as a student loan business," the Complaint fails to plead facts concerning any advertising by either Defendant.  (Compl. ¶ 54.)  Accordingly, this claim is dismissed.  See Petrosino v. Stearn's Prods., Inc., 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018) ("GBL § 350 relates specifically to false advertising . . . ."); Koch v. Greenberg, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) ("GBL § 350 prohibits false advertising and has the same elements as § 349, except for the requirement that the [d]efendant's advertisement" be misleading.  (emphasis in original)).

### b.  Deceptive Business Practices

The Complaint alleges the ECMC engaged in materially deceptive practices that were consumer-oriented and which resulted in harm to Manchanda.  By way of example, Manchanda alleges that he enrolled in ECMC's loan rehabilitation program, which "allows federal student loan borrowers who are in default to effectively 'cure' one or more defaulted federal loans."  (Compl. ¶ 14.)  He further alleges that ECMC misrepresented that he could complete the rehabilitation process with six monthly payments of approximately $200.  (Compl. ¶ 5.)  Additionally, ECMC allegedly misrepresented to Manchanda that after completing the rehabilitation program, "his future monthly payments would then be approximately the same as

he was paying to get out of default." (Compl. ¶ 5.)  Taking Manchanda's factual assertions as true and drawing all reasonable inferences in his favor, this Court concludes that the Complaint states a GBL § 349 claim against ECMC, albeit by the thinnest of reeds.

However, Manchanda's GBL § 349 claim against Navient is dismissed. Manchanda merely alleges that Navient "swooped in" and "forc[ed] [him] to pay upwards of 800% of what he was previously paying to ECMC to get out of default." (Compl. ¶ 28; see also Compl. ¶ 6 ("But in April 2019 Navient demanded that Plaintiff pay a monthly student loan payment amount that was completely and totally too high.").)  While this Court sympathizes with Manchanda's plight in repaying his student loan debt, the Complaint does not allege any facts suggesting that Navient's charging of its monthly payments are "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Oswego, 647 N.E.2d at 745 (emphasis added).  Moreover, to the extent that Manchanda's GBL § 349 claim rests on his allegation that Navient "erroneously" stated his balance as $309,000, that claim similarly fails.  (Compl. ¶ 6.) Indeed, Manchanda concedes that Navient corrected the balance upon discovering its error, (Compl. ¶ 6).  See Scarola v. Verizon Commc'ns, Inc., 45 N.Y.S.3d 464, 465 (App. Div. 2017) (dismissing § 349 claim where alleged misconduct was not "deceptive or materially misleading" but "was clearly in error").

Finally, this Court briefly addresses Manchanda's claim that Defendants "assur[ed] [him] that [they] would help him find the right repayment option" but then "working together jointly steered" him into "costly payment relief." (Compl. ¶ 9.)  "While Section 349 does not require plaintiff to allege fraud, and therefore the particularity requirements of Rule 9(b) . . . are not triggered, to state a claim under the provision plaintiff must allege with some specificity the allegedly deceptive acts or practices that form the basis for the claim." Lava

Trading Inc. v. Hartford Fire Ins. Co., 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004).  Absent factual

support, Manchanda's conclusory assertion that Defendants jointly "assur[ed] him" of their

assistance in selecting a repayment plan is insufficient to state a GBL § 349 claim.  See Woods v.

Maytag Co., 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010) ("[G]eneral references to

advertisements and statements will not be sufficient to allege a deceptive act or practice."); Lava

Trading Inc., 326 F. Supp. 2d at 438 ("[C]onclusory allegations, even of the existence of a claim

settlement policy designed to deceive the public, are not sufficient to state a claim under Section

349 in the absence of factual allegations in support thereof.").[4]

B.  Preemption Under the Higher Education Act of 1965

Factual sufficiency aside, ECMC avers that Manchanda's state law claims—

including his claim under GBL § 349—must be dismissed because they are preempted by Title

IV, Part B of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1071 et seq., and

regulations promulgated thereunder.[5]  This Court disagrees.

The doctrine of preemption reflects the Supremacy Clause's core mandate that

federal law prevails where it conflicts with state law.  U.S. Const. art. VI, cl. 2.  In general, three

---

[4]    The Complaint also alleges that Defendants "misreported information to consumer credit reporting agencies by making it appear as if [Manchanda] had continued to default on his student loan and also that he owed $309,000 when he did not."  (Compl. ¶ 11.)  Manchanda cannot rely on these allegations to state a GBL § 349 claim because any such claim is preempted by the FCRA.  Indeed, § 1681t(b)(1)(F) of the FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title," which governs "the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F).  Manchanda's allegations concerning Defendants' inaccurate reporting of information to consumer reporting agencies fit squarely within the wheelhouse of § 1681s-2.  See Arnold v Navient Solutions, LLC, 2018 WL 6671542, at *3 (N.D.N.Y. Dec. 19, 2018) ("Plaintiff's allegations concern Defendant's responsibilities as a furnisher, including both reporting accurate information and complying with obligations to investigate disputed debts; therefore, the FCRA preempts these claims."); Okocha v. HSBC Bank USA, N.A., 700 F. Supp. 2d 369, 376 (S.D.N.Y. 2010) (concluding that GBL § 349 claim "premised on the defendants allegedly having made false statements regarding the character, amount, and status of the purported debt" to consumer reporting agencies fell "within the preemptive scope of" the statute).

