Kenneth L. Baum, Esq.
**LAW OFFICES OF KENNETH L.**
**BAUM LLC**
167 Main Street
Hackensack, New Jersey 07601
201-853-3030
201-584-0297 Facsimile
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAHUL MANCHANDA,<br><br>                    Plaintiff,<br><br>        v.<br><br>EDUCATIONAL CREDIT MANAGEMENT<br>CORPORATION,<br><br>                    Defendant. | CIVIL ACTION NO. 1:19-cv-05121 (WHP)<br><br>        <u>Civil Action</u> |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EDUCATIONAL CREDIT**
**MANAGEMENT CORPORATION'S MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO FED. R. CIV. P. 56**

---

Of Counsel and On the Brief:
        Kenneth L. Baum, Esq.

## PRELIMINARY STATEMENT

Defendant Educational Credit Management Corporation ("ECMC") submits this Brief in support of its motion for summary judgment against Plaintiff Rahul Manchanda ("Plaintiff") pursuant to Fed. R. Civ. P. 56 (the "Motion").  As demonstrated below, the material undisputed facts relevant to the remaining causes of action in Plaintiff's Third Amended Complaint [Dkt. No. 26] show that he cannot sustain any claims against ECMC as a matter of law, warranting the granting of summary judgment in ECMC's favor.

By Memorandum and Order dated September 29, 2020 [Dkt. No. 47], the Court, *inter alia*, granted in part and denied in part ECMC's motion to dismiss the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), such that the only claims remaining against ECMC are Plaintiff's claims alleging deceptive business practices under N.Y. Gen. Bus. Law ("GBL") § 349 (Second Claim) and violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Claim Seven).  With discovery now complete in this case, it is clear that none of these claims are sustainable.

First, the gravamen of Plaintiff's claims under N.Y. GBL § 349 (deceptive acts and practices) is that, "ECMC working together with Navient misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce [P]laintiff…," and that ECMC failed to disclose the extent of collection fees and misrepresented to Plaintiff that "a low monthly payment for approximately 6 months of approximately $200 would get him out of default…." (Third Amended Complaint at ¶ 36.)  There is no evidence to support such claims under Section 349.

It is undisputed that ECMC was created under the direction of the United States Department of Education ("ED") to provide specialized guarantor services pursuant to the Federal Family Education Loan Program ("FFELP"), and that all of ECMC's activity in connection with Plaintiff's student loan was performed in its capacity as a FFELP guarantor and pursuant to its duties thereunder.  Accordingly, ECMC is entitled to the safe harbor defense enumerated under N.Y. GBL Section 349(d).  Moreover, Plaintiff, based on the undisputed facts, cannot satisfy the elements of a claim under Section 349, which are that the action in question was consumer-oriented, misleading in a material way, and caused Plaintiff to suffer injury.

With respect to Plaintiff's claims under the FDCPA, he alleges in the Third Amended Complaint that because ECMC is a "debt collector" subject to the FDCPA, it is liable for making "false, deceptive, and misleading representations" to Plaintiff that "completing the federal loan rehabilitation program would remove all adverse information regarding his loan from his credit report," and that "some or all of their collection fees related to the federal loan rehabilitation program would be forgiven by [ED] or that the exact amount of collection fees currently assessed to the account would be forgiven."  Again, there is nothing in the record to support these claims as a matter of law.  As ECMC has argued throughout this case, it is not a "debt collector" subject to the FDCPA.  Moreover, there is nothing in the record to support Plaintiff's allegations of false or misleading representations by ECMC; to the contrary, the Rehabilitation Agreement – which Plaintiff, a seasoned lawyer, read and signed – specifically states that collection costs, which are determined pursuant to federal regulations, would be added to Plaintiff's loan.

Accordingly, because there are no disputes regarding any material facts and ECMC is entitled to judgment as a matter of law, the Motion should be granted.

## STATEMENT OF FACTS

The relevant facts in support of the Motion are set forth in the Declaration of Kerry Klisch (the "Klisch Dec.") and the transcript of the March 20, 2021, deposition of Mithun Sarang ("Trans.") attached to the Declaration of Kenneth L. Baum, Esq.  For the Court's convenience, a summary of those facts is included below.  Unless otherwise noted, the capitalized, defined terms herein shall have the same definitions ascribed to them in the Klisch Dec. and Trans.

ECMC was created under the direction of the United States Department of Education ("ED") to provide specialized guarantor services pursuant to the Federal Family Education Loan Program ("FFELP"), including accepting transfer of title of certain student loan accounts on which the student loan borrower has filed a bankruptcy proceeding.  (Klisch Dec., ¶ 2.)  ECMC is a not-for-profit corporation duly organized under the laws of the State of Minnesota, with offices located at 111 South Washington Avenue, Suite 1400, Minneapolis, Minnesota 55401. (*Id.*)

As a guaranty agency, ECMC is in a fiduciary relationship with ED for the purpose of the FFELP.  ECMC only collects debts for its own account – that is, debts in which it has a proprietary interest – and does not collects the debts of other entities.  (Klisch Dec., ¶ 2.)

