Kenneth L. Baum, Esq.
**LAW OFFICES OF KENNETH L.**
**BAUM LLC**
167 Main Street
Hackensack, New Jersey 07601
201-853-3030
201-584-0297 Facsimile
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAHUL MANCHANDA, | CIVIL ACTION NO. 1:19-cv-05121 (WHP) |
| Plaintiff, | |
| v. | Civil Action |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | |
| Defendant. | |

---

**MEMORANDUM OF LAW OF DEFENDANT EDUCATIONAL CREDIT**
**MANAGEMENT CORPORATION IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT**

---

Of Counsel and On the Brief:
    Kenneth L. Baum, Esq.

## PRELIMINARY STATEMENT

Defendant Educational Credit Management Corporation ("ECMC") submits this Brief in opposition to Plaintiff Rahul Manchanda's ("Plaintiff") motion for summary judgment ("Plaintiff's Motion").  As demonstrated below, Plaintiff has failed to show the existence of undisputed material facts, through admissible evidence, that would entitle him to judgment as a matter of law on the remaining causes of action in his Third Amended Complaint [Dkt. No. 26], which are Plaintiff's claims alleging deceptive business practices under N.Y. Gen. Bus. Law ("GBL") § 349 (Second Claim) and violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Claim Seven).[1]

Plaintiff has not offered any admissible evidence to dispute that ECMC's activity in connection with Plaintiff's student loan was performed in its capacity as a FFELP guarantor and pursuant to its duties thereunder required by federal law.  Accordingly, ECMC is entitled to the safe harbor defense enumerated under N.Y. GBL Section 349(d).  Moreover, despite Plaintiff's attempt to portray ECMC's alleged misdeeds as somehow endemic to the student loan borrower world at large, that allegation is based on Plaintiff's own biased narrative, and not any actual admissible evidence in the record.  Therefore, Plaintiff cannot satisfy the elements of a claim under Section 349, which are that the action in question was consumer-oriented, misleading in a material way, and caused Plaintiff to suffer injury.

---

[1] In fact, Plaintiff's failure to prove sustainable claims on these causes of action is the crux of ECMC's pending motion for summary judgment [Dkt. No. 74] ("ECMC's Motion"). Because the arguments set forth in that motion are also relevant to the consideration of Plaintiff's Motion, ECMC will reference certain of those arguments herein.  Unless otherwise noted, the capitalized terms herein shall have the same definitions ascribed to them in ECMC's Motion.

With respect to Plaintiff's claims under the FDCPA, ECMC, as a FFELP guarantor, is not a "debt collector" subject to the FDCPA.  Plaintiff has offered no evidence, admissible or otherwise, to contradict that fact.  Moreover, even if ECMC were somehow subject to the provisions of the FDCPA, Plaintiff has offered no evidence, admissible or otherwise, to prove that ECMC violated that law in any way.

Accordingly, Plaintiff's Motion should be denied.

## LEGAL ARGUMENT

### I.   PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT.

#### A.   Summary Judgment Standards.

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Sousa v. Marquez*, 702 F.3d 124, 127 (2d Cir. 2012) (same). In determining a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 271 (2d Cir. 2011).

#### B.   Plaintiff's claim under N.Y. GBL § 349 (Deceptive Acts and Practices).

Plaintiff seeks relief pursuant to N.Y. GBL § 349(a), which provides that, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." The heart of Plaintiff's allegation is that ECMC "fail[ed] to provide debtor counseling to 'cure' his default and instead steer[ed] [Plaintiff] into a Rehabilitation Program that triggered 'collection costs' of $36,559.19 being added to his total loan balance." (Plaintiff's Brief at p. 2.)

Plaintiff's allegations are completely unsupported by fact or law and demonstrate a significant misunderstanding of federal law that governs his federal student loans. First, loan rehabilitation is a mechanism to cure a defaulted federal student loan (which Plaintiff accomplished) and ECMC was required to offer the program. Loan rehabilitation is governed by 34 C.F.R. § 682.405. The federal law requires, "A guaranty agency that has a basic program agreement <u>must enter into a loan rehabilitation agreement</u> with the Secretary. The guaranty

3

agency <u>must establish a loan rehabilitation program for all borrowers</u> with an enforceable promissory note for the purpose of rehabilitating defaulted loans…" 34 C.F.R. § 682.405(a)(1)(emphasis added).

