UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RAHUL MANCHANDA,<br><br>                Plaintiffs<br><br>vs.<br><br>NAVIENT STUDENT LOANS &<br>EDUCATIONAL CREDIT MANAGEMENT<br>CORPORATION ("ECMC"),<br><br>          Defendant/Third-Party<br>          Plaintiff | Civil Action No.  1:19-cv-05121 (WHP) |

---

**BRIEF IN REPLY TO DEFENDANT
EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

**On the Brief**

**John P. Fazzio, Esq.**


**Oral Argument Requested**

John P. Fazzio, Esq.
**FAZZIO LAW OFFICES**
305 Broadway, 7th Floor, Ste. 9
New York, NY 10007
Phone: (201) 529-8024
Fax: (201) 529-8011
jfazzio@fazziolaw.com
*Attorneys for Plaintiff*
*Rahul Manchanda*

## PRELIMINARY STATEMENT

Plaintiff submits this Brief in Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment.  In short, Defendant's Opposition fails to raise a genuine issue of material fact as to Plaintiff's GBL § 349 and FDCP claims, and therefore, Plaintiff's Motion must be granted in its entirety as a matter of law.

## STATEMENT OF FACTS

Plaintiff respectfully directs the Court to Plaintiff's Undisputed Statement of Material Facts filed in Support of Plaintiff's Motion for Summary Judgment and Plaintiff's Counter Statement of Material Facts filed in Opposition to Defendant's Motion for Summary Judgment pursuant to Rule 56.1 for a complete statement of facts.

## LEGAL ARGUMENT

## I.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

### a.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is mandated, where there exists no "genuine" issue of "material" fact; a dispute over irrelevant or unnecessary facts will not preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8 (1986). A party opposing summary judgment cannot demonstrate the existence of a genuine issue where the nonmovant's evidence is merely colorable, conclusory, speculative, or not significantly probative.'" Gemmy Indus. Corp. v. Chrisha Creations Ltd., 2004 U.S. Dist. LEXIS 11468 (S.D.N.Y June 23, 2004).

As will be argued herein, Defendant's Opposition to Plaintiff's Motion for Summary Judgment fails to raise a genuine issue of material fact as to Plaintiff's GBL § 349 and FDCP claims and thus, as there no genuine issues of material fact exist, Plaintiff is entitled to summary

judgment as a matter of law.

    **b.  Plaintiff's claims under N.Y. GBL § 349 (Deceptive Acts and Practices).**

There is no factual dispute that ECMC engaged in materially deceptive practices that were consumer-oriented and that Mr. Manchanda suffered damages from these deceptive practices and thus, Plaintiff clearly has established a claim under N.Y. GBL § 349.

    **i.  ECMC does not fall within the Safe Harbor Defense Under Section 349(d) as a matter of law and fact.**

ECMC does not fall within the Safe Harbor Defense under GBL § 349(d) as a matter of law and fact.  Here, Defendant improperly tries to invoke the safe harbor defense in an attempt to avoid liability under GBL § 349.  However, GBL § 349(d) states in pertinent part that "it shall be a complete defense that the act or practice is … ***subject to and complies with the rules and regulations of*** …  the federal trade commission or any … agency of the United States" N.Y. GBL § 349(d).

First and foremost, Defendant has failed to prove ECMC fully complied with federal statutes and/or regulations.  Specifically, Defendant's student loan debt collection actions and practices failed to comply with federal law, specifically, the Federal Debt Collection Practices Act ("FDCPA").  Accordingly, the FDCPA prohibits debt collectors from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e.  Therefore, *assuming arguendo* the Court does find that ECMC is acting "as an 'agency' of the United States" as Defendant alleges, the safe harbor provision of GBL § 349(d) is still not applicable as ECMC has failed to comply with the rules and regulations of federal law, and therefore, Defendant's safe harbor defense is inapplicable.

Moreover, Defendant has failed to specifically identify a "rule" or "regulation" with which it has complied, but instead blanketly alleges that EDMC is an agent of the United States. See

Greene v. Gerber Products Co., 262 F. Supp. 3d 38, 70 (E.D. N.Y. 2017) (explaining that the "safe harbor provisions require Defendant to identify a 'rule' or 'regulation' with which it has complied," and finding that "it is not clear that Defendant's labeling 'complied with' the FDA's guidance, even if that guidance qualifies as a rule or regulation under the safe harbor provisions."). Thus, as Defendant has failed to provide a "rule" or "regulation" with which it has complied with, Defendant's argument that the safe harbor defense is applicable pursuant to GBL § 349(d) fails.

