UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

|  |  |  |
|---|---|---|
| **RAHUL MANCHANDA** | : | Index No. 610872/2020 |
| Plaintiff, | : |  |
| -against- | : | **DECLARATION OF** |
|  | : | **RAHUL MANCHANDA** |
| **NAVIENT STUDENT LOANS &** | : |  |
| **EDUCATIONAL CREDIT MANAGEMENT** | : |  |
| **CORPORATION ("ECMC"),** | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

----------------------------------------------------------------X

STATE OF NEW YORK      )
                                       )      ss.:
COUNTY OF NEW YORK  )

## DECLARATION OF RAHUL MANCHANDA

I, Rahul Manchanda, under penalty of perjury, and pursuant to 38 U.S.C. § 1746, declare as follows:

1.      I am the Plaintiff in this matter and hereby make this Declaration in support of my Motion for Summary Judgment.

2.      The factual information in Plaintiff's Statement of Material Facts is true and accurate and based on my experience with ECMC.  Additionally, the Bates Stamped Documents are true and accurate.

3.      On May 1, 2003, I signed a Federal Consolidated Loan Application and Promissory Note with College Loan Corporation ("CLC") for student loans made under FFELP, which had a guaranty by American Student Assistances ("ASA"). See Bates No.: 0000107.

4.      My student loans became due on October 14, 2003. Bates Nos.: 000074-000080.

1

5.       I paid the loan timely for 94 months and paid a total of $56,034.65, although these payments only covered the interest on the loan and barely made a dent in the principal. Id.

6.       On March 14, 2014, after utilizing all 31 months of available forbearance during periods of economic downturn (i.e., in 2008-2010), I missed the March payment and became delinquent. Id.

7.       At this time, I was suffering an economic hardship and was unable to pay my bills as they came due, including my student loan payments.

8.       On April 30, 2014, I filed a Ch. 13 Bankruptcy under Docket No.: 14-11259 (ALG). Bates Nos.: 000074-000080, 000081-000086, 000108-000110.

9.       On June 3, 2014, ASA filed a Proof of Claim "for CLC… On behalf of MHEAC d/b/a ASA" in the amount of $113,506.79 for the defaulted student loan.

10.     As a result of my bankruptcy, ASA paid a bankruptcy claim on July 6, 2014, in the amount of $114,489, which included interest accrued after the claim date. Id.

11.     Defendant ECMC's representative, Pamela Smith, responded to my CFPB Complaint with a detailed explanation of this loan history with ASA as the guarantor at the time of delinquency, default and bankruptcy filing. Bates Nos.: 000074-000080.[1]

12.     Prominent in those facts was the clear delineation of ASA – not ECMC – as the guarantor who paid out the claim after the original default on my loan. Id.

---

[1] The convoluted history of the bankruptcy filings and loan transfers is as follows: Due to the bankruptcy filing, ASA transferred all rights, title and interest of the loan to ECMC on July 10, 2014, and ECMC acquired the defaulted debt by way of assignment.  On July 15, 2014, ASA sent a Notice that ECMC had taken over my loan. Bates Nos.: 000081-000086, 000108-000110. On July 6th, 2014, the default claim was forwarded and assigned to ECMC.  Bates Stamp. 000046-000047.  As Pamela Smith noted, the default and subsequent transfer was based on my delinquency and prompted by his bankruptcy filing. Bates Nos.: 000074-000080. On January 7, 2015, my Ch. 13 Bankruptcy under Docket No.: 14-11259 (ALG) was voluntarily dismissed on the Order of the Honorable Allan L. Gropper, U.S.B.J. Bates Nos.: 000082-000085. Second BK Dismissal 000082-000086 on the Order of the Honorable James L. Garrity, Jr., U.S.B.J., which Order was entered on January 27, 2017.

13.     Ms. Smith explained that "the loan was … originally guaranteed by American Student Assistance ("ASA")" and "ASA paid a bankruptcy claim… of $114,489" and "[d]ue to the bankruptcy filing, ASA transferred all right, title and interest of the loan to ECMC …" Id.