[5]    Because this Court concludes that Manchanda fails to adequately plead his remaining state law claims against ECMC, this Court addresses only whether Manchanda's § 349 claim is preempted by federal law.

types of preemption exist: "(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." Figueroa v. Foster, 864 F.3d 222, 227–28 (2d Cir. 2017) (quotation marks omitted).  Preemption is "ultimately a question of statutory construction," and courts "look to the intent of Congress to determine the preemptive force of a statute" and the agency's intent "in evaluating preemption by a regulation."  N.Y. Pet Welfare Ass'n, Inc. v. City of New York, 850 F.3d 79, 87 (2d Cir. 2017) (quotation marks omitted).  The party "asserting that federal law preempts state law bears the burden of establishing preemption."  In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 96 (2d Cir. 2013).

First, ECMC contends that the HEA expressly preempts Manchanda's GBL § 349 claim.  Express preemption occurs when "Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision." Arizona v. United States, 567 U.S. 387, 399 (2012); accord Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 238 (2d Cir. 2014).  Relying on § 1098g of the HEA, which states that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] shall not be subject to any disclosure requirements of any State law," ECMC avers that Manchanda's GBL § 349 cause of action is a "claim[] of disclosure," (Arg. Tr., at 9).  To buttress this point, ECMC cites Chae v. SLM Corp., where the Ninth Circuit concluded that claims challenging misstatements made in "billing statements and coupon books," and which themselves were subject to certain statutory and regulatory requirements, were "improper-disclosure claims" preempted by § 1098g.  593 F.3d 936, 942 (9th Cir. 2010).

14

ECMC's express preemption argument is unpersuasive.  Courts in this Circuit have distinguished Chae as addressing "disclosures that were compelled by federal law and which were disclosed in a manner that comported with federal law."  New York v. Pa. Higher Educ. Assistance Agency, 2020 WL 2097640, at *16 n.13 (S.D.N.Y. May 1, 2020); see also Genna v. Sallie Mae, Inc., 2012 WL 1339482, at *8 (S.D.N.Y. Apr. 17, 2012) ("In Chae, the plaintiffs challenged written statements that were explicitly regulated and sanctioned by federal law.  In contrast, the statements at issue here were neither authorized by the Secretary of Education nor conformed to any explicit dictates of federal law.").  As such, "Chae 'does not apply to claims of affirmative misrepresentations in counseling borrowers in distress.'"  Travis v. Navient Corp., 2020 WL 2523066, at *8 (E.D.N.Y. May 18, 2020) (emphasis added) (quoting Nelson v. Great Lakes Educ. Loan Servs., Inc., 928 F.3d 639, 642 (7th Cir. 2019)); see also Pa. Higher Educ. Assistance Agency., 2020 WL 2097640, at *15 (rejecting argument "that claims of affirmative misrepresentations are preempted by § 1098g").

Here, at least some of Manchanda's allegations appear to revolve around ECMC's affirmative misstatements, including ECMC's misrepresentation of the steps needed to remove Manchanda's loans from default.  (See Compl. ¶ 5.)  To the extent that Manchanda's GBL § 349 claim is predicated on those affirmative misrepresentations—as opposed to a duty to disclose—the HEA does not expressly preempt the claim.  See Nelson, 928 F.3d at 649 (noting that "[a]t least some of [plaintiff's] claims of affirmative deception do not necessarily imply any additional disclosure requirements at all" and concluding that "[s]tate law could impose liability on [defendant's] affirmative misrepresentations without imposing additional disclosure requirements on [defendant], and thus avoid preemption under § 1098g"); Pa. Higher Educ. Assistance Agency, 2020 WL 2097640, at *15 ("Because the NYAG is not alleging a duty to

disclose, only a duty to speak truthfully when PHEAA chooses to speak, the Court does not find

that [the claims] are preempted by the HEA."); Minner v. Navient Corp., 2020 WL 906628, at

*10 (W.D.N.Y. Feb. 25, 2020) ("Inasmuch as [plaintiff's] claims arise from [d]efendants'

unregulated communications over the internet and by telephone, they . . . are not subject to

express preemption by the HEA.").[6]

      ECMC also raises conflict preemption, arguing that subjecting it to state law

claims would "stand as an obstacle" to Congress's "clear objective" of "uniform application" of

the HEA.  (ECMC's Mem. of Law in Supp. of Mot. to Dismiss ("ECMC Mem."), ECF No. 40, at

14.)  As noted, "[c]onflict preemption arises where compliance with both state and federal law is

impossible, or where the state law stands as an obstacle to the accomplishment and execution of

the full purposes and objectives of Congress."  Coalition for Competitive Elec., Dynergy Inc. v.