On or about May 1, 2003, Plaintiff signed a Federal Consolidation Loan Application and Promissory Note requesting a consolidation of his existing student loans under FFELP (the "Note").  The lender was College Loan Corporation.  The consolidation loan made pursuant to the Note (the "Loan") was disbursed on or about August 26, 2003, in the original principal

amount of $118,806.  The Loan was originally guaranteed by American Student Assistance ("ASA").  (Klisch Dec., ¶¶ 3-4.)

By agreement, ASA assigns to ECMC its student loan accounts for borrowers that have filed a bankruptcy proceeding.  On April 30, 2014, Plaintiff filed for bankruptcy under Case No. 14-11259.  Thus, on or around July 10, 2014, ASA transferred all right, title, and interest in the Note (and all FFELP guarantor responsibilities) to ECMC, and ECMC became the FFELP guarantor.  When Plaintiff's bankruptcy was dismissed on or around January 7, 2015, the Loan was repurchased by the lender pursuant to federal regulations.  ECMC remained the FFELP guarantor.  (Klisch Dec., ¶¶ 5-6.)

When Plaintiff failed to maintain repayment of the Loan it became severely delinquent and attained a default status.  The lender submitted a default claim to ECMC in accordance with 34 C.F.R. § 682.102(g).  ECMC, as FFELP guarantor, paid the default claim and all right, title, and interest in the Note again transferred to ECMC.  (Klisch Dec., ¶ 7.)

Mithun Sarang ("Sarang"), a former employee of ECMC, only worked with defaulted accounts.  (Trans., 28:3-6.)  By the time Sarang spoke to Plaintiff in April 2017, the period within which Plaintiff had the option to cure his defaulted status had expired and collection costs had been added to Plaintiff's account.  (Trans., 51:6-25, 52:1-16.)

On or about April 14, 2017, Plaintiff executed an agreement with ECMC (the "Rehabilitation Agreement"), whereby he agreed to rehabilitate the Loan pursuant to 34 C.F.R. § 682.405.  (Klisch Dec., ¶ 8.)  The balance of the Loan, as stated in the Rehabilitation Agreement, was $161,349.62.  (Klisch Dec. at Exh. C, Attachment A.)  The Rehabilitation Agreement expressly states, among other things, that, upon rehabilitation, (i) the outstanding balance of the Loan, including collection costs, would be capitalized, (ii) the collection costs would be a

4

percentage (not to exceed 16 percent) of the principal and interest balance at the time of rehabilitation, and (iii) collection costs are determined pursuant to federal regulations (see 34 C.F.R. § 682.410(b)(2)).  (Klisch Dec. at Exh. 3, p. 3.)  The successful completion of the rehabilitation process would remove the default status and the Loan would go back to a repayment status with a lender.  (Klisch Dec., ¶ 8.)

Plaintiff successfully completed the rehabilitation of the Loan.  As a result, on or about January 29, 2018, an eligible lender, Navient Credit Finance Corporation, purchased the Loan. (Klisch Dec., ¶ 9.)

All activity by ECMC with regard to Plaintiff's account was performed in its capacity as a FFELP guarantor and pursuant to its duties thereunder.  (Klisch Dec., ¶ 10.)

## LEGAL ARGUMENT

**I.    BECAUSE THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT AND ECMC IS ENTITLED TO JUDGMENT AS A MATTER OF LAW, ECMC IS ENTITLED TO SUMMARY JUDGMENT.**

### A.    Summary Judgment Standards.

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Sousa v. Marquez*, 702 F.3d 124, 127 (2d Cir. 2012) (same). In determining a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 271 (2d Cir. 2011).

### B.    Plaintiff's claim under N.Y. GBL §§ 349 (Deceptive Acts and Practices).

The factual allegations in support of Plaintiff's claim under N.Y. GBL § 349 are that, "ECMC working together with Navient misrepresented that they were in fact a federal student loan company when in reality they were a pure predatory collections agency charging illegally high collections costs in order to induce [P]laintiff…," and that ECMC failed to disclose the extent of collection fees and misrepresented to Plaintiff that "a low monthly payment for approximately 6 months of approximately $200 would get him out of default…." (Third Amended Complaint at ¶ 36.)

#### i.    The Safe Harbor Defense Under Section 349(d).

While the Third Amended Complaint does not state the specific portions of N.Y. GBL § 349 pursuant to which Plaintiff is seeking relief, the relevant subsection of Section 349 is

6

subsection (a), which provides that, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. GBL § 349(a).

Notably, there is a specific defense to liability written directly in the statute. Specifically, Section 349(d) provides:

> In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

N.Y. GBL § 349(d).