Second, ECMC does not dictate the terms, such as collection costs, that Plaintiff complains of. The regulations specify, "[t]he agency may not impose any conditions unrelated to the amount or timing of the rehabilitation payments in the rehabilitation agreement." 34 C.F.R. § 682.405(b)(1)(vi). In fact, the regulations directly address collection costs; specifically, "[t]he written rehabilitation agreement must inform the borrower… [o]f the amount of any collection costs to be added to the unpaid principal of the loan when the loan is sold to an eligible lender or assigned to the Secretary, which may not exceed 16 percent of the unpaid principal and accrued interest on the loan at the time of the sale or assignment." *Id*. at (B). The rehabilitation agreement Plaintiff entered into does just as the regulations specify. It specifically says, "Upon rehabilitation, the outstanding balance of your loan(s), including collection costs, will be capitalized. The collection costs will be a percentage (not to exceed 16 percent) of the principal and interest balance at the time of rehabilitation. Collection costs are determined pursuant to federal regulations. See 34 C.F.R. § 682.410(b)(2)." (See Declaration of Kerry Klisch ("Klisch Dec.") at Exh. C.)

Indeed, 34 C.F.R. § 682.410(b)(2) provides that, "[w]hether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency may charge a borrower an amount equal to the reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim…" 34 C.F.R. § 682.410(b)(2). *See also* 20 U.S.C. § 1091a(b)(1) ("a borrower who has

defaulted on a loan made under this subchapter shall be required to pay, in addition to other charges specified in this subchapter reasonable collection costs").

Likewise, the regulations set out how collection costs are calculated. "The amount charged a borrower must equal the lesser of—

(A) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or
(B) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education." *Id.*

As of June 1, 2008, ED determined that the maximum collection cost that could be charged by a guaranty agency was 24.34%. (Klisch Dec., ¶ 11.) ECMC's internal collection costs rate, pursuant to 34 C.F.R. § 30.60, was higher than the amount capped by ED. (*Id.* at ¶ 12.) ECMC's collection costs were thus charged at 34.34%, which is the same amount Plaintiff would be charged if the loans were held by ED. *Id.*

Third, collection costs were not triggered by some predatory practice, or anything that ECMC did, for that matter. Rather, collection costs were triggered by Plaintiff's default. *See* 34 C.F.R. § 682.410(b)(2); 20 U.S.C. § 1091a(b)(1); Klisch Dec., ¶ 12. By completing rehabilitation under 34 C.F.R. § 682.405, the amount of collection costs that can be included in the loan balance is capped at 16%. Thus, Plaintiff's collection costs were reduced from 24.34% down to 16%, resulting in a decrease in collection costs. 34 C.F.R. § 682.405(b)(1)(vi)(B); Klisch Dec., ¶.

Plaintiff's allegations of violation of N.Y. GBL § 349(a) fail, for at least four (4) independent reasons: First, the Safe Harbor Defense Under Section 349(d); second, Plaintiff failed to prove the necessary elements of the claim; third, there is no private right of action to pursue alleged HEA violations; and fourth, Plaintiff's claims are preempted by the HEA.

### i.       ECMC falls within the Safe Harbor Defense Under Section 349(d).

Section 349(d) of N.Y. GBL provides:

> In any such action it shall be a complete defense that the act or
> practice is, or if in interstate commerce would be, subject to and
> complies with the rules and regulations of, and the statutes
> administered by, the federal trade commission or any official
> department, division, commission or agency of the United States as
> such rules, regulations or statutes are interpreted by the federal
> trade commission or such department, division, commission or
> agency or the federal courts.

N.Y. GBL § 349(d).

In recognition of the safe harbor provided under Section 349(d), numerous courts have held that, where a defendant complied with federal statutes and/or regulations, the plaintiff could not sustain a cause of action pursuant to Section 349(a).  *See e.g. Polzer v. TRW, Inc.*, 256 A.D.2d 248, 249, 682 N.Y.S.2d 194 (1st Dep't 1998) ("In dismissing plaintiffs' statutory claims, the motion court also properly determined that the acts or omissions that are alleged to have violated General Business Law § 349 were protected by the qualified immunity granted pursuant to the Federal Fair Credit Reporting Act…, since General Business Law § 349(d) provides that it is a complete defense if the alleged act or practice complies with the rules and regulations of, and the statutes administered by, *inter alia*, the Federal Trade Commission….");  *Marcus v. AT& T Corp.*, 938 F.Supp. 1158, 1173 (S.D.N.Y. 1996) (in analyzing claims under Sections 349 and 350, court held that, "[t]o the extent plaintiffs challenge AT & T's billing practices, those claims are barred because A& & T has complied with the Communications Act and the regulations promulgated thereunder by filing its tariffs with the FCC and making those tariffs public.");  *Colella v. Atkins Nutritionals, Inc.*, 348 F.Supp.3d 120, 134 fn. 6 (E.D.N.Y. 2018) (N.Y. GBL claims dismissed under Sections 349(d) and 350(d) where defendant's labeling complied with