### ii.   Plaintiff Has Clearly Proven the Elements of a Claim Under N.Y. GBL § 349.

Plaintiff has clearly proven the elements of a claim Under N.Y. GBL § 349. Contrary to Defendant's argument, Plaintiff clearly has satisfied all three (3) elements of Plaintiff's GBL § 349 claim.

Here, Plaintiff has offered admissible evidence of a deceptive act or practice directed to the consuming public at large. First and foremost, on one hand ***Defendant provided the audio recording conversation in discovery*** between Plaintiff and Mr. Sarang that is referenced in Plaintiff's Motion for Summary Judgment and transcribed in Plaintiff's Exhibit B, and on the other hand, now argues that the audio recording is not admissible. Thus, Plaintiff is essentially arguing that they provided inadmissible evidence in discovery. Notwithstanding, the aforementioned, the entire 31 minute and 48 second conversation with Mr. Sarang on April 14, 2017 was memorialized in an Audio Transcript, which Azure Bourne from NYC Transcription certified that "[t]his is a certified transcript from a digital file sent by Fazzio Law entitled: Manchanda Recording 02.wav." See Exhibit A. Moreover, Plaintiff Rahul Manchanda certified that the aforementioned Audio Transcript accurately depicted the conversation he had with ECMC Agent Mr. Sarang on April 14, 2017. See Declaration of Rahul Manchanda ¶ 22.  Therefore, Defendant's argument that "Plaintiff has offered no admissible evidence of a deceptive act or practice" and has only offered

"inadmissible hearsay" fails as a matter of fact and law.

Moreover, despite Defendant's bald assertion that "Plaintiff has offered no admissible evidence of deceptive acts or practice 'directed to the consuming public at large'" there is absolutely no dispute that student loan debt collection has a broad impact on "consumers at large" as approximately 44.7 million Americans have student loan debt.[1] See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995). Therefore, it is clear that ECMC's acts and practices of student loan debt collection are in fact consumer oriented, as a substantial and broad number of Americans have student loan debt and ECMC's principal purpose is the collection of student loan debts.

Statistics are not available for all years, but in 2010, 76% of ECMC's revenue came from debt collection. (SOUMF ¶ 4.) Therefore, as ECMC's principal purpose is the collection of debts and approximately 44.7 million Americans have student loan debt, there is absolutely no dispute that student loan debt collection has a broad impact on "consumers at large."  As such, Plaintiff has clearly established the first element of N.Y. GBL § 349, (1) that the act or practice was consumer oriented. See Wilson v. NW Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010).

Next, Defendant's argument that "there was nothing deceptive about the Rehabilitation Agreement or ECMC's action presenting it to Plaintiff" is belied by the record.  Instead, Defendant tries to articulate that Plaintiff is a practicing lawyer with years of experience and that he was presented with a contract of only a few pages and therefore, there was nothing deceptive about the practices taken by ECMC as it pertained to Plaintiff.

However, Plaintiff cites in their Opposition that "the New York Court of Appeals has instructed that a deceptive act or practice has an '*objective definition*,' whereby deceptive acts or

---

[1] https://studentloanhero.com/student-loan-debt statistics/#:~:text=General%20student%20loan%20debt% 20facts&text=The%20most%20recent%20data%20indicate,Americans%20with%20student%20loan%20debt

practices – which may be acts or omissions – are 'limited to those likely to mislead a ***reasonable consumer*** may be determined as a matter of fact and law." See O'Neill v. Standard Homeopathic Co., 346 F. Supp. 3d 511, 529 (S.D.N.Y. 2018); Anunziatta v. Orkin Exterminating Co., Inc., 180 F. Supp. 2d 353, 361-361 (S.D.N.Y. 2001).  Therefore, the facts that Plaintiff relies on, i.e., that Plaintiff is a practicing lawyer with years of experience and that he was presented with a contract of only a few pages, are in fact subjective, and therefore, Defendant's analysis is not supported by the caselaw cited in their Opposition to Summary Judgment. See Gomez-Jimenez v. New York Law School, 36 Misc. 2d 230, 241 2012 NY Slip Op 22071, 7, 2012 WL 934387 (holding "that reasonable consumers—college graduates—seriously considering law schools are a sophisticated subset of education consumers, capable of sifting through data and weighing alternatives before making a decision regarding their post-college options, such as applying for professional school") Thus, the caselaw cited by Defendant, specifically, Gomez-Jimenez v. New York Law School has no bearing on ECMC's deceptive practices as "sifting data" and "weighing alternatives" of life options is dramatically different than reading specific terms and provisions of a Rehabilitation Agreement.