14.     In other words, my delinquent loan was in default and subject to a bankruptcy filing, leaving absolutely no question of its distressed character.

15.     It is very clear that ASA was the guarantor on the loan and ECMC stepped-in strictly as a "debt collector." Id.

16.     Ms. Smith explains that ECMC sold the loan back to ACS in 2015 for $117,808.98 when I came out of bankruptcy, but the loan went back into default and ACS filed a claim against ECMC wherein ECMC allegedly paid $124,790.43 for the default and the "account was placed for collections." Id.

17.     The simple explanation for the ping-pong with regard to ECMC taking over the loan, selling it back to ACS, and then taking re-assignment of it is that ECMC does not collect on loans that are in bankruptcy (Bates Nos.: 00001-000018, see Pg. 4, Para. 6-7), but rather only "collects" once a bankruptcy ends, and as a "debt collector" whose "principal purpose" is the collection of debts, ECMC does not administer uncollectible debts that are covered by the automatic stay.  The relevant portion of ECMC's Guaranty Agreement with the DOE states at Paragraph 7: "7. Post-Bankruptcy Collections. When administering loans on which a borrower has filed a petition for relief under the U.S. Bankruptcy Code, in instances where the bankruptcy case concluded and the loans were in default at the time the borrower filed bankruptcy, the loans shall be assigned by ECMC/the Federal Services Bureau to ECMC/the Guarantor for post-default collections."

18.     On February 6, 2017, ECMC allegedly sent me a Notice of Default ("NOD") noting that "collection costs of up to 23.4% [would be] added to [the] loan pursuant to federal regulations" if the loan balance was not paid off within 60 days or by April 7, 2017. Bates No.: 000066-000069.

19.     However, the NOD was addressed to the knowingly incorrect address of "82 Beaver Street, Apt. 301, New York, NY 10005." Bates No.: 000066 [Address Block in Upper Left-Hand Corner].

20.     This was not my address at that time, which was known to ECMC.

21.     On February 6, 2017, I lived at 150 W 51st St., Apt. 2106, New York, NY 10019. (See, e.g., Bates No.: 000072). This was the address ECMC had on file as my last known address during the collection call on April 14, 2017, which resulted in my loan being rehabilitated.

22.     The 31 minute and 48 second conversation about my loan with Mr. Sarang on April 14, 2017 was memorialized in an Audio Transcript, which accurately depicted my conversation and which Azure Bourne from the NYC Transcription certified that "[t]his is a certified transcript from a digital file sent by Fazzio Law entitled: Manchanda Recording 02.wav." See **Exhibit A.**

23.     Moreover, the Audio Transcript prepared by Fazzio Law Offices memorialized and accurately depicted the conversation I had with Mr. Sarang on April 14, 2017 and was in fact, provided by Defendant in discovery. See Deposition Transcript of Mithun Sarang dated March 20, 2021, comprising of 116 pages is attached as Plaintiff's **Exhibit B** to support the Motion for Summary Judgment.

24.     The Audio Transcript states pertinently:

>     **Mr. Sarang:** Yeah, that's actually one of the reasons why I was actually contacting you. How's your Friday coming along so far? It's going it's getting there slowly but surely not a problem. All right, so really quickly, **I just wanted to make sure that the information we have for you is still correct. I have, let's see here: Is it 150 West 51st Apartment, 2106?**

**Rahul: Yep.**

**Mr. Sarang:** New York. I'll say it again. Suite number . . .

**Rahul:** Yeah. It's <u>2106</u>.That's right

**Sarang:** Okay, I gotcha. Okay. No worries. I got a New York New York 10019. And then I have your home phone as the 646 645-0993. Is that correct as well.

25.     This was also the address to which all later correspondence from ECMC was addressed. (See, e.g., Bates No.: 000072).