Zibelman, 906 F.3d 41, 49 (2d Cir. 2018) (quotation marks omitted).  The burden to establish

conflict preemption is a heavy one.  See MTBE, 725 F.3d at 101–02.  "The mere fact of 'tension'

between federal and state law is generally not enough to establish an obstacle supporting

preemption . . . ."  Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 241 (2d Cir. 2006)

(citing Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 256 (1984)).  "[F]ederal law does not

preempt state law under obstacle preemption analysis unless 'the repugnance or conflict is so

direct and positive that the two acts cannot be reconciled or consistently stand together.'"

MTBE, 725 F.3d at 102 (quoting Madeira, 469 F.3d at 241).

---

[6]    For similar reasons, this Court rejects ECMC's argument that Manchanda's GBL § 349 claim is expressly preempted by 34 C.F.R. §§ 682.410(b)(8) & 682.411(o).  Those regulations contain language preempting state laws that conflict with regulations governing due diligence and disclosure requirements for lenders and guaranty agencies in collecting student loan debt under the HEA.  But ECMC does not explain how Manchanda's GBL § 349 claim conflicts with those regulations.  As such, ECMC has not carried its burden to show preemption.

"[E]ven if th[is] Court were to recognize the HEA's supposed purpose of uniformity . . . th[is] Court sees no conflict between a desire for uniformity and an order that New York law prohibits [ECMC] from making affirmative misrepresentations." Pa. Higher Educ. Assistance Agency, 2020 WL 2097640, at *17.  Indeed, ECMC "could comply with New York state law, as asserted in the Complaint, while simultaneously respecting any supposed interest in uniformity." Pa. Higher Educ. Assistance Agency, 2020 WL 2097640, at *17; see also Nelson, 928 F.3d at 651 ("Th[e] need [for uniformity] does not extend to the claims [plaintiff] asserts based on affirmative misrepresentations—not required by federal law—to borrowers having trouble making their payments.").  Thus, Manchanda's § 349 claim is not preempted.

C.  Fair Debt Collection Practices Act

Manchanda claims that Defendants violated the FDCPA, which prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  On its face, § 1692e applies only to "debt collectors." Cohen v. Ditech Fin., LLC, 342 F. Supp. 3d 460, 466 (S.D.N.Y. 2018); Schuh v. Druckman & Sinel, L.L.P., 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009).  The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

Navient contends (and Manchanda concedes) that the Complaint fails to plead that Navient is a "debt collector" in its own right.  Rather, Manchanda claims that "ECMC is . . . a 'debt collector'" and that "[Navient] is intertwined inextricably with ECMC and [its]

behavior."  (Compl. ¶¶ 93–95 (emphasis added).)  Thus, according to Manchanda, Navient is a

"debt collector" because ECMC is a "debt collector," (Compl. ¶ 85), under the "legal theories of

respondeat superior, alter ego, vicarious liability, and strawmen," (Opp'n ¶ 14).  Again, however,

Manchanda pleads no facts to support these legal theories or any form of agency relationship

between Defendants.  Because Manchanda fails to plead that Navient is a "debt collector," his

FDCPA claim against Navient is dismissed.  See Allen v. United Student Aid Funds, Inc., 2018

WL 4680023, at *5 (S.D.N.Y. Sept. 28, 2018) ("Plaintiff does not plausibly allege any facts to

support the claim that any of the Navient Defendants were debt collectors, and her FDCPA

claims against the Navient Defendants are therefore dismissed.").

        ECMC's sole argument is that it is not a "debt collector" under the FDCPA.

Specifically, ECMC insists that it cannot be a "debt collector" under the FDCPA because it is

something else: a "guaranty agency" under the HEA and its accompanying regulations.  (ECMC

Mem., at 5–6, 14.)  And according to ECMC, "[t]he principal purpose of . . . any guaranty

agency[] is not the collection of debts."  (ECMC Mem., at 14.)  Additionally, ECMC notes that

the FDCPA explicitly excludes from its definition of "debt collector" those "collecting or

attempting to collect any debt owed or due or asserted to be owed or due another to the extent

such activity . . . is incidental to a bona fide fiduciary obligation."  15 U.S.C. § 1692a(6)(F).