In recognition of the safe harbor provided under Section 349(d), numerous courts have held that, where a defendant complied with federal statutes and/or regulations, the plaintiff could not sustain a cause of action pursuant to Section 349(a). *See e.g. Polzer v. TRW, Inc.*, 256 A.D.2d 248, 249, 682 N.Y.S.2d 194 (1st Dep't 1998) ("In dismissing plaintiffs' statutory claims, the motion court also properly determined that the acts or omissions that are alleged to have violated General Business Law § 349 were protected by the qualified immunity granted pursuant to the Federal Fair Credit Reporting Act…, since General Business Law § 349(d) provides that it is a complete defense if the alleged act or practice complies with the rules and regulations of, and the statutes administered by, *inter alia*, the Federal Trade Commission…."); *Marcus v. AT& T Corp.*, 938 F.Supp. 1158, 1173 (S.D.N.Y. 1996) (in analyzing claims under Sections 349 and 350, court held that, "[t]o the extent plaintiffs challenge AT & T's billing practices, those claims are barred because A& & T has complied with the Communications Act and the regulations promulgated thereunder by filing its tariffs with the FCC and making those tariffs public.");

*Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 134 fn. 6 (E.D.N.Y. 2018) (N.Y. GBL claims dismissed under Sections 349(d) and 350(d) where defendant's labeling complied with FDA regulations); and *Mendelson v. Trans World Airlines, Inc.*, 120 Misc. 2d 423, 466 N.Y.S.2d 168, 171 (Queens Cty. 1983) (finding that defendant-airline's compliance with federal regulations concerning overbooking disclosures warranted dismissal of claims).

Here, ECMC is entitled to invoke the safe harbor defense to Plaintiff's claim under Section 349 of the N.Y. GBL.   It is undisputed that ECMC was created under the direction of ED to provide specialized guarantor services pursuant to FFELP (Klisch Dec., ¶ 2), and that all activity by ECMC in connection with Plaintiff's Loan was performed in its capacity as a FFELP guarantor and pursuant to its duties thereunder.  (*Id.*, ¶ 10.)  *See Kuntz v. Educ. Credit Mgmt. Corp., 2020 WL 1872332,* \*4 (D.N.D. January 7, 2020) (citing decision in *Fisher v. ECMC*, No. 1:16-cv-2724, 2017 WL 3276395, at \*6 (N.D. Ga. July 5, 2017) that "took judicial notice of ECMC's status as a guaranty agency for [ED], citing an official list of guaranty agencies on [ED's] website.")  Further, collection costs are dictated by federal regulations and the Rehabilitation Agreement expressly states, among other things, that, upon rehabilitation, collection costs are determined pursuant to federal regulations (see 34 C.F.R. § 682.410(b)(2)). (Klisch Dec. at Exh. 3, p. 3.) Accordingly, because ED is indisputably an "agency" of the United States for purposes of Section 349(d) – to the extent necessary, the Court may take judicial notice of that fact pursuant to Fed. R. Evid. 201 – the application of the safe harbor defense pursuant to N.Y. GBL § 349(d) warrants granting summary judgment for ECMC on the sole remaining state law claim asserted in the Second Claim of the Third Amended Complaint.

### ii.        Plaintiff's Claim Under N.Y. GBL § 349.

Even if, *arguendo*, ECMC were not entitled to invoke the above-referenced safe harbor

defense to Plaintiff's claims under N.Y. GBL § 349, ECMC would nevertheless be entitled to

summary judgment on that claim.  As courts have held, "[a] plaintiff under section 349 must

prove three elements: first, that the challenged act or practice was consumer-oriented; second,

that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of

the deceptive act."  *New World Solutions, Inc. v. NameMedia Inc.*, 150 F.Supp.3d 287, 329

(S.D.N.Y. 2015) (citing, *inter alia*, *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892,

731 N.E.2d 608, 611 (2000)).

 Based on the record of this case, Plaintiff cannot satisfy these elements.  First, with

regard to the requirement that the challenged act or practice be consumer-oriented, "[a] claimant

relying on § 349 must establish that the alleged deceptive act or practice was directed to the

consuming public at large."  *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331

F.Supp.2d 247, 256 (S.D.N.Y. 2004) (holding that allegations "complaining of alleged private

wrongs to them and not to the general public" failed to state a claim for relief).  A plaintiff "need

not show that the defendant committed the complained-of acts repeatedly – either to the same

plaintiff or to other consumers – but instead must demonstrate that the acts or practices have a

broader impact on consumers at large."  *Oswego Laborers' Local 214 Pension Fund v. Marine*

*Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995).  Critically,

"[p]rivate contract disputes, unique to the parties,…would not fall within the ambit of the

statute…."  *Id.*  Here, Plaintiff's only allegations regarding N.Y. GBL § 349 are that, "ECMC

working together with Navient misrepresented that they were in fact a federal student loan

company when in reality they were a pure predatory collections agency charging illegally high

collections costs in order to induce [P]laintiff…," and that ECMC failed to disclose the extent of

collection fees and misrepresented to Plaintiff that "a low monthly payment for approximately 6

months of approximately $200 would get him out of default…."  (Third Amended Complaint at

¶ 36.)  There is no allegation whatsoever of any acts or practices that impact the consumer public

at large, nor does the record support painting these claims with such a broad stroke; instead,

Plaintiff only complains of actions that ECMC took in the context of his student loan alone.