FDA regulations); and *Mendelson v. Trans World Airlines, Inc.*, 120 Misc. 2d 423, 466 N.Y.S.2d 168, 171 (Queens Cty. 1983) (finding that defendant-airline's compliance with federal regulations concerning overbooking disclosures warranted dismissal of claims).

Here, ECMC is entitled to invoke the safe harbor defense to Plaintiff's claim under Section 349 of the N.Y. GBL.   It is undisputed that ECMC was created under the direction of ED to provide specialized guarantor services pursuant to FFELP (Klisch Dec., ¶ 2), and that all activity by ECMC in connection with Plaintiff's Loan was performed in its capacity as a FFELP guarantor and pursuant to its duties thereunder.  (*Id.*, ¶ 17.)  *See Kuntz v. Educ. Credit Mgmt. Corp., 2020 WL 1872332,* \*4 (D.N.D. January 7, 2020) (citing decision in *Fisher v. ECMC*, No. 1:16-cv-2724, 2017 WL 3276395, at \*6 (N.D. Ga. July 5, 2017) that "took judicial notice of ECMC's status as a guaranty agency for [ED], citing an official list of guaranty agencies on [ED's] website.")  Further, collection costs are dictated by federal regulations and the Rehabilitation Agreement expressly states, among other things, that, upon rehabilitation, collection costs are determined pursuant to federal regulations (see 34 C.F.R. § 682.410(b)(2)). (Klisch Dec. at Exh. C, p. 3.)  Accordingly, because ED is indisputably an "agency" of the United States for purposes of Section 349(d) – to the extent necessary, the Court may take judicial notice of that fact pursuant to Fed. R. Evid. 201 – the application of the safe harbor defense pursuant to N.Y. GBL § 349(d) warrants denying summary judgment for Plaintiff, and granting summary judgment for ECMC, on the sole remaining state law claim asserted in the Second Claim of the Third Amended Complaint.

   **ii.     Plaintiff Failed to Prove the Elements of a Claim Under N.Y. GBL § 349.**

Courts have held that, "[a] plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a

7

material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *New World Solutions, Inc. v. NameMedia Inc.*, 150 F.Supp.3d 287, 329 (S.D.N.Y. 2015) (citing, *inter alia*, *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611 (2000)).

     Nothing in Plaintiff's Motion satisfies these elements.  First, with regard to the requirement that the challenged act or practice be consumer-oriented, "[a] claimant relying on § 349 must establish that the alleged deceptive act or practice was directed to the consuming public at large." *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F.Supp.2d 247, 256 (S.D.N.Y. 2004) (holding that allegations "complaining of alleged private wrongs to them and not to the general public" failed to state a claim for relief).  A plaintiff "need not show that the defendant committed the complained-of acts repeatedly – either to the same plaintiff or to other consumers – but instead must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995).  Critically, "[p]rivate contract disputes, unique to the parties,…would not fall within the ambit of the statute…." *Id.*

     Here, Plaintiff claims that ECMC steered him into a loan rehabilitation program which, he alleges, improperly triggered the imposition of excessive collection costs.  While nothing in the record supports that allegation (in fact, the rehabilitation actually reduced collection costs), the larger point is that Plaintiff has offered no admissible evidence of a deceptive act or practice "directed to the consuming public at large."  Indeed, Plaintiff's repeated citations to Internet articles, uncertified transcriptions of telephone calls, and the lack of a sworn statement by Plaintiff himself, are all inadmissible hearsay and violate Fed. R. Civ. P. 56(c)(4)'s requirement that "[a]n affidavit or declaration used to support…a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated." *See also Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial.") and *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[I]t is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment.").