The facts of this case are clear. Mr. Manchanda was duped into the Rehabilitation Program by Mr. Sarang's false and deceptive promises that he would be out of default and that he can dispute the collection costs on behalf of his account.  Additionally, the Rehabilitation Program paperwork that was ultimately presented to Mr. Manchanda contained draconian and byzantine collection costs of 23.4% added-in, which increased the loan balance from $124,790.43 to $161,349.62 or by a whopping 130%. (SOUMF ¶ 11.)  Furthermore, Mr. Manchanda never had the chance to address these collection charges because he clearly never received the Notice of Default.  As such, Plaintiff has clearly established the second element of N.Y. GBL § 349 (2) that

[the act or practice] was misleading in a material respect. See Wilson v. NW Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010).

Finally, there is no factual dispute that Mr. Manchanda suffered damages from ECMC's deceptive practices, and that Plaintiff has produced evidence to support his claim for damages.

Here, Mr. Manchanda entered into a Rehabilitation Program on April 14, 2017 based on Mr. Sarang's promises that he would be out of default and that he can dispute the collection costs on behalf of his account.  However, despite entered into a Rehabilitation Program, not even ***one month*** later, on May 7, 2017, ECMC filed a "Notification of Report to Consumer Reporting Agencies" indicating that "[s]ince you did not pay the full balance of your defaulted student loan(s) within 60 days of the notice of default, Educational Credit Management Corporation ("ECMC") has reported the default status to all national consumer reporting agencies, as required by federal regulation." (SOUMF ¶ 27.) Clearly, this notification came as an absolute complete shock to Mr. Manchanda, who had just entered into a Rehabilitation Program with ECMC to prevent his credit from being damaged. (SOUMF ¶ 27.)

As such, Plaintiff has clearly established the third element of N.Y. GBL § 349, (3) that the plaintiff was injured as a result. Wilson v. NW Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010). Therefore, there is no factual dispute that ECMC engaged in materially deceptive practices that were consumer-oriented and that Mr. Manchanda suffered damages from these deceptive practices and thus, Defendant's argument that Plaintiff failed to satisfy all the elements of Plaintiff's GBL § 349 claim fails.

### iii.  Private Right of Action Exist for Plaintiff's Claims.

Private rights of action exist for Plaintiff's claims. Section 349 of the New York General Business Law allows for enforcement by the New York State Attorney General, as well as for

private rights of action. Accordingly, such actions may seek injunctive relief, damages, and attorneys' fees. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 24 (1995).

Here, under Plaintiff's N.Y. GBL § 349 claim, Plaintiff has affirmatively alleged the undisputed facts that i. a Notice of Deficiency ("NOD") was sent to an inaccurate address, ii. Plaintiff had provided the proper address to Defendant, iii. and despite having the proper address available, Defendant failed to send the NOD as required by the HEA. Moreover, Plaintiff has affirmatively pled that ECMC engaged in materially deceptive practices that were consumer-oriented and that Mr. Manchanda suffered damages from these deceptive practices. Furthermore, Defendant **admits** that the NOD was sent to the improper address, despite being availed to the correct address, but nonetheless claims that they should be excused as they sent it to a prior known address. Def. Br., Pg. 11, ¶ 1.; see generally Declaration of Rahul Manchanda

Accordingly, Defendant has not disputed the aforementioned facts that the NOD was improperly and impermissibly sent to the wrong address in violation of the HEA. Therefore, Plaintiff is entitled to bring a private right of action under N.Y. GBL § 349 claim and Defendant's claim fails as a matter of law and fact.

### iv. Plaintiff's N.Y. GBL Claim Is Not Preempted by the HEA and Federal Regulations.

Plaintiff's N.Y. GBL Claim Is not preempted by the HEA and Federal Regulations. Defendant's baseless argument that "Plaintiff's claim under N.Y. GBL § 349 is preempted by the HEA, which is federal law" is not only meritless, but in fact has been clearly ruled upon by the Court in the Memorandum & Order of the Honorable William H. Pauley III, U.S.D.J. dated September 29, 2020 in response to Defendant's original Motion to Dismiss ("Def.'s MTD").