26.     The correct address was known to ECMC and was the address "[ECMC] [had on file] for [myself]." <u>Id.</u>

27.     However, the NOD was intentionally mailed to a different address.  On information and belief, this was done purposely to deprive me of fair warning that "collection costs" would be imposed if action was not taken and to deceptively steer Mr. Manchanda into its "rehabilitation program."

28.     This prejudiced my rights to avoid default and avoid collection costs, and locked-in ECMC's ability to earn the exorbitant $36,559.19 of "collection costs" and for Mr. Sarang to earn his monthly bonuses and commissions. The applicable statutes and regulations prohibit collection costs from being imposed until fair warning is provided by way of a valid NOD being provided to the borrower at their last known address.

29.     Without question, the NOD was never received by me despite the fact my correct address was known to ECMC as evidenced by the fact that they continued to contact me at my new address and telephone numbers and had verified his new address countless times, prior.

30.     Because the Rehabilitation Agreements provided to me to DocuSign on April 14, 2017 recited the inflated balance of $161,349.62, ECMC deceptively trapped me in a Hobson's

Dilemma and falsely advertised the rehabilitation program as the only conceivable way forward, misleading me into believing I had no choice but to pay the higher loan balance with the $36,559.19 of additional charges. Bates Nos. 000019-000030.

31.    The April 14, 2017 Rehabilitation Agreement stated pertinently, "Upon rehabilitation, the outstanding balance of your loan(s), *including collection costs, will be capitalized.*  The collection costs will be a percentage (not to exceed 16 percent) of the original principal and interest balance at the time of rehabilitation.

32.    A Notice of Default was *__allegedly__* issued on February 6, 2017, stating that "As a result of your failure to meet your federal student loan repayment obligation, Educational Credit Management Corporation ("ECMC"), as guarantor of your loan(s), *was required to pay a default claim to your lender and take assignment of your loan(s) as shown in Attachment B*.  Your total payment amount as of the date of this letter is $128693.44."   Bates Nos.: 000066-000069. (Emphasis added).

33.    The Notice of Default advised that a consequence of Default was that "Collection costs of up to 24.34% (subject to change) added to your loan, pursuant to federal regulations." Id.

34.    On the 2nd Page of the Notice of Default, it states that after 9 on-time payments in a 10-month period, "Your new lender will capitalize any outstanding interest and collection costs (capped at 16%) to your principal balance." Id. The Notice of Default indicates that "important information about interest accrual, collection costs, and your rights is included in Attachment A." Id.

35.    Buried in the fine print of Attachment A, the Notice of Default further states, "**Collection costs.**  Sixty days after the date of this letter, pursuant to 20 U.S.C. § 1091(a)(b) and 34 C.F.R. § 682.410(b)(2), you will be assessed collection costs on your delinquent loan(s).  These

collection costs may be substantial and will be a percentage of your principal balance based on either the percentage calculated annually under the formula in 34 C.F.R. § 30.60 or the amount you would be charged if your loan(s) was held by the U.S. Department of Education."

36.     Unfortunately, *I never received the NOD since it was sent to the wrong address.*

37.     April 7, 2017 marked the end of the Sixty-Day window in which my loan could have been rehabilitated under 34 C.F.R. § 682.410(b)(2) without incurring $36,559.19 of additional "collection costs" amounting to about 30% of the outstanding debt.

38.     Between February 6, 2017 and April 7, 2017, ECMC maintained radio silence and failed to contact me at all, let alone to advise him of his rights to rehabilitate his loan during this critical period before he would be on the hook for 130% of the original balance.

39.     In fact, ECMC waited a full additional week for good measure, ensuring its entitlement to "collection costs" under 34 C.F.R. § 682.410(b)(2) was firmly established, before *first* reaching out and *first* making contact to me to address the delinquency on his loan.

40.     I actually proactively and of my own accord reached out to ECMC (on March 9, 2017 among other times), but they did not return my calls or provided guidance on what to do to avoid default – even though I affirmatively inquired about my options.  Bates Stamp Nos.: 000036-000037, wherein the log includes a March 9, 2017 inquiry by me asking for a "payment arrangement or offer in compromise for a lump sum." Id.