ECMC avers that it falls within this exemption because it "is in a fiduciary relationship with the

[United States] Department of Education ['DOE'] for the purpose of the [Federal Family

Education Loan Program]," pursuant to which Manchanda's student loans were issued.  (ECMC

Mem., at 15.)  To support its points, ECMC relies on a collection of out-of-circuit cases where

courts found that ECMC was not a "debt collector" under the FDCPA.  ECMC also appends a

declaration to its motion to dismiss reiterating those same conclusions and offering additional facts for this Court's consideration.  (ECF No. 39-1.)

As this Court noted at argument, ECMC offers these authorities for their truth— that is, that ECMC's "principal purpose" is not the collection of debts and that any collection efforts with respect to Manchanda's loans were incidental to its fiduciary obligation to the DOE. (See Arg. Tr., at 6–7.)  But that's a problem.  On a motion to dismiss, this Court's analysis is confined to the pleadings, and it is obligated to accept the Complaint's factual allegations as true. Here, the Complaint alleges that ECMC is a debt collector and that its principal purpose is the collection of defaulted federal student loan debt. (Compl. ¶ 12.)  Manchanda also alleges, albeit on information and belief, that the DOE and state agencies have referred billions of dollars in student loan debt to ECMC for collection.  (Compl. ¶ 13.)  And the Complaint does not allege any other facts from which this Court can discern whether ECMC fits within the FDCPA's "bona fide fiduciary obligation" exemption with respect to Manchanda's student loans.

In recognition of these issues, ECMC asks this Court to convert its motion to dismiss into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).  It's too late.  The first time ECMC made its request was at argument.  (Arg. Tr. at 6–7.)  It may be true that ECMC is not a "debt collector" under the FDCPA because, for example, any efforts to collect Manchanda's student loans were incidental to its fiduciary obligations to the DOE.  But that determination must await summary judgment.  Accordingly, this Court declines to dismiss Manchanda's FDCPA claim against ECMC.

D.  Consumer Financial Protection Act of 2010

Manchanda also purports to bring a claim against Defendants under various sections of the CFPA.  This claim is dismissed because the CFPA does not provide a private

right of action.  See Zubair v. Bank of Am., 2020 WL 4431571, at *3 (S.D.N.Y. July 29, 2020)

("[T]he CFPA, which lays out the duties, authorities, and enforcement powers of the Consumer

Financial Protection Bureau (CFPB), does not provide a private right of action for its

enforcement by a consumer through a lawsuit."); Gingras v. Rosette, 2016 WL 2932163, at *22

(D. Vt. May 18, 2016) (same); Nguyen v. Ridgewood Sav. Bank, 2015 WL 2354308, at *11

(E.D.N.Y. May 15, 2015) (same).

E.   Fair Credit Reporting Act

While the Complaint's opening paragraph alleges an FCRA violation, (see

Compl. ¶ 1), the pleading is otherwise devoid of any reference to the statute, except for a pair of

cryptic shout-outs in its demand for damages, (see, e.g., Compl. ¶ 169 ("Plaintiff therefore also

sues for actual and punitive damages for $100,000,000 for multiple violations of the Fair Credit

Reporting Act . . . .")).  When confronted with this infirmity at argument, an attorney from

Manchanda's law firm insisted that "the claim has not been abandoned," but she conceded that

she was "not sure where" the FCRA claim is pleaded in the Complaint.  (Arg. Tr., at 12.)

"[J]udges are not like pigs, hunting for truffles buried in the record."  Kortright

Capital Partners LP v. Investcorp Inv. Advisers Ltd., 327 F. Supp. 3d 673, 688 (S.D.N.Y. 2018)

(quotation marks and citation omitted).  Nevertheless, having sifted through Manchanda's

pleading, this Court concludes that the claim fails.  The only allegations within the Complaint

potentially giving rise to an FCRA claim concern Defendants' misreporting of information to

consumer reporting agencies.  (See Compl. ¶ 11.)  Specifically, that claim would arise under

§ 1681s-2(b) of the statute, which "imposes a duty on furnishers of information to investigate

disputed information after receiving notice of a dispute concerning the completeness or accuracy

of information from a [consumer reporting agency]."  Jonas v. Int'l Airline Emps. F.C.U., 2006

20

WL 1409721, at *6 (S.D.N.Y. May 19, 2006) (emphasis added).  Fatally, the Complaint does not

allege that either Defendant received such notice.  See LaCourte v. JP Morgan Chase & Co.,

2013 WL 4830935, at *9 (S.D.N.Y. Sept. 4, 2013).

<u>CONCLUSION</u>

For the foregoing reasons, Navient's motion to dismiss is granted, and ECMC's

motion to dismiss is granted in part and denied in part.  Manchanda may proceed with his GBL

§ 349 claim and FDCPA claim against ECMC.  In all other respects, ECMC's motion to dismiss

is granted.  The Clerk of Court is directed to terminate the motions pending at ECF Nos. 37 and

39.

Dated:  September 29, 2020
           New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.