        Second, to determine whether the alleged act was misleading in a material way, "the New

York Court of Appeals has instructed that a deceptive act or practice has an 'objective

definition,' whereby deceptive acts or practices – which may be acts or omissions – are 'limited

to those likely to mislead a reasonable consumer acting reasonably under the circumstances."

*O'Neill v. Standard Homeopathic Co.*, 346 F.Supp.3d 511, 529 (S.D.N.Y. 2018) (citations

omitted).  "Whether a representation is material and whether it is likely to mislead a reasonable

consumer may be determined as a matter of fact or law."  *Anunziatta v. Orkin Exterminating Co.,

Inc.*, 180 F.Supp.2d 353, 361-2 (N.D.N.Y. 2001).  Therefore, a court may determine in the

context of a motion that plaintiffs "are a sophisticated subset of…consumers" so as to warrant

the dismissal of claims under N.Y. GBL 349 or 350.  *Gomez-Jimenez v. New York Law School*,

36 Misc.2d 230, 943 N.Y.S.2d 834, 843 (New York Cty. 2012).

        Here, Plaintiff is a practicing lawyer with years of experience.  He was presented with a

contract of only a few pages – i.e., the Rehabilitation Agreement – that clearly spelled out its

material terms, including the imposition of collection costs pursuant to federal regulations.

Plaintiff signed that contract and, in furtherance of its terms, made all of the required payments

to rehabilitate his defaulted student loan.  Under the circumstances, including Plaintiff's level of

sophistication, there was nothing deceptive about the Rehabilitation Agreement or ECMC's

actions in presenting it to Plaintiff.  Moreover, as the Rehabilitation Agreement itself specifically states, "collection costs are determined pursuant to federal regulations (see 34 C.F.R. § 682.410(b)(2)."  (Klisch Dec. at Exh. 3, p. 3.)  In other words, ECMC made no representations regarding collection costs that were not already mandated by federal regulations.  Accordingly, Plaintiff also fails to satisfy the second element for a claim under N.Y. GBL § 349.

Lastly, with regard to the third element – i.e., that Plaintiff suffered injury as a result of the alleged deceptive act – Plaintiff has produced no evidence to support his claim for "$100,000,000 in actual and punitive damages for unlawful/deceptive/fraudulent business practices."  (Third Amended Complaint at ¶ 38.)  Therefore, ECMC is entitled to summary judgment.

### C. Preemption and the FDCPA.

ECMC acknowledges that in its September 29, 2020, Memorandum and Order granting in part and denying in part ECMC's motion to dismiss the Third Amended Complaint, the Court, *inter alia*, considered and rejected ECMC's arguments that the doctrines of express and conflict preemption warranted the dismissal of Plaintiff's claim under Section 349 of the N.Y. GBL (i.e., the only remaining state law claim following dismissal of all the other such claims) (September 29, 2020, Memorandum and Order at pp. 13-17.)  The reasoning underpinning the Court's ruling in this regard was Plaintiff's allegations "revolv[ing] around ECMC's affirmative misstatements, including ECMC's misrepresentation of the steps needed to remove [Plaintiff's] loans from default."  (September 29, 2020, Memorandum and Order at p. 15.)  The Court concluded that the allegation of such misstatements, as opposed to a duty to disclose on ECMC's part, precluded the application of a preemption defense.

Now, following the close of discovery, it is clear that the only evidence in the record regarding the imposition of collection costs on Plaintiff's student loan and the steps needed for Plaintiff to rehabilitate his loan is contained in the Rehabilitation Agreement, which is a disclosure that is governed by federal regulations.  Indeed, 34 CFR § 682.405 provides, in relevant part, at subsection (a)(1), that "[a] guaranty agency must establish a loan rehabilitation program for all borrowers with an enforceable promissory note for the purpose of rehabilitating defaulted loans…."  Subsection (a) also provides, *inter alia*, the number of payments that must be made in order for a defaulted loan to be rehabilitated.  Similarly, subsection (b) lists the required terms of a rehabilitation agreement, including the number of payments to be made thereunder, the timing, and the amount, as well as details regarding collection costs.  *See* 34 CFR § 682.405(b)(1)(i)-(vi).  Moreover, the regulations mandate that a rehabilitation agreement inform the borrower, *inter alia*, of the effects of having the loans rehabilitated and the amount of mandatory collection costs to be added to the account.  *See* 34 CFR § 682.405(b)(1)(vi)(A) and (B).