Second, to determine whether the alleged act was misleading in a material way, "the New York Court of Appeals has instructed that a deceptive act or practice has an 'objective definition,' whereby deceptive acts or practices – which may be acts or omissions – are 'limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *O'Neill v. Standard Homeopathic Co.*, 346 F.Supp.3d 511, 529 (S.D.N.Y. 2018) (citations omitted). "Whether a representation is material and whether it is likely to mislead a reasonable consumer may be determined as a matter of fact or law." *Anunziatta v. Orkin Exterminating Co., Inc.*, 180 F.Supp.2d 353, 361-2 (N.D.N.Y. 2001). Therefore, a court may determine in the context of a motion that plaintiffs "are a sophisticated subset of…consumers" so as to warrant the dismissal of claims under N.Y. GBL 349 or 350. *Gomez-Jimenez v. New York Law School*, 36 Misc.2d 230, 943 N.Y.S.2d 834, 843 (New York Cty. 2012).

Here, it is undisputed that Plaintiff is a practicing lawyer with years of experience. He was presented with a contract of only a few pages – i.e., the Rehabilitation Agreement – that clearly spelled out its material terms consistent with the controlling federal law. Plaintiff signed that contract and, in furtherance of its terms, made all of the required payments to rehabilitate his defaulted student loan. There was nothing deceptive about the Rehabilitation Agreement or ECMC's actions in presenting it to Plaintiff. Moreover, as the Rehabilitation Agreement itself specifically states, "collection costs are determined pursuant to federal regulations (see 34 C.F.R.

9

§ 682.410(b)(2)." (Klisch Dec. at Exh. C, p. 3.)  In other words, ECMC made no representations regarding collection costs outside of those mandated by federal regulations.  Accordingly, Plaintiff also fails to satisfy the second element for a claim under N.Y. GBL § 349.

Lastly, with regard to the third element – i.e., that Plaintiff suffered injury as a result of the alleged deceptive act – Plaintiff has produced no evidence to support his claim for "$100,000,000 in actual and punitive damages for unlawful/deceptive/fraudulent business practices." (Third Amended Complaint at ¶ 38.)  Therefore, ECMC is entitled to summary judgment.

### iii.    There Is No Private Right of Action for Plaintiff's Claims.

Plaintiff's claims are based on allegations associated with collection costs following rehabilitation and the Notice of Default that ECMC sent.  Federal appellate courts have made clear, "[w]hile the HEA endows debtors with certain rights …, the HEA expressly empowers only the Secretary of Education—not debtors—with the authority to enforce the HEA and rectify HEA violations."  *Bennett v. Premiere Credit of N. Am., LLC*, 504 Fed. Appx. 872, 875 (11th Cir. 2013) (citing *Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113, 1123 (11th Cir. 2004)). Plaintiff has no independent cause of action for what are alleged violations of the HEA.  As discussed herein, rehabilitation is available pursuant to and dictated by 34 C.F.R. § 682.405. Likewise, collection costs are the result of defaulting under the FFELP and assessed as well as calculated as required by FFELP regulations.  *See* 34 C.F.R. § 682.410(b)(2); 34 C.F.R. § 30.60; § 682.405(b)(1)(vi)(B).  ECMC entered into a rehabilitation agreement with Plaintiff that federal regulations required ECMC to offer and federal regulations dictated the terms, including collection costs.

Similarly, ECMC sent a Notice of Default to Plaintiff's last known address at the time the Notice of Default was sent.  (Klisch Dec. at ¶ 18.)  The Court can take judicial notice that it was addressed to the same address that Plaintiff represented as being correct in his bankruptcy petition filed on January 29, 2016.  Regardless, the Notice of Default is a FFELP-required document pursuant to 34 C.F.R. §§ 682.410(b)(5)(ii) & (vi).  The regulations dictate the contents and require that it be sent.  *Id.  See also* 34 C.F.R. § 682.410(b)(6)(ii) ("Within 45 days after paying a lender's default claim, the agency must send a notice to the borrower that contains the information described in paragraph (b)(5)(ii) of this section…").

ECMC did not misstep in executing these requirements of the HEA regulations.  However, if it had, as Plaintiff alleges with repeated citations to the federal regulations in his brief, "[i]t is well-settled that the HEA does not expressly provide debtors with a private right of action.'"  *Bennett* at 875 (citing *Cliff*, 363 F.3d at 1123).  In fact, in a prior holding after it conducted an extensive review of the private right of action issue with regards to the Higher Education Act, the Court found:

> "[I]t is important to note at the outset that nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions.

*McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002).

The Second Circuit Court of Appeals agrees.  *Sanon v. Dep't of Higher Educ.*, 453 F. App'x 28, 29 (2d Cir. 2011) (finding, "the HEA does not provide student borrowers a private right of action to enforce its provisions."); s*ee also Konashenko v. Duncan*, No. 15-CV-2354 (SJF) (SIL), 2016 WL 4543793, at *5 (E.D.N.Y. July 20, 2016), *report and recommendation adopted*, 2016 WL 4544037 (E.D.N.Y. Aug. 31, 2016) ("[i]t is well-established that the HEA

does not permit a private right of action for student borrowers of [FFELP] loans.")  Likewise, as articulated by the Tenth Circuit:

> "[t]he express language of the HEA, and the regulations promulgated thereunder, do not "create a private cause of action, and there is nothing in the Act's language, structure or legislative history from which a congressional intent to provide such a remedy can be implied."

*L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992).  See also *Parks Sch. of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("There is no express right of action under the HEA except for suits brought by or against the Secretary of Education.");

The HEA specifically does not provide for a private right of action, as it would run counter to Congress' express purpose of providing the Secretary of Education with exclusive enforcement authority to remedy violations of the HEA.  Consequently, Plaintiff's claim fails for this additional reason and Plaintiff is not entitled to summary judgment.

### iv.    Plaintiff's N.Y. GBL Claim Is Preempted by the HEA and Federal Regulations.

Plaintiff's claim under N.Y. GBL § 349 is preempted by the HEA, which is federal law. Preemption under the HEA may be express or implied.  *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010).  Express preemption may be found based on "the text of the provision, the surrounding statutory framework, and Congress's stated purposes in enacting the statute."  *Chae*, *supra*, at 942.  Where express preemption language exists, the Court must interpret the provision and "identify the domain expressly pre-empted' by that language."  *Medtronic, Inc. v. Lora Lohr*, 518 U.S. 470, 484 (1996).

The HEA authorizes ED to "prescribe such regulations as may be necessary to carry out the purposes" of the FFELP.  20 U.S.C. § 1082(a)(1).)  Under that authority, ED has

promulgated a series of comprehensive regulations, including regulations that articulate the standards for administrating the FFELP.  34 C.F.R. § 682.410.

Here, ECMC's allegedly wrongful conduct consists of nothing more than the issuance of a notice of default and assessing collection charges.  As previously discussed, the authorization for collection charges and how they are calculated is directly governed by 34 C.F.R § 682.410(b)(2).  Similarly, the requirement that a notice of default be sent and its specific content are dictated by 34 C.F.R. § 682.410(b)(6).  Section 34 C.F.R. § 682.410 contains express preemption language for both of these specific sections:

> "Preemption of State law.
> The provisions of paragraphs (b) (2), (5), and (6) of this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the requirements of these provisions."  (34 C.F.R. § 682.410(b)(8).)

To the extent ECMC somehow violated N.Y. GBL with regard to the notice of default or collection charges, these claims are expressly preempted by the HEA.

Even if Plaintiff's N.Y. GBL claim was not expressly preempted by 34 C.F.R. § 682.410(b)(8), it is nevertheless impliedly preempted because it conflicts with the HEA and therefore hinders or prohibits the required activities of guaranty agencies.  Conflict preemption exists "where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

Here, if ECMC's actions violated N.Y. GBL, conflict preemption applies.  As previously discussed, ECMC's conduct was in compliance with HEA mandates.  Federal regulations required ECMC to both offer rehabilitation pursuant to 34 C.F.R. § 682.405(a)(1) (including the application of collection costs) and issue a notice of default pursuant to 34 C.F.R. § 682.410(b)(6)(ii).  N.Y. GBL, as Plaintiff would have it applied, would conflict with the

requirements of the HEA, and therefore create an obstacle to the Congressional purpose and objectives of the HEA.  Plaintiff's motion for summary judgment should be denied for this additional reason.

### C.      Plaintiff's Claims Under the FDCPA Fail.

ECMC is a guaranty agency under the HEA.  It is a non-profit organization that has an agreement with the DOE under which it helps to administer the FFELP.  (Klisch Dec., ¶ 2.) Numerous courts have concluded that ECMC is a guaranty agency in previous cases similar to the instant case.  *See e.g. Pelfrey v. ECMC*, 71 F.Supp.2d 1161, 1180 (N.D. Ala. 1999), *aff'd* 208 F.3d 945 (11th Cir. 2000) (generally discussing ECMC's role as a guarantor under the FFELP); *Black v. ECMC*, 459 F.3d 796, 801 (7th Cir. 2006) (same).