In general, three types of preemption exist: "(1) express preemption, where Congress has

expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to achievement of federal objectives." Figueroa v. Foster, 864 F.3d 222, 227-28 (2d Cir. 2017) (quotation marks omitted). Importantly, the party "asserting that federal law preempts state law bears the burden of establishing preemption." In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 96 (2d Cir. 2013).

Here, Plaintiff has clearly demonstrated through its pleadings that the GBL § 349 claim is predicated on affirmative misstatements, including ECMC's misrepresentation of the steps needed to remove Plaintiff's loan from default. (See Compl. ¶ 5). Moreover, as already decided by this Court, Plaintiff's claim predicated on those affirmative misrepresentations, as opposed to a duty to disclose and thus, the HEA does not expressly preempt the claim

Thus, it is evident that Defendant's arguments of a preemption defense fail as a matter of law and are utilized as a "red-herring" argument to muddy the waters on an issue which has been considered and decided by the Court.  Accordingly, Defendant's preemptive defenses are meritless and fail as a matter of law and fact.

 **c. Plaintiff Has Established that it is Entitled to Summary Judgment on Plaintiff's FDCPA Claim**.

  **i. ECMC Falls Under the Definition of a "Debt Collector."**

Defendant tries to articulate that ECMC does not fall under the general definition of a "debt collector" because "[t]he principal purpose of ECMC, or any guaranty agency, is not the collection of debts nor does its regular collect debts for another."  However, contrary to Defendant's

argument, Plaintiff has established that ECMC is a "debt collector" as defined by the FDCPA because ECMC's "principal purpose" is the collection of debts.

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

Although statistics are not available for all years, but in 2010, 76% of ECMC's revenue came from debt collection, where it defaulted delinquent borrowers, particularly those filing bankruptcy, imposed "collection costs," and then rehabilitated the loans, reselling them into the market as federally guaranteed and performing loans, and thereby reaping a windfall from the United States taxpayer for the minimal work involved in helping the distressed and downtrodden out of a catastrophe ECMC purposely created in order to profit from debtor hardships. (SOUMF ¶ 4.)  Furthermore, Plaintiff's recorded conversation with Agent Sarang is clear the intention of the call was to ascertain Plaintiff's financial ability to repay and collect upon the debt to the highest degree possible.

Therefore, "principal purpose" is the collection of debts and it behaves as such.  Were ECMC truly acting in accord with fiduciary duties to the DOE to the U.S. government at large, its revenues would be earned from counseling debtors rather than reaping a windfall and unjust enrichment earned off the backs of unwitting debtors. Thus, Plaintiff has established a colorable claim pursuant to the FDCPA and Defendant is subject to the FDCPA.

### ii. ECMC Does Not Operate Under a Fiduciary Relationship with the Department of Education.

ECMC does not operate under a fiduciary relationship with the DOE. Defendant tries to make the argument that as a guarantor under the FFELP or acting in its fiduciary capacity to the

DOE, ECMC is not subject to the FDCPA.  However, the FDCPA applies not only to entities that "acquired a debt in default" but also to entities that "treated the debt as if it were in default at the time of the acquisition." <u>Bridge v. Ocwen Fed. Bank</u>, FSB, 682 F.3d 355, 362 (6th Cir. 2012). Additionally, a financial institution which purchases delinquent debts is a "debt collector" within the meaning of the FDCPA with respect to the delinquent debts. <u>Schlosser v. Fairbanks Capital Corp.</u>, 323 F.3d 534 (7th Cir. 2003).

Here, Mr. Manchanda's loan was deemed to be in default and delinquent as of July 6, 2014. (SOUMF ¶ 46.). ECMC falsely relies on the fact that the FDCPA excludes from its definition of "debt collector" those "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is . . . ***incidental to a bona fide fiduciary obligation.***" 15 U.S.C. § 1692a(6)(F). Therefore, Plaintiff has demonstrated Defendant's actions are consistent with the FDCPA guidance of a debt collector and has alleged the actions therein. <u>See</u> <u>Generally</u> Declaration of Rahul Manchanda ¶¶ 11-67.  Accordingly, because ECMC is a debt collector under the FDCPA and thus is subject to the FDCPA, Plaintiff is entitled to summary judgment on his claims under the FDCPA.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order granting Plaintiff's Motion for Summary Judgment and for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: New York New York
June 28, 2021

**FAZZIO LAW OFFICES**

/s/ *John P. Fazzio*
By: John P. Fazzio, Esq. (1752)