41.     To elaborate on my call with ECMC, ECMC Agent Mithun Sarang called me at his home after hours and convinced him to enter into a Rehabilitation Agreement to avoid further collection activity, which included an affirmation of the new debt balance of $161,349.62 (which included the collection costs of $36,559.19 which were added to the loan). Bates Nos. 000019-000030.

42.     During the call with Mr. Sarang he advised me that the collection costs were "an unavoidable consequence of default" stating that "this is just what happens when you default."

43.     Additionally, Mr. Sarang started the conversation by saying he was calling "*about your defaulted federal student loans…to give you options of <u>avoiding any future wage garnishments.</u>*" Audio Recording at :30. (Emphasis added).

44.     Mr. Sarang promptly impermissibly asked for information to contact me at work, impermissibly asked for his work phone number, and impermissibly asked if ECMC could auto-dial me at work, and confirmed the address for my employer, which had obviously never changed for 20 years. Audio Recording at 1:30-2:15.

45.     Mr. Sarang then proceeded to claim to be presenting me with "all [my] options" and almost immediately broke the news that the loan balance was now $161,349.62 and *not* the $128,693.44 stated in the Notice of Default.  Audio Recording at 3:00.

46.     Mr. Sarang stated, "***the current balance is $161,349.62***, do you have the ability or resources Rahul to pay that amount in full?" Audio Recording at 3:17-3:23.

47.     I responded with shock, "***Wait… $161 or $125, I thought it was $125…***". Audio Recording at 3:28.

48.     Mr. Sarang responded, "***No, I got it at $161,349.62.***" Audio Recording at 3:31.

49.     I responded, "***That's wrong, that's got to be wrong, I even got a letter from ECMC….***" Audio Recording at 3:33.

50.     Mr. Sarang then clarified, "Your principal is $124,790 and then so, ***collection costs were applied here as well*** and that's probably the differential that you're looking in reference to." Audio Recording at 3:36-3:47. (Emphasis added).

51.     I then said, "***So it's $40,000 in collection costs?***" Audio Recording at 3:48. (Emphasis added).

52.     Then, Mr. Sarang paused and started going through the numbers, but his computer "lagged" and then he gave the breakdown as follows: "Alright, so your principal balance … is $124,790.43, the interest is $4,977.52, ***the collection costs are $31,580.67.***" Audio Recording at 3:48-4:28. (Emphasis added).

53.     I responded by saying, "***Woah, Woah!***" Audio Recording at 4:28-4:30. (Emphasis added).

54.     Then, Mr. Sarang said, "***Correct, That's what happens when you get in default…***" Audio Recording at 4:30-4:32. (Emphasis added). As Mr. Sarang was starting his pitch about the Rehabilitation Program, I again protested about the default and the addition of collection costs, saying, "***I mean 30 grand, why 30 grand in collection costs, I mean I didn't sign up for that. Who defaulted my loan, you guys, that's crazy.***" Audio Recording at 7:38-7:48. (Emphasis added).

55.     Mr. Sarang responded, "***Well, that's what happens when you get in default…***" Audio Recording at 7:48-7:51. (Emphasis added).

56.     I said, "***Really, really…***" Audio Recording at 7:52-7:53. Mr. Sarang responded, "***Trust me, I get it…***" Audio Recordings at 7:54-7:58.

57.     Shortly thereafter, Mr. Sarang provided the solution to the problem ECMC caused by placing me in default and charging him $31,580.67 in additional collection charges and interest for a total of a $36,559.19 upcharge on a loan I already could not afford.