Any disclosures made by ECMC through the Rehabilitation Agreement, including the fact that, upon rehabilitation, (i) the outstanding balance of the Loan, including collection costs, would be capitalized, (ii) the collection costs would be a percentage (not to exceed 16 percent) of the principal and interest balance at the time of rehabilitation, and (iii) collection costs are determined pursuant to federal regulations (Klisch Dec. at Exh. 3, p. 3.), conformed specifically to federal regulations, and were not mere "representations" that could be the subject of a claim under N.Y. GBL § 349.  Accordingly, ECMC respectfully suggests that, under these circumstances, its preemption defenses are viable.

12

### i.      ECMC's Role in the FFELP.

Congress passed the Higher Education Act of 1965 ("HEA", 20 U.S.C. § 1071, *et seq.*) to "keep the college door open to all students of ability, regardless of socioeconomic background." *Pelfrey v. ECMC*, 71 F.Supp.2d 1161, 1162-63 (N.D. Ala. 1999), *aff'd* 208 F.3d 945 (11th Cir. 2000); 20 U.S.C. § 1070(a).

Among other things, the HEA established the FFELP.  20 U.S.C. § 1071.  The FFELP was formerly referred to as the Guaranteed Student Loan Program ("GSL") before being renamed in 1992.  ECMC operates as a guaranty agency under the HEA.  *See e.g. Rowe v. ECMC*, 559 F.3d 1028, 1030 n.1, 1032 (9th Cir. 2009).

In accordance with the HEA, student loans are guaranteed by either a state agency or non-profit organization "that has an agreement with the Secretary under which it will administer a loan guaranty program under the Act."  34 C.F.R. § 682.200; 20 U.S.C. § 1072(a)(1).  Such state agencies or non-profit organizations are referred to as guaranty agencies.

Guaranty agencies enter into agreements with ED that set forth "such administrative and fiscal procedures as may be necessary to protect the United States from the risk of unreasonable loss thereunder, to ensure proper and efficient administration of the loan insurance program, and to assure that due diligence will be exercised in the collection of loans insured under the program . . ."  20 U.S.C. § 1078(c)(2); 34 C.F.R. § 682.404(l); 34 C.F.R. § 682.410(b)(6).

The Secretary of Education is authorized to prescribe rules and regulations as may be necessary to carry out the purpose of the HEA.  20 U.S.C. § 1082(a)(1).  Said regulations are found in the Code of Federal Regulations, which sets forth, in great detail, the wide variety of activities a guaranty agency must undertake on a guaranteed student loan.  *See e.g.* 34 C.F.R. §§ 682.400-682.423.

The due diligence obligation owed by the guaranty agency to the DOE requires that the guaranty agency "engage in reasonable and documented collection activities." 34 C.F.R. § 682.410(b)(6)(i). This obligation specifically includes a number of actions the guaranty agency must perform in attempting to collect on any defaulted, reinsured loans it holds, such as a sequence of dunning letters and telephone contacts, reporting the defaulted loan to credit bureaus, federal and state income tax refund offsets, non-judicial administrative wage garnishment, and, where appropriate, collection litigation. 34 C.F.R. § 682.410(b)(6)(ii)-(vii). ED is empowered to take remedial actions against a guaranty agency which fails to comply with these requirements. *See e.g.* 34 C.F.R. § 682.413(b)(2) and (c)(1).

## ii.   ECMC is a Guaranty Agency Under the HEA.

ECMC is a guaranty agency under the HEA. It is a non-profit organization that has an agreement with the DOE under which it helps to administer the FFELP. (Klisch Dec., ¶¶ 2 and 10.) Numerous courts have concluded that ECMC is a guaranty agency in previous cases similar to the instant case. *See e.g. Pelfrey v. ECMC*, 71 F.Supp.2d 1161, 1180 (N.D. Ala. 1999), *aff'd* 208 F.3d 945 (11th Cir. 2000) (generally discussing ECMC's role as a guarantor under the FFELP); *Black v. ECMC*, 459 F.3d 796, 801 (7th Cir. 2006) (same); *In Re Howe*, 2008 WL 4184640, *1 (C.D. Cal. September 5, 2008) ("ECMC is a private, non-profit corporation and a guaranty agency in the [FFELP]."); *Rowe v. ECMC*, 559 F.3d 1028, 1032 (9th Cir. 2009) ("There is no dispute in this case that, at least generally speaking, ECMC is a guaranty agency."); *Rowe v. ECMC*, 730 F. Supp. 2d 1285, 1288 (D. Or. 2010) ("[I]t is now undisputed that ECMC is a student loan guaranty agency with a fiduciary duty to [ED]…"); *Watkins v. Educ. Credit Mgmt. Corp.*, 2011 WL 2015479, *4 (E.D. Va. May 12, 2011) (referencing student loan programs under the HEA whereby loans are "guaranteed by state and private non-profit guaranty agencies (such as

ECMC)…"); and *Bennett v. Premiere Credit of North America, LLC*, 2012 WL 1605108, *2 (S.D. Ga. May 8, 2012) ("As previously adjudicated, ECM[C] is a guaranty agency….."), *aff'd,* Case No. 12–128592013, 2013 WL 310066 (11th Cir. 2013).