### i.      ECMC Does Not Fall Under the Definition of a "Debt Collector."

It is fundamental that the FDCPA applies only to "debt collectors." *Pelfrey*, 71 F. Supp. 2d at 1166.  ECMC does not fall under the general definition of a "debt collector." The FDCPA defines a "debt collector" as any business whose principal purpose is the collection of any debts or who regularly collects or attempts to collect debts of another. 15 U.S.C. § 1692a.  The principal purpose of ECMC, or any guaranty agency, is not the collection of debts nor does it regularly collect debts for another.  Rather, the principal purpose of a guaranty agency is the administration of the FFELP.  The Code of Federal Regulations describes the numerous activities a guaranty agency must undertake on a FFELP loan.  This includes due diligence, sending a notice of default, and assessing collection costs under 34 C.F.R. § 682.410, as well as offering rehabilitation under 34 C.F.R. § 682.405.

Plaintiff argues the *Rowe* case from the Ninth Circuit stands for ECMC being a debt collector under the FDCPA.  Plaintiff is mistaken.  *Rowe* actually holds that, at least generally

speaking, ECMC is a guaranty agency.  *Rowe v. ECMC*, 559 F.3d 1028, 1032 (9th Cir. 2009).

The only reason *Rowe* was remanded to the District Court, was because the Ninth Circuit was

analyzing a Motion to Dismiss under Rule 12(b)(6). The Ninth Circuit was therefore required to

"take at face value the allegation in the complaint" that ECMC was not the acting guaranty

agency, and that ECMC's "only role" was to collect the plaintiff's loan "solely as a collection

agent." *Id*, at 1036.  On remand, when the plaintiff's inaccurate allegations did not have to be

accepted as true, the District Court held that "no reasonable trier of fact could conclude that

ECMC does not fall under the fiduciary obligation exception to the definition of debt collector

under the FDCPA," and granted summary judgment for ECMC.  *Rowe v. ECMC*, 730 F. Supp.

2d 1285, 1288 (D. Or. 2010).

 Plaintiff also argues that *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263

(9th Cir.1996) supports ECMC being deemed a debt collector under the FDCPA.  However,

*Brannan* addressed only the government actor exemption from the FDCPA, which ECMC has

not asserted in this matter.  Moreover, Plaintiff ignores that in subsequent decisions, the Ninth

Circuit has explained that a guaranty agency is *not* subject to the requirements of the FDCPA,

unless it is acting *not* as a guaranty agency, but solely as a third-party debt collector. *Lima v.

ECMC*, 947 F.3d 1122, 1127 (9th Cir. 2020); *Rowe v. ECMC*, 559 F.3d 1028, 1035 (9th Cir.

2009).  *See* also *Pelfrey v. Educ. Credit Mgmt Corp.*, 208 F.3d 945 (11th Cir. 2000)(finding the

Fair Debt Collection Practices Act does not apply to ECMC); *Freeman v. Great Lakes*, 2013 WL

2355541 at *6 (reasoning, "[s]imply put, ECMC is collecting its own debt as the current holder

of the obligation. Accordingly, it is not a 'debt collector' under the FDCPA."); *Kuntz v. Educ.

Credit Mgmt. Corp., 2020 WL 1872332,* *7 (D.N.D. January 7, 2020) (finding, "ECMC's

argument that it is not within the FDCPA definition of debt collector is convincing. The

definition set forth in 15 U.S.C. § 1692a(6) emphasizes the <u>regular</u> collection of debt by a business whose <u>principal purpose</u> is the collection of debts <u>owed to another</u>. Here, as detailed in the Klisch Dec., ECMC incidentally collects debt as a part of its fiduciary duties to the DOE under the FFELP.  In Kuntz's case, ECMC holds the promissory note; therefore, any action taken by ECMC against Kuntz was an attempt to collect a debt held by itself, not on behalf of another entity.")