58.     Mr. Sarang stated, "With the information that you are providing me right now, I'm able to give you monthly payments at $5 on a monthly basis.  And you're like, what's $5 gonna

do?  I get it.  *It's gonna get you out of default.  So as long as you can show us that you're gonna be able make 9 out of 10 on-time monthly payments, you're gonna go ahead and get yourself out of default*, at which time you're gonna be eligible for deferments, forbearances, financial aid, any negative credit reporting of the default requested to be removed after 45-days as well, because I'm pretty sure this is affecting your credit report very negatively right now.  And just by making the $5 payments you're gonna get yourself out of default, at which point in time, *finally when you do get out of default, you can say hey, originally my principal balance was $125,000, I was placed in a default, and I'm disputing the collection costs on behalf of the account*, so there's multiple avenues you'd like to take, but I'm a big believe that knowing is half the battle… you know what I mean." Audio Recording 8:20-9:19. (Emphasis added).

59.     I then asked the operative question, "*I appreciate that, would that take off the collection costs?  Would that take off the collection costs to or just the default?*" Audio Recording 9:19-9:24. (Emphasis added). Mr. Sarang dodged this question and said he couldn't advise on that, but once I got "out of default" he could "contest it" with the new lender. 9:55-10:03.

60.     However, on May 7, 2017, ECMC filed a "Notification of Report to Consumer Reporting Agencies" indicating that "[s]ince [I] did not pay the full balance of your defaulted student loan(s) within 60 days of the notice of default, Educational Credit Management Corporation ("ECMC") has reported the default status to all national consumer reporting agencies, as required by federal regulation." Bates No.: 000072.

61.     This notification also came as a complete shock to me as I just entered into a Rehabilitation Program with ECMC to prevent my credit from being damaged!

62.    On May 30, 2017, I made a report to the Consumer Financial Protection Bureau ("CFPB") complaining that a $30,000 to $40,000 collection fee was illegally added on to my loan. Bates Nos: 000074-000080.

63.    ECMC used a collections employee who was previously arrested and convicted for alcohol related crimes such as a DUI and who sounded inebriated or drunk while contacting me and discussed his drinking habits on the call. Sarang Transcript, Pgs. 74-75 ("For drinking while under the influence… alcohol.  Were you convicted?  Yes." (Pg. 74, lns. 15-24), "I had to do a, go to DUI school and go through – what is it called?  The breathalyzer in your vehicle.  I had a breathalyzer in my vehicle and had to go through a 18 month program. (Pg. 74, lns 3-8)."

64.    ECMC used a collections employee who forced me to "Docu-Sign" the "rehabilitation contract" twice in one evening, within 20 minutes apart, and on information and belief the first version (different from that included in discovery) differed in the amount, in a further attempt to deceive me into accepting ECMC's "collection costs."

65.    ECMC used a collection employee who was never trained in either the Higher Education Act, the Fair Debt Collection Practices Act, and was instead picked from a previous collections job at Superlative RM (who self-described himself as a "used car salesman") wherein he was used to collect on "pay day loans," "overdue credit cards," and other unsavory debts, and while at ECMC where he was awarded a "cut of the profits" of all the innocent student loan debtors that he managed to deceptively ensnare into ECMC's deceitful "rehabilitation program." Sarang Deposition, Pgs. 18-19.

66.    ECMC used a collections employee who repeatedly refused to answer questions pertaining to the actual debt owed, and when I repeatedly questioned why he kept saying $161,000 owed and not approximately $125,000 owed, the ECMC collection employee merely: (a) changed

the subject; (b) avoided the question; (c) asked me about his race/ethnicity; (d) mocked the spelling and pronunciation of my relatives names; (e) inappropriately asked if he could come visit me in New York or would I like to come visit him in California, and (f) other inane and obvious diversions designed to either not answer the question, not explain the missing "Notice of Default," or change the subject entirely. Sarang Deposition, *passim.*

67.     ECMC used a collections employee who not only had access to my current address and phone number on screen while speaking with him, but was also in close contact with others (not less than 10) or himself had access to the ability to "toggle" or look up my previous address where the "Notice of Default" was supposedly sent. Sarang Deposition, Pg. 13.

68.     I certify that the foregoing statements made by me are true to the best of my knowledge, information, and belief.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                        */s/ Rahul Manchanda*
                                        Rahul Manchanda


Dated:   June 28, 2021
         New York, NY

12