ECMC, as a FFELP guarantor, is required to perform the numerous duties set forth in the Code of Federal Regulations as discussed above.

### iii.   Plaintiff's N.Y. GBL Claim Is Preempted By Federal Law.

Plaintiff's claim under N.Y. GBL § 349 is preempted by the HEA, which is federal law. Preemption under the HEA may be express or implied. *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010). Express preemption occurs where federal law explicitly defines the extent to which its enactments preempt state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988). Implied preemption occurs where there is conflict between the HEA and state law, or where complying with state law would hinder compliance under the HEA. *Cadle Co. v. Banner*, 394 B.R. 292, 304 (D. Conn. 2008).

### iv.   Plaintiff's N.Y. GBL Claim Is Expressly Preempted by the HEA.

As noted above, the essence of Plaintiff's claim under Section 349 of N.Y. GBL is that he was the victim of fraudulent misrepresentation, deceptive business practices, and improper disclosure regarding the terms of his consolidation loan. In *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010), however, the court held that similar claims were expressly preempted by Section 1098g of the HEA. *Id.* at 943. That section provides that, "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 *et seq.*) shall not be subject to any disclosure requirements of any State law."

The factual allegations asserted by the plaintiffs in *Chae* – that a student loan servicer improperly calculated the interest on the subject loans, assessed late fees, and fixed the first

15

repayment date – are strikingly similar to those advanced by Plaintiff.  In *Chae*, "[t]he plaintiffs dispute[d] [the] characterization of their claims, arguing that they do not seek specific disclosures, but merely to stop Sallie Mae from fraudulently and deceptively misleading borrowers through the written documents."  593 F.3d at 943.  As the court in that case held, however, "preemption cannot be avoided simply by relabeling an otherwise-preempted claim." *Id.*  Here, because Plaintiff's state law claims are clearly preempted under the HEA, ECMC is entitled to summary judgment on those claims.

>       **v.**      **Plaintiff's N.Y. GBL Claim Is Preempted by the Code of Federal Regulations.**

Express preemption may be found based on "the text of the provision, the surrounding statutory framework, and Congress's stated purposes in enacting the statute."  *Chae*, *supra*, at 942.  Where express preemption language exists, the Court must interpret the provision and "identify the domain expressly pre-empted' by that language."  *Medtronic, Inc. v. Lora Lohr*, 518 U.S. 470, 484 (1996).

As noted above, the HEA authorizes ED to "prescribe such regulations as may be necessary to carry out the purposes" of the FFELP.  20 U.S.C. § 1082(a)(1).)  Under that authority, ED has promulgated a series of comprehensive regulations, including regulations that articulate the standards for collecting student loans and direct the pre-litigation collection efforts of lenders, guaranty agencies, and third-party debt collectors.  34 C.F.R. §§ 682.410 and 682.411.

Here, ECMC's allegedly wrongful conduct is governed by 34 C.F.R §§ 682.410 and 682.411.  *See e.g.* 34 C.F.R. §§ 682.410(b)(6)(ii); 682.410(b)(6)(vi); 682.411(d)(1); 682.411(d)(3); 682.411(l); 682.411(m).  These Regulations also contain express preemption language:

"Preemption of State law.
The provisions of paragraphs (b) (2), (5), and (6) of this section
preempt any State law, including State statutes, regulations, or rules,
that would conflict with or hinder satisfaction of the requirements of
these provisions."  (34 C.F.R. § 682.410(b)(8).)

                                   *     *     *

"Preemption.
The provisions of this section . . . Preempt any State law, including
State statutes, regulations, or rules, that would conflict with or
hinder satisfaction of the requirements or frustrate the purposes of
this section . . ."  (34 C.F.R. § 682.411(o).)

Courts consistently rely on this language to find state law claims implicating the HEA

and its related regulations to be preempted.  *See e.g. Hunt v. Sallie Mae, Inc.*, 2011 U.S. Dist.

LEXIS 78306 (E.D. Mich. July 19, 2011) at *3 ("Plaintiff's state-law claims are expressly

preempted by the language in 34 C.F.R § 682.411(o)"); *Martin v. Sallie Mae, Inc.*, 2007 U.S.

Dist. LEXIS 90418 (S.D. W. Va. Dec. 7, 2007) at *8 (holding that the HEA "preempts any state

cause of action that conflicts with it.").

Accordingly, because Plaintiff's N.Y. GBL claim is preempted, ECMC is entitled to

summary judgment on that claim.

> **vi.   Plaintiff's N.Y. GBL Claim Is Preempted Because It Prohibits,
> Restricts, or Imposes a Burden on Pre-Litigation Collection
> Activity.**

Even if Plaintiff's N.Y. GBL claim is not expressly preempted by 20 U.S.C. § 1098g, 20

U.S.C. § 1095a, 34 C.F.R. § 682.410(b)(8) and/or 34 C.F.R. § 682.411(o), it is nevertheless

impliedly preempted because it conflicts with the HEA and therefore hinders or prohibits the

collection activities of guaranty agencies.