Here, as numerous courts have held in similar situations where ECMC is the guarantor and holder of all right, title and interest in Plaintiff's FFELP loan, ECMC is not a debt collector under the FDCPA.  Moreover, the Supreme Court has held that an entity that purchases debts that are originated by someone else and then seek to collect those debts for themselves, is not a "debt collector" subject to the FDCPA.  *See Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1721-2, 198 L.Ed.2d 177 (2017); *Cadiz v. Educ. Credit Mgmt. Corp.*, 2019 WL 4254484, *2 (N.D. Ill. February 21, 2019).

### ii.    ECMC Operates Under a Fiduciary Relationship with the Department of Education.

Even if ECMC were a "debt collector" within the ambit of the FDCPA definition, which it is not, it would still not be subject to liability under the FDCPA.  As previously discussed, the FDCPA also outlines a number of exceptions to the generalized definition of the term "debt collector," one of which is the "bona fide fiduciary exception" under Section 1692a(6)(F)(i).  As a guaranty agency, ECMC is in a fiduciary relationship with the Department of Education for the purpose of the FFELP. *See* 34 C.F.R. § 682.419(a) ("The guaranty agency must exercise the level of care required of a fiduciary charged with the duty of protecting, investing, and administering the money of others.") and Klisch Dec. at ¶ 2.

All activity performed by ECMC in connection with Plaintiff's loans was done in the capacity of a FFELP guaranty agency pursuant to the HEA and Code of Federal Regulations and as a fiduciary to the Department of Education.  (Klisch Dec. at ¶ 17).  Accordingly, ECMC is not subject to the FDCPA as it falls under the fiduciary exception.  *See Pelfrey v. Educ. Credit Mgmt. Corp,*, 208 F.3d 945 (11th Cir. 2000) (holding that ECMC is a "person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." *See also Bennett*, *v. Premiere Credit of N. Am., LLC*, 504 Fed. Appx. 872, 878 n.4 (11th Cir. 2013) ("ECMC is exempt from the FDCPA because (1) it has a fiduciary relationship with the DOE, and (2) its collection activities are incidental to that fiduciary obligation."); *Murungi v. Texas Guaranteed,* 402 Fed. Appx. 849, 851 (5th Cir. 2010) (holding that the FFELP Guarantor's actions to collect the debt were merely incidental to its fiduciary obligation, and therefore was not a debt collector subject to the FDCPA); *Cadiz v. Educ. Credit Mgmt. Corp.*, 2019 WL 4254484, at *5 (N.D. Ill. Feb. 21, 2019) (holding that the defendant, a guaranty agency, was not a debt collector under the FDCPA because it was acting incidental to its bona fide fiduciary relationship with the DOE); *Freeman v. Great Lakes*, 2013 WL 2355541 at *6 ("Pursuant to the bona fide fiduciary obligation exception, ECMC is not subject to suit under the FDCPA."); *Lima v. U.S. Dept. of Educ.,*  947 F.3d at 1122, 1127 (9th Cir. 2020) (finding, ECMC "owes a fiduciary obligation to the DOE" and is exempt from the FDCPA as a matter of law); *Seo v. Educ. Credit Mgmt Corp.*, 2016 WL 521065, *2 (N.D. Ill. February 9, 2016)("Defendant is not subject to the FDCPA because, as a guarantor acting in a fiduciary relationship with the Department of Education, it does not fall under the definition of a debt collector."). *Lasserre v. ECMC*, 2012 WL 2191628, at *2 (M.D. La. June 14, 2012)("Guaranty agencies acting in their

fiduciary capacity to the U.S. Department of Education fall within the 'fiduciary' exception to the FDCPA."); *Rainey v. ECMC*, 2016 WL 1594378, at *3 (E.D. Mich. Apr. 21, 2016) ("ECMC satisfies [the requirements of the Bona Fide Fiduciary Exception] and thus its collection activities here are not covered by the FDCPA.").

Accordingly, because ECMC is not a debt collector under the FDCPA and thus not subject to the FDCPA, Plaintiff is not entitled to summary judgment on his claims under the FDCPA.

**<u>CONCLUSION</u>**

For all the foregoing reasons, ECMC respectfully requests that the Court enter an order denying Plaintiff's motion for summary judgment and for such other and further relief as the Court deems just and proper.

DATED:  Hackensack, New Jersey
             June 18, 2021

Respectfully submitted,

LAW OFFICES OF KENNETH L. BAUM
LLC
Attorneys for Defendant Educational Credit
Management Corporation


By:___*/s/ Kenneth L. Baum*_____
             Kenneth L. Baum