In this regard, the HEA preempts all state laws regarding pre-litigation collection activity.

In *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1266 (9th Cir. 1996), the Ninth

Circuit held that Oregon state law regarding collection activity were preempted by the HEA in its

entirety, and defined the breadth of the preemption as follows:

> "[T]he preemption includes ***any State law*** that would hinder or
> prohibit any activity taken by third-party debt collectors prior to
> litigation." (*Brannan v. United Student Aid Funds, Inc.*, 94 F.3d
> 1260, 1266 (9th Cir. 1996), emphasis added.)

The *Brannan* Court based its decision on the DOE's interpretation of the regulations

governing pre-litigation collection activity, including 20 U.S.C. §§ 1078(c), 1080(a),(b); 34

C.F.R. §§ 682.410 and 682.411.

The *Brannan* court also noted:

> ". . . exposure to lawsuits under fifty separate sets of laws and court
> systems could make lenders reluctant to make new federally-
> guaranteed student loans." (*Brannan*, *supra*, at 1263.)

Accordingly, because Plaintiff's claim under New York law is preempted,

ECMC is entitled to summary judgment on that claim.

### vii.    Plaintiff's N.Y. GBL Claim Is Preempted Because It Conflicts with the HEA.

Conflict preemption exists "where the state law 'stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *English v.*

*General Elec. Co.*, 496 U.S. 72, 79 (1990).

Here, conflict preemption applies to Plaintiff's N.Y. GBL claim because, as Plaintiff

would have it applied, it would conflict with the due diligence and collection requirements of the

HEA, and therefore create obstacle to the congressional purpose and objectives of the HEA.

In line with this reasoning, the Ninth Circuit in *Chae* preempted state law claims based in

part on Congress's direction to the DOE that it aimed for uniformity of FFELP regulations.  The

Ninth Circuit stated:

> "*Permitting varying state law challenges across the country*, with state law standards that may differ and impede uniformity, *will almost certainly be harmful to the FFELP* . . . *Congress intended uniformity* within the program.  The statutory design, its detailed provisions for the FFELP's operation, and its focus on the relationship between borrowers and lenders persuade us that Congress intended to subject FFELP participants to uniform federal law and regulations . . . Having carefully considered the FFELP and the purposes of Congress in the HEA, we conclude, *beyond any doubt*, that subjecting the federal regulatory standards to the potentially conflicting standards of fifty states on contract and consumer protection principles would stand as a severe obstacle to the effective promotion of the funding of student loans. Such an obstacle, which we consider hostile to the purposes of Congress in this program, *must bow to the overriding principles of conflict preemption and federal law supremacy*."  (*Chae v. SLM Corp.*, 593 F.3d 936, 945, 947, 950 (9th Cir. 2010) (emphasis added).)

If Plaintiff were permitted to pursue his N.Y. GBL claim against ECMC in this case, it would create conflicting requirements in New York compared to the remaining states; specifically, ECMC would be subject to both the HEA and federal regulations as well as Plaintiff's state law claim, leading to the unreasonable result that ECMC would be faced with potential liability in State Court for complying with the requirements of the HEA and federal regulations.  Such a conflict would hinder ED's ability to regulate guaranty agencies like ECMC and interfere with ED's enforcement powers as authorized and intended by Congress.

### viii.   ECMC is Not Subject to the FDCPA.

#### (a) Guaranty Agencies Do Not Fall Under the Definition of a "Debt Collector."

Plaintiff also asserts that ECMC, as a "debt collector" (Third Amended Complaint at ¶¶ 85 and 95), violated the FDCPA.  It is fundamental that the FDCPA applies only to "debt collectors." *Pelfrey*, 71 F. Supp. 2d at 1166.  ECMC does not fall under the general definition of a "debt collector." The FDCPA defines a "debt collector" as any business whose principal

19

purpose is the collection of any debts or who regularly collects or attempts to collect debts of another. 15 U.S.C. § 1692a.

The principal purpose of ECMC, or any guaranty agency, is not the collection of debts nor does it regularly collect debts for another.  Rather, the principal purpose of a guaranty agency is the administration of the FFELP as dictated in extensive Federal Regulations. *See Pelfrey*, 71 F.Supp.2d at 1163.  *See also Rowe v. Educ. Credit Mgmt. Corp.*,730 F.Supp. 2d 1285 (D. Or. 2010)("[t]hus even beyond the fiduciary exception, ECMC does not fall under the definition of a debt collector with respect to the loan at issue."); *Edler v Student Loan Marketing Association*, 1993 WL 625570 (D. D.C. 1993), ("[t]he FDCPA is inapplicable to [the guaranty agency] as a matter of law because [it] is a guarantee agency and not a debt collector within the meaning of the statute)"; *Davis v. United Student Aid Funds*, 45 F. Supp. 2d 1104, 1108 (D.Kan. 1998) (finding, "[w]hen a borrower defaults on a guaranteed loan, the guaranty agency pays the guaranty and becomes the 'holder' of the note."); *Freeman v. Great Lakes*, 2013 WL 2355541 at *6 (reasoning, "[s]imply put, ECMC is collecting its own debt as the current holder of the obligation. Accordingly, it is not a 'debt collector' under the FDCPA.").

Moreover, the Supreme Court has held that an entity that purchases debts that are originated by someone else and then seek to collect those debts for themselves – which, as noted above, is one of ECMC's primary functions as a specialized guarantor under FFELP – is not a "debt collector" subject to the FDCPA.  *See Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1721-2, 198 L.Ed.2d 177 (2017); *Cadiz v. Educ. Credit Mgmt. Corp.*, 2019 WL 4254484, *2 (N.D. Ill. February 21, 2019); and *Kuntz v. Educ. Credit Mgmt. Corp., 2020 WL 1872332, *7* (D.N.D. January 7, 2020).  As a result, ECMC is entitled to summary judgment on Plaintiff's claims under the FDCPA.

**(b) ECMC Operates Under a Fiduciary Relationship with the Department of Education.**

Even if ECMC were a "debt collector" within the ambit of the FDCPA definition, which it is not, it would still not be subject to liability under the FDCPA. The FDCPA also outlines a number of exceptions to the generalized definition of the term "debt collector," one of which is the "bona fide fiduciary exception" under Section 1692a(6)(F)(i). As a guaranty agency, ECMC is in a fiduciary relationship with the Department of Education for the purpose of the FFELP. *See* 34 C.F.R. § 682.419(a) ("The guaranty agency must exercise the level of care required of a fiduciary charged with the duty of protecting, investing, and administering the money of others.") and Klisch Dec. at ¶ 2.

Indeed, the Eleventh Circuit made this point clear in its affirmance in *Pelfrey* - the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* (1994), does not apply to the defendant [ECMC], because the defendant [ECMC] is a "person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." *Pelfrey v. Educational Credit Management Corporation*, 208 F.3d 945 (11th Cir. 2000)(citing 15 U.S.C. 1692a(6)(F)(i). As aptly held in *Rowe* following remand from the Ninth Circuit, "[N]o reasonable trier of fact could conclude that ECMC does not fall under the fiduciary obligation exception to the definition of debt collector under the FDCPA . . ." *Rowe v. ECMC*, 730 F.Supp.2d 1285, 1288-1289 (D. Or. 2010). *See also Bennett v. Premiere Credit of N. Am., LLC*, 504 Fed. Appx. 872, 878 n.4 (11th Cir. 2013) ("ECMC is exempt from the FDCPA because (1) it has a fiduciary relationship with the DOE, and (2) its collection activities are incidental to that fiduciary obligation."); Cadiz v. Educ. Credit Mgmt. Corp., 2019 WL 4254484, *5 (N.D. Ill. February 21, 2019) (holding that the defendant, a guaranty agency, was not a debt collector under the FDCPA because it was acting

21

incidental to its bona fide fiduciary relationship with the DOE); *Freeman v. Great Lakes*, 2013 WL 2355541 at *6 ("Pursuant to the bona fide fiduciary obligation exception, ECMC is not subject to suit under the FDCPA."); *Lima v. U.S. Dept. of Educ.,*  947 F.3d at 1122, 1127 (9th Cir. 2020) (finding, ECMC "owes a fiduciary obligation to the DOE" and is exempt from the FDCPA as a matter of law); *Seo v. Educ. Credit Mgmt Corp.*, 2016 WL 521065, *2 (N.D. Ill. February 9, 2016)("Defendant is not subject to the FDCPA because, as a guarantor acting in a fiduciary relationship with the Department of Education, it does not fall under the definition of a debt collector."). *Lasserre v. ECMC*, 2012 WL 2191628, at *2 (M.D. La. June 14, 2012)("Guaranty agencies acting in their fiduciary capacity to the U.S. Department of Education fall within the 'fiduciary' exception to the FDCPA."); *Rainey v. ECMC*, 2016 WL 1594378, at *3 (E.D. Mich. Apr. 21, 2016) ("ECMC satisfies [the requirements of the Bona Fide Fiduciary Exception] and thus its collection activities here are not covered by the FDCPA.

Accordingly, because ECMC is not subject to the FDCPA, ECMC is entitled to summary judgment on Plaintiff's claims under the FDCPA.

## **CONCLUSION**

For all the foregoing reasons, ECMC respectfully requests that the Court enter an order awarding ECMC summary judgment pursuant to Fed. R. Civ. P. 56 and such other and further relief as the Court deems just and proper.


DATED:  Hackensack, New Jersey
        May 25, 2021

                                        Respectfully submitted,

                                        LAW OFFICES OF KENNETH L. BAUM
                                        LLC
                                        Attorneys for Defendant Educational Credit
                                        Management Corporation


                                        By:___*/s/ Kenneth L. Baum*_____
                                              Kenneth L. Baum

23